UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
:
IN RE: WORLD TRADE CENTER LOWER      :   21 MC 102 (AKH)
MANHATTAN DISASTER SITE LITIGATION   :   21 MC 103 (AKH)
:
:
:   ECF Case
:
:
:
------------------------------------------------------------- x

# PLAINTIFFS' BRIEF REGARDING FEDERAL COURT JURISDICTION
## OVER THE 21 MC 102 DOCKET

Gregory J. Cannata, Esq. (GC-1835)
Gregory J. Cannata & Associates
233 Broadway, Fifth Floor
New York, NY 10279
Tel: (212) 553-9205
cannata@cannatalaw.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION..................................................................................................................1

FACTS....................................................................................................................................1

ARGUMENT..........................................................................................................................3

I.  ATSSSA §408 WHICH CONFERS FEDERAL JURISDICTION TO LAWSUITS "RELATING TO" THE SEPTEMBER 11 ATTACKS, DOES NOT APPLY TO THE CASES IN THE 21 MC 102 DOCKET..................................................3

   A.  Common Issues of Law or Fact..............................................................................5

   B.  Claims Against the City of New York, the Port Authority and the Owners of the World Trade Center......................................................................................7

   C.  The ATSSSA Goal of Consistency.........................................................................9

II.  This Court Does Not Have Supplemental Jurisdiction Over the 21 MC 102 Docket.......10

CONCLUSION......................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Ahearn v. Charter Township of Bloomfield,*
  100 F.3d 451, 456 (6th Cir. 1996)..................................................................................11

*Barretto v. Gonzalez,*
  Docket 06 CV 3973, NYLJ Dec. 11, 2006, p. 27............................................................7

*The Canada Life Assurance Co. v. Converium Ruckversickerung AG,*
  335 F.3d 52, 57 (2d Cir. 2003)...............................................................................5, 6, 11

*Combined Insurance Co of America v. Certain Underwriters at Lloyd's London,*
  75 Fed. Appx. 799, 2003 WL 21999545 (2d Cir. 2003)..................................................6

*In Re September 11th Liability Ins. Coverage Cases,*
  333 F.Supp.2d 111 (S.D.N.Y. March 1, 2004)..............................................................12

*In Re World Trade Center Disaster Site Litigation,*
  414 F.3d 352 (2d Cir. 2005).....................................................................................7, 8, 9

*In Re World Trade Center Disaster Site Litigation,*
  270 F.Supp.2d 357, 362 (S.D.N.Y. June 20, 2003).........................................................4

*Noriega v. State Street Bank & Trust Co.,*
  271 A.D.2d 313, 706 N.Y.S.2d 107 (1st Dept. 2000)......................................................2

*Pizza v. Shaw Contract Flooring,*
  39 A.D.3d 218, 834 N.Y.S.2d 776 (4th Dept. 2007).......................................................2

*Port Authority of New York and New Jersey v. Allianz Ins. Co.,*
  443 F.Supp.2d 548 (S.D.N.Y. Aug. 6, 2006).................................................................11

*Ross v. Curtis-Palmer Hydro-Elec. Co.,*
  81 N.Y.2d 494, 601 N.Y.S.2d 49, 618 N.E.2d 82 (1993)................................................2

**Statutes**
Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA"),
  Pub.L. No. 107-42, 115 Stat. 230 (2001)..............................................................3, 4, 5, 8

28 U.S.C. §1367..................................................................................................................10, 12

**Order**
*Order Regulating Status of Future Proceedings in Non-City, Non-World Trade Center
Disaster Site Cases,*
  Doc 3923, 21 MC 102 (S.D.N.Y. Dec. 6, 2010)....................................................3, 6, 10

**Congressional Record**
147 Cong. Rec. H7658-59 (Nov. 1, 2001)..................................................................................8

147 Cong.Rec. S9595 (Sept. 21, 2001).....................................................................................9

## INTRODUCTION

This brief is submitted at the Court's direction to address the issue of whether this Court has jurisdiction over the cases in the 21 MC 102 docket (inclusive of that aspect of the 21 MC 103 docket that is consistent with the 21 MC 102 docket, collectively referred to herein as the "21 MC 102 docket") and whether these cases should be remanded to state court. It is the position of the Plaintiffs' Liaison Counsel that this Court does not have jurisdiction and the cases in the docket should be remanded to state court.

## FACTS

Many of the initial lawsuits, which would later comprise the 21 MC 102 docket were intentionally started in New York State Supreme Court and ultimately removed to this Court by the defendants. At the time, the parties and the Court recognized the fundamental differences between the mound cases where the City of New York was the primary defendant (21 MC 102 docket) and those cases of plaintiffs who cleaned the primarily privately-owned office buildings that surrounded the World Trade Center site. Recognizing the unique application of law and significant factual differences from case to case, upon the undersigned's application, this Court established the 21 MC 102 docket to allow for a more orderly progression of those cases.

The 21 MC 102 docket is comprised of approximately 1000 individual plaintiffs and hundreds of derivative plaintiffs. Many of these plaintiffs were employed by environmental toxic clean-up companies which in turn were hired by the buildings' owners, managers, and disaster recovery companies to remove the toxic World Trade Center debris that contaminated these buildings. In total, the plaintiffs in the 21 MC 102 docket worked in approximately 175 buildings that encompassed an area from Canal Street on the north to the Battery on the south, from the

Hudson River on the west to the East River on the east. Plaintiffs sued 385 unique defendants, which included the buildings' owners, managers, and general contractors.

Many of these plaintiffs were Local 78 and Local 12 union workers assigned to various work sites by their respective unions. In the aftermath of September 11, 2001, a typical plaintiff worked at approximately six buildings over a period that often spanned many months into years. Compounding the complexity and uniqueness of the litigation, an average plaintiff sued 49 defendants and was employed by several different clean-up contractors during his or her work in Lower Manhattan.

Plaintiffs' principal claim is a violation of the New York State Labor Law by the defendants. The application of certain provisions of the Labor Law and the Industrial Code Rules promulgated pursuant to the Labor Law is, in the first instance, fact-dependant upon the specific work being performed by the plaintiff, his employer and the other contractors at the work site. For example, certain cleaning work may be considered "construction" activity protected by the Labor Law (*Noriega v. State Street Bank & Trust Co.*, 271 A.D.2d 313, 706 N.Y.S.2d 107 [1st Dept. 2000]) while other cleaning work would not (*Pizza v. Shaw Contract Flooring*, 39 A.D.3d 218, 834 N.Y.S.2d 776 [4th Dept. 2007]). Additionally, certain Industrial Code regulations require specific compliance (*Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 601 N.Y.S.2d 49, 618 N.E.2d 82 [1993]) while other regulations only offer general guidance and cannot be used as a predicate for application of Section 241(6) of the Labor Law. The facts unique to each individual case will determine whether the specific safety precautions, if any, undertaken by each defendant at each worksite for each plaintiff offered sufficient protection, and these must be individually examined in light of the applicable industrial code regulations.

Ultimately, there are neither facts common to the entire docket in general, nor specifically applicable to each plaintiff. Specific facts must be determined as to each plaintiff's claim against each specific defendant at each specific worksite.

This Court raised the question of whether it has subject-matter jurisdiction or supplemental jurisdiction over the cases compromising the 21 MC 102 docket: "It is not altogether clear if the ATSSSA confers subject-matter jurisdiction over cases relating to buildings outside the World Trade Center site." *Order Regulating Status of Future Proceedings in Non-City, Non-World Trade Center Disaster Site Cases*, Doc 3923, 21 MC 102 (S.D.N.Y. Dec. 6, 2010).

## ARGUMENT

I.  ATSSSA §408 WHICH CONFERS FEDERAL JURISDICTION TO LAWSUITS "RELATING TO" THE SEPTEMBER 11 ATTACKS, DOES NOT APPLY TO THE CASES IN THE 21 MC 102 DOCKET

The Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA"), Pub.L. No. 107-42, 115 Stat. 230 (2001)(codified as amended at 49 U.S.C. §40101), reads in pertinent part as follows:

> **Limitation on Liability**
> (a) IN GENERAL. –
> > (1) LIABILITY LIMITED TO INSURANCE COVERAGE – Notwithstanding any other provision of law, liability for all claims, whether for compensatory or punitive damages or for contribution or indemnity, arising from the terrorist-related aircraft crashes of September 11, 2001, against an air carrier, aircraft manufacturer, airport sponsor, **or person with a property interest in the World Trade Center,** on September 11, 2001, whether fee simple, leasehold or easement, direct or indirect, or their directors, officers, employees, or agents, shall not be in amount greater than the limits of liability insurance coverage maintained by that air carrier, aircraft manufacturer, airport sponsor, or person...
>
> > \*        \*        \*

3

> (3) **LIMITATIONS ON LIABILITY FOR NEW YORK CITY** – Liability for all claims, whether for compensatory or punitive damages or for contribution or indemnity arising from the terrorist-related aircraft crashes of September 11, 2001, **against the City of New York,** shall not exceed the greater of the city's insurance coverage or $350,000,000. If a claimant who is eligible to seek compensation under section 405 of this Act, submits a claim under section 405, the claimant waives the right to file a civil action (or to be a party to an action) in any Federal or State court for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001, including any such action against the City of New York. The preceding sentence does not apply to a civil action to recover collateral source obligations.
>
> (b) **FEDERAL CAUSE OF ACTION**
>
> (1) AVAILABILITY OF ACTION – **There shall exist a Federal cause of action for damages arising out of the hijacking and subsequent crashes of American Airlines flights 11 and 77, and United Airlines flights 93 and 175, on September 11, 2001.** Notwithstanding section 40120(c) of title 49, United States Code, this cause of action shall be the exclusive remedy for damages arising out of the hijackings and subsequent crashes of such flights.
>
> (2) SUBSTANTIVE LAW – The substantive law for decision in any such suit shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law.
>
> (3) JURISDICTION – The United States District Court for the Southern District of New York shall have **original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to** the terrorist-related aircraft crashes of September 11, 2001.

ATSSSA §408 (as amended) (emphasis added).

Congress enacted ATSSSA immediately after the September 11 attacks to stabilize the airline industry from collapse and later amended to protect the City of New York during the clean-up operations. *In Re World Trade Center Disaster Site Litigation*, 270 F.Supp.2d 357, 362 (S.D.N.Y. June 20, 2003). In order to protect the airlines involved in the attacks, and a "person with property interest in the World Trade Center," liability for these attacks was limited to

4

available insurance. U.S.C.§408(a)(1). Also the liability of the City of New York was limited to $350,000,000 or the limits of its insurance (§408[a][3]). ATSSSA established a Victim Compensation Fund to compensate those directly injured in the attacks or alternatively, created a new federal cause of action for those wishing to sue (§408[b]).

ATSSSA conferred "original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001" (U.S.C. §408[b][3]).

A. **Common Issues of Law or Fact**

The Second Circuit and the District Courts have addressed the issue of whether particular claims warrant a finding that those claims are "resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001" so as to be preempted.

The Second Circuit concluded that an action arising out of a contract dispute between foreign reinsureres for losses resulting from the September 11 attacks would not trigger jurisdiction under Section 408(b)(3), since neither the claim nor the defense required an "adjudication of any issue of law or fact that concerns the events of September 11." *The Canada Life Assurance Co. v. Converium Ruckversickerung AG*, 335 F.3d 52, 57 (2d Cir. 2003). The Court rejected the "but for" connection to September 11: "Thus, while the terrorist attacks of September 11 are alleged as a 'but for' cause of the contract dispute, **the actual events of the day are irrelevant to a resolution of the dispute, even though the insurance losses were caused in part by them.**" *Id* (emphasis added). The courts reasoned that Congress could not "have intended the absurd result of requiring every lawsuit involving economic losses traceable to September 11 to be brought in the Southern District." *Id* at 58.

5

The Court further found the statutory language was "ambiguous" and thus turned to the legislative context and history to resolve the ambiguity. *Id.* "The purpose of Section 408(b)(3)... was to ensure **consistency and efficiency** in resolving the many expected actions arising from the events of September 11." *Id* (emphasis added). The Court concluded that Congress wished to avoid the litigation of claims in various state and federal courts that would produce **"inconsistent or varying adjudications of actions based on the same set of facts**," or that certain plaintiffs might not recover due to the limits of liability provided for in Section 408(a)(3). *supra* 59 (emphasis added). The Court concluded "**Section 408(b)(3) does not vest the Southern District of New York with jurisdiction over actions involving economic losses that would not have been suffered 'but for' the events of September 11 but otherwise involve no claim or defense raising an issue of law or fact involving those events.**" *Id* (emphasis added).

The Second Circuit cited *Canada Life, supra,* in *Combined Insurance Co of America v. Certain Underwriters at Lloyd's London,* 75 Fed. Appx. 799, 2003 WL 21999545 (2d Cir. 2003) in denying jurisdiction to a breach of contract insurance case related to September 11, since the court was not required to decide among "competing descriptions of the *events* of September 11th..." *supra* at 801 (emphasis in original).

The 21 MC 102 docket has no common issues of law or fact. As the Court itself noted, "The 21 MC 102 docket comprises scores of separate cases: different Plaintiffs have sued different owners and contractors in scores of different buildings." Order Regulating Status of Future Proceedings in Non-City, Non-World Trade Center Disaster Site Cases, 21 MC 102 (AKH) Dec. 6, 2010 p.2.

This Court has rejected likewise jurisdiction in a fiduciary case involving a fireman who died on September 11, 2001 as there were no common issues of law or fact involving September

6

11. *Barretto v. Gonzalez*, 06 CV 3973, NYLJ, Dec. 11, 2006, p. 27. As the cases in the 21 MC 102 docket have no direct connection to the events of September 11, and are in reality typical Labor Law cases, the Court should not exercise jurisdiction over the docket.

B.   **Claims Against the City of New York, the Port Authority and the Owners of the World Trade Center**

The Second Circuit addressed the issue of preemption of certain personal injury claims against the City of New York, the Port Authority and the owners of the World Trade Center in *In Re World Trade Center Disaster Site Litigation*, 414 F.3d 352 (2d Cir. 2005)("McNally"). That suit involved the personal injury claims of "firefighters and police officers who worked at the WTC site searching for survivors and human remains; iron workers, construction workers, and laborers called upon to deal with building fragments; operating engineers to do demolition work; Department of Sanitation workers who transported debris to marine transfer points or to the Fresh Kills Landfill and/or who worked at the landfill; and police officers who worked at the landfill." *Id* at 358. The defendants were the Port Authority of New York and New Jersey, the City of New York, and World Trade Center Properties.

The issue for the Court was the precise extent of Congress' preemption intent when it conferred federal jurisdiction over "any claim... relating to the terrorist-related aircraft crashes of September 11, 2001." U.S.C. §408(b)(3). The Court recognized that in the cosmological sense, the phrase "relat[ing] to" though clearly expansive, "is not a self-evident guide to the precise extent of Congress's preemptive intent." 414 F.3d at 376.

Since the extent of the preemption was ambiguous from the text of the statute, the Court looked at the statutory scheme as a whole and its legislative history, to glean the intent of Congress.

Congress's principal goals in enacting ATSSSA was to provide relief without litigation through the Victim Compensation Fund but also to limit the liability of entities who were likely to be sued in connection with the crashes. *Id* at 377.

When ATSSSA was amended in November, 2001 extending the liability limiting provisions to the City of New York, the Port Authority of New York and New Jersey, and the owners of the World Trade Center, Representative Sensenbrenner, Chairman of the House of Representatives Committee on the Judiciary stated that the purpose of the amendments was "to protect... the city [] and the Port Authority from lawsuits." 147 Cong. Rec. H7658-59 (Nov. 1, 2001); *Id.* By the amendment, Congress thus signified its intent that the state law remedies for claims against the City, the Port Authority and the owners of the World Trade Center were to be preempted. *Id* at 378. "What ATSSSA itself displaces is not the substantive standards governing liability, but only the state-law **damages** remedies" *Id* at 380 (emphasis added). The only damages remedies addressed by the Air Safety Act are those damages faced by air carriers and persons with a property interest in the World Trade Center (§408[a][1]), or the City of New York (§408[a][3]).

Noticeably, absent from that limitation of liability are the private owners of the buildings surrounding the World Trade Center site.

As the limitation of liability does not apply to these surrounding private buildings, the federal pre-emption of the damages remedies should not apply to them as well. Congress never intended to extend federal pre-emption to these distinct defendants otherwise untouched by ATSSSA or to the plaintiffs in the 21 MC 102 docket who are suing them.

C.     **The ATSSSA Goal of Consistency**

Another goal of ATSSSA was to ensure consistency and efficiency in resolving the many expected actions arising from the attacks on the World Trade Center. "We noted that '[t]he purpose of Section 408(b)(3)...was to ensure consistency and efficiency in resolving the many expected actions arising from events of September 11.'" *McNally,* 414 F.3d at 378 (*citing Canada Life*, 335 F.3d at 58). Senator Hatch stated: "For those who seek to pursue the litigation route, I am pleased we consolidated the causes of action in one Federal court so there will be some **consistency in the judgments awarded**. 147 Cong.Rec. S9595 (Sept. 21, 2001) (emphasis added).

There should be consistency among the ten thousand firemen, police officers and construction workers who worked on the mound, the transfer stations, or the Fresh Kills landfill. Crucial to the argument for federal jurisdiction in the 21 MC 100 docket is that those plaintiffs, and each of them, faced similar risks under similar conditions and in the litigation there were common defendants, common allegations of liability, and common defenses. The settlement of the 21 MC 100 docket ensures that goal. However, there cannot and should not necessarily be consistency among the one thousand workers in the 21 MC 102 docket. These workers worked in approximately 175 privately-owned buildings over a four year period. They were employed by dozens of employers. Liability is premised upon the New York Labor Law which specifies certain safety precautions in specific work environments. The liability of the approximately 385 defendants in the docket is entirely dependent upon the facts of each plaintiff's claims against each defendant. Each claim is unique requiring an individual determination.

By way of example, the following are issues which must be addressed in each plaintiff's claim against each defendant:

9

- Was the activity at the site "construction activity" under the Labor Law?

- Did the owner or contractor and/or their "agents" directly supervise the plaintiff's work?

- Was the plaintiff working in an unventilated "confined space"?

- Did the owner or contractor and/or their "agents" provide proper safety protection to the plaintiff?

- Did the plaintiff's employer provide proper safety protection to the plaintiff?

- Is there contractual indemnification between the plaintiff's employer and the owner or contractor and/or their "agents"?

- Was the plaintiff warned of the danger?

- Were the plaintiff's injuries caused by the failure to provide proper safety equipment?

- What is the plaintiff's prognosis?

- What is the plaintiff's past and future lost earnings?

- What is the amount of plaintiff's Worker's Compensation lien?

Each plaintiff in the 21 MC 102 docket worked at approximately six building locations and each building has an average of six defendants. Each case therefore has issues of proof and defenses unique to itself. The 21 MC 102 docket is compounded by the fact that there are over one thousand distinct plaintiffs' cases and over six thousand unique set of facts. There cannot be consistency in the docket. Each case has to be tried individually.

II.  THIS COURT DOES NOT HAVE SUPPLEMENTAL JURISDICTION OVER THE 21 MC 102 DOCKET

The Court raised the question of whether it possessed supplemental jurisdiction for the cases in the 21 MC 102 docket under 28 U.S.C. §1367. Order, Dec. 6, 2010. The Court does not.

28 U.S.C.§1367 states in part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other **claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.** Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties....

(c) The district courts **may decline to exercise supplemental jurisdiction over** a claim under subsection (a) if –
    (1) the **claim raises a novel or complex issue of State law**,
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,... (emphasis added)

Although the ATSSSA provides the Court with jurisdiction over the 21 MC 100 docket, the cases in the 21 MC 102 docket are not "so related" to the cases in the 21 MC 100 docket "that they form part of the same case or controversy under Article III of the United States Constitution." In *Canada Life*, the Court did not reach the issue of whether §403(b)(3) violates the constitutional limits on Congress's power to confer jurisdiction on the federal courts under Article III. However, the Court raised doubts of the section's constitutionality if it were to be applied to all claims for economic loss that would have been suffered "but for" September 11. 75 Fed. Appx. 799 at 59. In fact, the cases in the 21 MC 102 docket share none of the common questions of law or fact with the 21 MC 100 docket cases raises the same constitutional concerns as in *Canada Life*.

The Supplemental Jurisdiction statute is not a source of original subject-matter jurisdiction even when the action is related to another action which the federal district court already has subject matter jurisdiction, and even if removal would be efficient. *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 456 (6th Cir. 1996); *Port Authority of New York and New Jersey v. Allianz Ins. Co.*, 443 F.Supp.2d 548 (S.D.N.Y. Aug. 6, 2006)(wherein the

Court declined supplemental jurisdiction over insurance issues concerning the World Trade Center site).

In a suit brought by owners and lessees of the World Trade Center properties, this Court found supplemental jurisdiction over insurance claims since the ATSSSA extended limited liability to persons with property interest in the World Trade Center and thus the scope and the extent of the insurance company's liability coverage, was crucial to the disposition of the underlying personal injury claims. *In Re September 11th Liability Ins. Coverage Cases*, 333 F.Supp.2d 111 (S.D.N.Y. March 1, 2004). Because of the limitations of damages in the ATSSSA, a state court would not have the power to hear the entire dispute. "This would contradict Congress' desire for uniformity and expertise in dealing with these cases." *Id* (citations omitted). The Court weighed the exception to supplemental jurisdiction found in 28 U.S.C. §1367(c)("The district courts may decline to exercise supplemental jurisdiction over a claim under section (a) if (1) the claim raises a novel or complex issue of State law..") and although there were novel and complex issues of state law presented before it, retaining jurisdiction in order to resolve the entire dispute, was the stronger argument. *Id* at 118. Finally, the court did not reach the question of whether there was also an independent basis for jurisdiction under the Air Safety Act as it was not needed to be reached. *Id* at 119.

The cases in the 21 MC 102 docket offer no argument for federal jurisdiction. Their disposition is strictly a question of state law and the events of September 11 will not determine their outcome. The settlement of the cases in the 21 MC 100 docket eliminates any possible argument that the two dockets "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(c).

12

Additionally, this Court should also decline to exercise supplemental jurisdiction as the 21 MC 102 docket is an extraordinarily complex case, as detailed above, only involving state issues, which this Court should remand to state court for resolution.

## CONCLUSION

This Court does not have jurisdiction of the 21 MC 102 docket either under the ATSSSA or Supplemental Jurisdiction, and the cases in the 21 MC 102 docket should be remanded to state court. Such should be accomplished in a manner so as not to prejudice the rights of the plaintiffs who have commenced their litigation now pending before this Court.

Dated: New York, New York
       January 3, 2011

Gregory J. Cannata, Esq (GC-1835)
Gregory J. Cannata & Associates
Plaintiffs' Liaison
233 Broadway, 5th Floor
New York, New York 10279