UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
IN RE WORLD TRADE CENTER DISASTER  :
SITE LITIGATION                                          :    21 MC 100 (AKH)
                                                         :
                                                         :
-------------------------------------------------------- :
IN RE WORLD TRADE CENTER LOWER                           :
MANHATTAN DISASTER SITE LITIGATION  :    21 MC 102 (AKH)
                                                         :
                                                         :
-------------------------------------------------------- :
IN RE COMBINED WORLD TRADE CENTER   :
AND LOWER MANHATTAN DISASTER SITE   :    21 MC 103 (AKH)
LITIGATION                                               :
                                                         :
                                                         :
-------------------------------------------------------- x

### AFFIDAVIT OF CHRISTINE LASALA IN SUPPORT OF
### MOTION FOR STAY PENDING APPEAL

STATE OF NEW YORK        )
                         ) s.s.
COUNTY OF NEW YORK       )

Christine LaSala, being duly sworn, deposes and says:

    1.    I am over the age of eighteen (18) and am competent to make the statements contained herein.

    2.    I am President and CEO of the WTC Captive Insurance Company, Inc. ("WTC Captive"), which maintains offices at 100 William Street, Suite 2001, New York, New York 10038. I submit this affidavit in support of the Motion for Stay Pending Appeal filed by the City and the Contractors ("Defendants").

    3.    The WTC Captive was created pursuant to federal and New York State legislation to provide third-party liability insurance coverage to the Defendants for "claims arising from

debris removal, which may include claims made by city employees." Pub. L. No. 108–7, 117 Stat. 11, 517 (2003). The sole premium received by WTC Captive was a grant of approximately $1 billion received from the Federal Emergency Management Agency in December 2004.

4.   Since December 2004, the WTC Captive has defended and indemnified the Defendants pursuant to the terms of its policy against over 10,000 actions in this Court alleging injuries arising from the rescue, recovery, debris removal, and clean-up operations at the World Trade Center Site and related locations following the terrorist attack of September 11, 2001.

5.   In June 2010 the WTC Captive executed the World Trade Center Litigation Settlement Process Agreement, As Amended ("Amended SPA"), wherein the WTC Captive agreed to pay on behalf of Defendants a minimum of $625 million to settle the claims of all eligible plaintiffs who chose to opt into the settlement. The WTC Captive does not dispute coverage for any aspect of the settlement, including the bonus amount that may be due pursuant to the Court's September 8, 2011 order.

6.   On January 5, 2011, the parties to the Amended SPA affirmed that the Opt-In Threshold had been met, and the Amended SPA by its terms became the Final Settlement Agreement ("FSA"). The FSA requires the parties to agree upon a final opt-in percentage, but in light of Defendants' appeal of the September 8, 2011 order that issue (and the amount of any opt-in bonus due under the FSA) remains unresolved.

7.   Nonetheless, on March 7, 2011, the WTC Captive transferred $12.5 million to the Separate Account from which settlement payments are issued, reflecting the WTC Captive's calculation that the opt-in percentage ultimately would exceed 96% and that an opt-in bonus in that amount ultimately may be due. The WTC Captive transferred these funds subject to a full reservation of rights, including the right to remove the $12.5 million from the Separate Account

should the parties' final opt-in calculation (to be set forth in an addendum to the Affirmation of Final Settlement Agreement) not equal or exceed 96%. Since that time the Allocation Neutral has directed settlement payments based upon calculations that added the $12.5 million to the Settlement Amount.

8. I investigated the cost of purchasing a supersedeas bond to secure the maximum amount of $55 million that could be owed under the Court's September 8, 2011 order. In consulting an insurance broker and other sources, I determined that the cost of the bond would range from 1% to 2% of the bonded amount per annum, depending upon other terms and conditions such as the amount of collateral required, and potentially subject to reduction if significant collateral were posted. Consequently, the estimated cost of a $55 million bond likely would range from $550,000 to $1,100,000 per annum.

9. In light of this significant cost, I directed that the WTC Captive open a new interest-bearing account at its financial institution, the Bank of New York Mellon ("Security Account"). On September 20, 2011, having transferred previously $12.5 million to the Separate Account from which settlement payments are issued, the WTC Captive deposited additional assets valued at $42.5 million into the Security Account in lieu of purchasing a supersedeas bond. The WTC Captive will not withdraw any funds from the Security Account until Defendants' appeal of the September 8, 2011 order is resolved and the stay is lifted.

10. As reported in its most recent quarterly report, as of June 30, 2011, the WTC Captive held assets (not including sums already placed into the Separate Account to satisfy the WTC Captive's undisputed obligations under the FSA) of $423.2 million.

11. Upon information and belief, during the pendency of the stay the Allocation Neutral will continue to direct the WTC Captive to make payments to settling plaintiffs based

upon the undisputed Settlement Amount. The WTC Captive will comply with such payment instructions by the Allocation Neutral, including but not limited to Interim Payments and Final Distributions, in a timely fashion. If the Court's September 8, 2011 order is upheld on appeal, the WTC Captive will make supplemental payments to plaintiffs based upon the additional opt-in bonus as directed by the Allocation Neutral, regardless of whether all other payments contemplated by the FSA have been made by that time.

I state under penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2011
New York, New York

Christine LaSala

Sworn to before me this 21st day of September, 2011.

David R. Biester, Notary Public, State of New York, qualified in New York County, No. 02BI6241345. My commission expires May 16, 2015.