UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
IN RE: WORLD TRADE CENTER DISASTER SITE       21MC100 (AKH)
LITIGATION
------------------------------------------------------------------------X
IN RE: WORLD TRADE CENTER LOWER MANHATTAN
DISASTER SITE LITIGATION                                        21MC102 (AKH)
------------------------------------------------------------------------X
IN RE: COMBINED WORLD TRADE CENTER AND
LOWER MANHATTAN DISASTER SITE LITIGATION        21MC103 (AKH)
(STRADDLER PLAINTIFFS)
------------------------------------------------------------------------X

**PLAINTIFFS' RESPONSE TO DEFENDANTS' FEBRUARY 17, 2012 REPLY TO PLAINTIFFS' FILING ON THE CONTINGENT PAYMENT PROVISIONS OF THE FINAL SETTLEMENT AGREEMENT**

Plaintiffs, by and through 21MC100 Co-Liaison Counsel WORBY GRONER EDELMAN & NAPOLI BERN, LLP hereby respond to Defendants' Reply in response to the plaintiffs' Febraury 14, 2012 Response to this Court's request for information regarding the Contingent Payment Provision (Section IV) of the Settlement Process Agreement, As Amended ("SPA").

Mr. Tyrrell relies on a statement by Mr. LoPalo at the Conference held on January 9, 2012 in an effort to embarrass Plaintiffs' counsel by claiming our position has changed since we previously agreed with their and the Captive's contention that the number of "cases filed" precluded a Contingent Payment for the first period.  His reliance is misplaced.  At the time of the Conference, Ms. Warner had discussed the "number of cases filed" in advising this Court that the SPA precluded the Contingent Payment for this first year. Transcript, January 9, 2012, at p. 19: "THE COURT:  Was there a feature also in terms of how much money was spent on defense? MS. WARNER:  That was one of the component parts. But, the major trigger, if you will, of that contingent payment *was the number of cases filed*."

1

What Ms. Warner did not differentiate, however, was the difference between Notices of Claim filed and later abandoned versus Notices of Claim that matured to litigation complaints commenced as actions before this Court; she also offered no differentiation between Complaints filed and later voluntarily withdrawn versus those that are still pending. In addition, at the time of the January 9, 2012 conference, Mr. LoPalo had not yet had the opportunity to review the information that was later provided to us on February 9, 2012. As explained in our February 14 filing, this updated information was necessary to determine whether or not the parties are in agreement on the amount of the First Contingent Payment since filings of "Notices of Claim" pursuant to New York General Municipal Law ("GML") §50-e are not public filings and thus are known only to the City of New York and the Captive.

Notwithstanding defendants' argument (supported by the emails annexed to Mr. Genz's Affirmation) that they provided information to plaintiffs in April 2011, in May 2011 and to Mr. Carboy on December 5, 2011, that information was changing throughout the time and reflected Notices of Claim filed; not actions commenced. *Indeed, cases were being withdrawn up to and including the January 2, 2012 deadline set by the Zadroga Rules* for claimants to seek their benefits. As argued in the February 14, 2012 Plaintiffs' filing, counting Notices of Claim, rather than commenced actions, and counting subsequently withdrawn claims or complaints to determine whether the Contingent Payment was due undermines the logic and purpose of the Contingent Payment provision of the SPA.

Indeed, even Mr. Tyrrell argued in a motion in July 2009 that a Notice of Claim is not the equivalent of a filed action; it is only a condition precedent to the subsequent filing of a litigation complaint before the Court. *See* Transcript of Oral Argument, July 28, 2009, at pp. 4-5. Moreover, on January 9, 2012, Ms. Warner advised this Court that Zadroga had not figured into

the drafting of the Contingent Payment section; as we discussed in the February 14 papers, Zadroga was not then in effect and from all available information at the time the SPA was entered, there was no reason to believe Zadroga would become law.  But this Court can not reasonably overlook the simple fact that most of the claims filed have been withdrawn or are in the process of being withdrawn.  There is simply no logical or reasonable argument to support the Captive relying on Notices of Claim that have expired without a timely Complaint being filed, or which resulted in complaints that have since been withdrawn, should be counted against the Contingent Payment.

    The Captive will not have to defend those claimants' cases and will not have to reserve funds out of a concern they will later sue the City or its Contractors.  That money should be paid as the Contingent payment without further delay.

## CONCLUSION

    The Captive should be required to pay the first Contingent Payment of $5 million to those Tier 4 plaintiffs who received and reasonably relied upon the Captive's promises to them and to this Court, without further delay.

Dated:   New York, New York
           February 21, 2012

                           Respectfully submitted,

                           WORBY GRONER EDELMAN & NAPOLI BERN, LLP
                           *Plaintiffs' Co-Liaison Counsel*

                           Paul J. Napoli (PN-8845)

3

**ATTORNEY CERTIFICATION OF SERVICE**

  DENISE A. RUBIN, an Attorney duly licensed to practice before the Courts of the State of New York and a member of the Bar of this Honorable Court, hereby Certifies under penalty of perjury that on February 21, 2012, I have served Defendants' Liaison Counsel (Counsel for the City of New York and its Contractors) and Counsel for the WTC Captive Insurance Company, Inc., with a true copy of the within Response via email and through filing the same with the Court's ECF system

                     _____
                      DENISE A. RUBIN (DR5591)