UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
IN RE WORLD TRADE CENTER DISASTER       :
SITE LITIGATION                         :   21 MC 100 (AKH)
                                        :
------------------------------------------------------------- :
IN RE WORLD TRADE CENTER LOWER          :
MANHATTAN DISASTER SITE LITIGATION      :   21 MC 102 (AKH)
                                        :
------------------------------------------------------------- :
IN RE COMBINED WORLD TRADE CENTER       :
AND LOWER MANHATTAN DISASTER SITE       :   21 MC 103 (AKH)
LITIGATION                              :
                                        :
------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR STAY PENDING APPEAL**

**INTRODUCTION**

The City of New York and the Contractors ("Defendants")[1] have appealed the July 23, 2012 Judgment ("Judgment") entered pursuant to the Court's July 13, 2012 Order and Opinion Requiring Contingent Payments to be Paid to Settling Plaintiffs ("Contingent Payment Order"). They now ask the Court to stay the Judgment and Contingent Payment Order while their appeal is pending. To safeguard Plaintiffs' interests, the WTC Captive Insurance Company, Inc. ("WTC Captive") has deposited $5 million plus $2,787.67 in interest into a separate interest bearing account and will, as a condition of the stay, maintain those funds in the separate account for the duration of the appeal, thereby eliminating any possibility, however remote, that Defendants and the WTC Captive would be unable to satisfy the Contingent Payment Order if it is upheld on appeal.[2] Plaintiffs' Liaison Counsel in the 21 MC 100 Docket, Paul J. Napoli and Nicholas Papain, consent to the relief sought by this motion.

A stay on these terms is appropriate and is a proper exercise of the Court's discretion. Indeed, the Court granted a stay of the Bonus Orders on the same terms while Defendants pursue an appeal. *See* Sept. 28, 2011 Order. As with the prior stay, a stay of the Judgment and Contingent Payment Order will not harm Plaintiffs because the disputed funds will be protected

---

[1] Defendants include the City of New York; AMEC Construction Management, Inc.; AMEC Earth & Environmental, Inc.; Lend Lease (US) Construction LMB Inc.; Evergreen Recycling of Corona (E.R.O.C.); Plaza Construction Corp.; Tully Construction Co., Inc.; Turner Construction Company; and Turner/Plaza, a Joint Venture; and the other entities (the "Contractors") identified in Exhibit A to the World Trade Center Litigation Settlement Process Agreement, as Amended ("Amended SPA"). Upon the parties' affirmation that the Opt-In Threshold had been met on January 5, 2011, the Amended SPA became the "Final Settlement Agreement" or "FSA." Capitalized terms not defined herein shall have the meaning ascribed to them in the FSA.

[2] The funds placed into the separate account on July 24, 2012 to secure the Contingent Payment Order are distinct from and in addition to the $42.5 million separated by the WTC Captive on September 20, 2011, as security while Defendants appeal a series of this Court's orders finding a "bonus payment" to be due under the FSA ("Bonus Orders"). (LaSala Aff., ¶ 8).

and remain available for distribution if the Court's ruling is affirmed. The stay will not delay any other payments due under the FSA, as the Allocation Process is complete and all other proceeds have been distributed, with the exception of the disputed "bonus payments" that are the subject of the prior appeal. Moreover, a stay will protect Defendants and the WTC Captive from the harm they otherwise will sustain if funds are distributed now and the Court's ruling is *not* upheld by the Second Circuit (there is no realistic possibility that Defendants or the WTC Captive would be able to recover funds distributed to Plaintiffs). If the Court does not grant this motion, Defendants will be compelled to obtain a stay as of right under Rule 62(d) by incurring the expense of a supersedeas bond. In addition, because the funds at issue stand as protection to the Defendants, there is a strong public interest in preserving them against an improper distribution, as well as in avoiding the wasteful expense of a supersedeas bond. Finally, Defendants' arguments for reversal of the Judgment and Contingent Payment Order are sufficiently substantial that a stay of the Order is warranted. The Court should therefore stay its Judgment and Contingent Payment Order pending resolution of the appeal.

## BACKGROUND

The FSA called for $625 million (the "Settlement Amount") to be distributed to settling Plaintiffs and to be used to fund the purchase of a Critical Injury Insurance Policy. These funds have been distributed pursuant to the instructions of the Allocation Neutral**.** (1:21-MC-00100-AKH, Dkt. No. 2830). In addition to the Settlement Amount and a "bonus payment" due, if any, the Defendants and the WTC Captive agreed conditionally to make "Contingent Payments." (FSA § IV.) "These Contingent Payments shall become due only if certain contingencies are satisfied, and it is possible under the terms herein that no Contingent Payments will ever become due." (FSA § IV.A.) Whether a Contingent Payment is due, and if so, in what amount, is

determined on each of the first five anniversaries of the FSA Effective Date—January 5, 2011 ("Contingent Payment Determination Date").  (FSA § IV.B.)

Contingent Payments are determined based upon criteria specified in the FSA.  The threshold criteria is the "number of New Debris Removal Claims filed or submitted to the City of New York" as of each Contingent Payment Determination Date.  (FSA § IV.A.i.)[3]  If the number of New Debris Removal Claims filed or submitted exceeds the agreed-upon limit, the Contingent Payment is reduced or eliminated.  Based upon the actual number of New Debris Removal cases filed or submitted, the parties agreed that no Contingent Payment was due as of January 5, 2012, the First Contingent Payment Determination Date.  (Jan 9, 2012 Tr. 18:7—20:10).

On January 24, 2012, the Court entered *sua sponte* an order requiring the parties to submit information purportedly relevant to the Contingent Payment provisions of the FSA.  (1:21-MC-00100-AKH, Dkt. No. 2744).  The parties submitted information and argument in response to the January 24 Order, completing their submissions on February 23, 2012.

On July 13, 2012, the Court issued the Contingent Payment Order, holding that "a Contingent Payment of five million dollars was due from the WTC Captive on January 5, 2012, and was payable January 20, 2012."  (Contingent Payment Order 10).  The Court held further "that the City and the WTC Captive breached the settlement agreement by failing and refusing to make the payment." (*Id.* at 1).  The Court instructed the Clerk to "enter judgment accordingly, with interest" and the Clerk entered the Judgment on July 23, 2012.  (*Id.* at 14).  Finally, the

---

[3] Section I.JJ of the FSA defines "New Debris Removal Claims" in pertinent part to mean "all Debris Removal Claims filed, or asserted for the first time against the Insureds or any of them in a complaint, an amended complaint, a summons with notice, or a notice of claim served on or after April 13, 2010." "Debris Removal Claims" are defined in pertinent part as "all claims, causes of action, notices of claims, notices of suits, suits, and actions relating in any way to or arising out of the rescue, recovery, and/or debris removal operations, activities and/or other alleged or actual conduct or omissions on and/or after September 11, 2001." (FSA § I.O.)

Court made other findings that Defendants and the WTC Captive will challenge on appeal. On July 24, 2012, Defendants filed a notice of appeal from the Judgment.

## ARGUMENT

Absent a stay, the $5 million First Contingent Payment plus interest must be distributed to Plaintiffs pursuant to the Allocation Neutral's instructions. Though costly, posting a supersedeas bond would give Defendants an absolute right to a stay pending appeal; thus, the fundamental question on this motion is not whether to stay the Judgment and Contingent Payment Order, but whether to require the WTC Captive to diminish needlessly Defendants' available insurance to obtain the stay. As explained below, the purpose of supersedeas bonds would not be served by requiring one here. Instead, the Court should protect the interests of *all* interested parties by staying the Judgment and Contingent Payment Order pending appellate review on the terms set forth above.

Under Rule 62(d), a party that posts a supersedeas bond is entitled to an "automatic" stay pending appeal "as of right." *See, e.g., Frommert v. Conkright*, 639 F. Supp. 2d 305, 308 (W.D.N.Y. 2009) (citing Fed. R. Civ. P. 62(d); *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*, 87 S. Ct. 1, 3 (1966) (Harlan, J., in chambers); *Cohen v. Met. Life Ins. Co.*, 334 F. App'x 375, 378 (2d Cir. 2009); *Eurasia Int'l, Ltd. v. Holman Shipping, Inc.*, 411 F.3d 578, 585 (5th Cir. 2005)); 11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2905 & nn. 6–7 (2d ed. 1995 & Supp. 2011) (citing cases). Without prejudice to their right to post a supersedeas bond and thereby obtain such a stay, Defendants first seek a discretionary stay because the cost of obtaining a bond (LaSala Aff. ¶6) would diminish needlessly Defendants' insurance protection and because the proposed segregation of funds is, as explained herein, more than sufficient to ensure Defendants' and the WTC Captive's future ability to satisfy the

Contingent Payment Order. *See Frommert*, 639 F. Supp. 2d at 313 ("'The purpose of requiring a supersedeas bond pending appeal is to secure the judgment throughout the appeal process against the possibility of the judgment debtor's insolvency.' Therefore, if the district court is confident that the judgment debtor will continue to have sufficient funds to satisfy the judgment, the court may dispense with the bond requirement.") (internal citation omitted).

Where, as here, the moving parties seek a stay without posting a supersedeas bond, the decision to grant a stay pending appeal is committed to the court's equitable discretion. In considering whether to grant such a stay, the courts of this district "typically" employ a four-factor balancing test that asks:

> (1) whether the petitioner is likely to prevail on the merits of his appeal; (2) whether, without a stay, the petitioner will be irreparably injured; (3) whether issuance of a stay will substantially harm other parties interested in the proceedings; (4) wherein lies the public interest.

*Harris v. Butler*, 961 F. Supp. 61, 62 (S.D.N.Y. 1997) (citations omitted); *accord de la Fuente v. DCI Telecomms., Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003). The four factors "will be applied flexibly according to the circumstances of each case." *de la Fuente*, 269 F. Supp. 2d at 240. No single factor is dispositive; indeed, a stay properly may be granted even where one or more factors weighs against it. *See, e.g.*, *Cayuga Indian Nation of N.Y. v. Pataki*, 188 F. Supp. 2d 223, 252–53 (N.D.N.Y. 2002) (concluding with "little difficulty" that stay was warranted despite finding that petitioner failed to show irreparable harm absent the stay).

As explained more fully below, in analyzing the first equitable factor, "[t]he necessary 'level' or 'degree' of possibility of success [on the merits of the appeal] will vary according to the court's assessment of the other [stay] factors," especially the "balance of hardships" reflected in the second and third factors. *Mohammed v. Reno*, 309 F.3d 95, 101 & n.10 (2d Cir. 2002) (third alteration in original) (citations omitted). Accordingly, Defendants first address the

balance of hardships, followed by the public interest, and finally, the likelihood of prevailing on appeal.

## I. A STAY WILL NOT SUBSTANTIALLY HARM THE OTHER PARTIES AND WILL GUARD AGAINST SUCH HARM.

It is axiomatic that "[a] judgment creditor's primary concern when a judgment in his favor is stayed pending appeal is that he be secure from loss resulting from the stay of execution." *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1154 (2d Cir. 1986), *rev'd on other grounds*, 481 U.S. 1 (1987) (internal citations omitted). "The court may order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery." *Id.* at 1155 (internal citations omitted). Here, Plaintiffs' interests are not endangered because there is no risk that Defendants' insurer will be unable to satisfy the Judgment if it is upheld on appeal. The WTC Captive has placed $5 million of assets into a separate account and, provided a stay is entered, will not remove those assets until Defendants' appeal is resolved. (LaSala Aff. ¶ 7.) The unqualified availability of these insurance assets provides further evidence that Plaintiffs will not be harmed by a stay. The WTC Captive agreed without reservation to indemnify Defendants against Plaintiffs' claims and is a party to the FSA. (*Id.* ¶¶ 5 - 6.) Beyond the $5 million in separated funds plus $2,787.67 in interest, the WTC Captive's financial position is solid, as the company reported $340.3 million in assets as of June 30, 2012. (*Id.* ¶ 8.) Moreover, the WTC Captive files financial statements on a quarterly basis with its regulators and other public entities. (*Id.*) In short, Plaintiffs bear no financial risk if the Judgment and Contingent Payment Order are stayed pending appeal. *Cf. Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 486 (S.D.N.Y. 2003) (insurer's declaratory judgment action contesting coverage and placement into receivership weighed against a stay absent posting of a supersedeas bond).

Further, a stay of the Judgment and Contingent Payment Order will not delay settlement payments to Plaintiffs that otherwise have come due under the terms of the FSA, as all such payments have been made, with the sole exception of disputed "bonus payments" that are the subject of a separate appeal. Should the appeal of the Contingent Payment Order prove unsuccessful, the Allocation Neutral easily can direct supplemental payments to affected Plaintiffs reflecting whatever amount the appellate court finds appropriate.

## II. DEFENDANTS WILL BE IRREPARABLY HARMED UNLESS A STAY IS GRANTED.

A financial loss can be considered an "irreparable harm" if it "cannot be rectified by compensation" from the opposing party. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). "However, a perhaps more accurate description of the circumstances that constitute irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). The *Tucker* and *Brenntag* courts each found irreparable harm where imminent insolvency of the non-movant left the movant no recourse to recover funds should it prevail subsequently.

In a similar manner, if the disputed $5 million is paid to the over 5,000 individual recipients before the appeal is resolved, there is no realistic possibility that such funds could be recovered should Defendants prevail on appeal. Seeking the return of funds from these individuals would be costly, legally difficult, and logistically impossible. Moreover, the insurance protection afforded Defendants by the WTC Captive will not be replenished through any other means. The WTC Captive was funded by a one-time premium payment from the Federal Emergency Management Agency. The WTC Captive's policy is not reinsured and there

are no prospects for reimbursement of the disputed amount should the Defendants prevail on appeal.

Denial of a stay thus would cause irreparable harm to the Defendants by depriving them of $5 million of insurance protection against pending and future claims. As a matter of law, the assets of the WTC Captive are the "first line of defense" for these insureds. *See* James Zadroga 9/11 Health and Compensation Act of 2010, Pub. L. No. 111-347, 124 Stat. 3623 (2011). Specifically, Section 204 of the Zadroga Act states that "the amount of funds of the WTC Captive Insurance Company, including the cumulative interest" must be applied first to defend and indemnify Defendants before other funding sources might become available. The improper depletion of these assets, without any prospect of replenishment, would therefore cause irreparable harm to Defendants.

## III. A STAY IS IN THE PUBLIC INTEREST.

The WTC Captive was funded with a special-purpose grant from the federal government to provide the Defendants with liability insurance coverage that they could not obtain in the insurance marketplace after the events of September 11, 2001. The Defendants have an acute interest in preserving the WTC Captive's funds for the purpose intended by Congress—the defense and indemnification of the City and the Contractors against claims arising out of the rescue, recovery, debris-removal, and cleanup operations at the site of the former World Trade Center and related locations. That interest will be harmed if funds must be paid out pursuant to an order that later is overturned on appeal. As discussed above, it would be impractical and impossible for Defendants or the WTC Captive to recover such disbursed funds from the thousands of individual settling Plaintiffs. Accordingly, a stay pending resolution of Defendants' appeals is in the public interest. *Cf. Cayuga Indian Nation*, 188 F. Supp. 2d at 252 (finding that

"the broader public interest vis-à-vis New York State taxpayers as a whole augurs in favor of granting a stay").

### IV. THE LIKELIHOOD THAT DEFENDANTS WILL PREVAIL ON THE MERITS OF THEIR APPEAL SATISFIES THE APPLICABLE STANDARD.

The "likelihood of success" standard does not require Defendants to persuade the Court that it probably erred in its Contingent Payment Order. Instead, the Second Circuit has endorsed a sliding scale approach in which "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." *Mohammed*, 309 F.3d at 101 (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (second alteration in original)). Thus, a stay pending appeal is proper even "where the likelihood of success is not high but the balance of hardships favors the applicant," just as it is proper "where the probability of success is 'high' [but only] 'some injury' has been shown." *Id.* (citing *Holiday Tours*, 559 F.2d at 843; *Cuomo v. U.S. Nuclear Reg. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)). Under this standard, "court[s] ha[ve] required only that the petitioner demonstrate a 'substantial case on the merits,' even if ultimate success is not a mathematical probability." *Cayuga Indian Nation*, 188 F. Supp. 2d at 253 (alterations in original) (quoting *Morgan Guar. Trust*, 702 F. Supp. at 65); *see also Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983) (where balance of hardships "tips sharply" in favor of stay, the petitioner need only "demonstrate that serious legal questions are raised").

Here, there can be little dispute that Defendants' arguments present at least a "substantial case on the merits" that raises "serious legal questions" concerning, among other issues:[4]

---

[4] As the Court is familiar with Defendants' arguments on the merits, Defendants do not belabor them here but incorporate by reference their previous response to the January 24, 2012 Order, and their reply to Plaintiffs' response. (1:21-mc-00100-AKH, Dkt. Nos. 2761 and 2763.)

- The proper application of the FSA's clear terms to the undisputed number of filed or submitted New Debris Removal Claims;

- The Court's jurisdiction or authority to adjudicate *sua sponte* the obligations of not only the parties to this litigation but also a non-party, the WTC Captive, in the absence of any action to enforce the FSA or other litigation over Contingent Payments;

- The Court's authority to approve, modify, or amend the terms of the settlement.

Because Defendants' appeal involves serious legal questions and the other three equitable factors heavily favor a stay, there is a sufficient likelihood of success on the merits to justify a stay.

## CONCLUSION

For the reasons stated above, this Court should stay the Judgment and Contingent Payment Order pending resolution of Defendants' appeal.

Dated: July 24, 2012　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　/s/ *James E. Tyrrell, Jr.*
　　　　　　　　　　　　　　　　　　　　　James E. Tyrrell, Jr. (JT 6837)
　　　　　　　　　　　　　　　　　　　　　PATTON BOGGS LLP
　　　　　　　　　　　　　　　　　　　　　1185 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　　　New York, New York 10036
　　　　　　　　　　　　　　　　　　　　　(212) 246-5100
　　　　　　　　　　　　　　　　　　　　　-and-
　　　　　　　　　　　　　　　　　　　　　One Riverfront Plaza, 6th Floor
　　　　　　　　　　　　　　　　　　　　　Newark, New Jersey 07102
　　　　　　　　　　　　　　　　　　　　　(973) 848-5600
　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants the City of New York and the Contractors*