UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IN RE: WORLD TRADE CENTER LOWER
MANHATTAN DISASTER SITE LITIGATION        21 MC 102 (AKH)

IN RE: COMBINED WORLD TRADE CENTER         21 MC 103 (AKH)
LOWER MANHATTAN DISASTER SITE
LITIGATION (straddler plaintiffs)

------------------------------------------------------------X

This document pertains to all cases listed on Exhibit
"A"

## DEFENSE OPPOSITION TO MOTIONS TO REINSTATE 22 CASES DISMISSED BY THE COURT'S JULY 25, 2012 ORDER

### STATEMENT OF FACTS

This mass-tort litigation arises out of the September 11, 2001 terrorist attacks on New York City. To manage the thousands of cases consolidated in the Southern District of New York, the Court created three master dockets – 21 MC 100, 21 MC 102 and 21 MC 103. The 22 cases subject to the present motion are all contained in the 21 MC 102 docket and are identified on Exhibit "A" to the Declaration of Richard Leff dated September 7, 2012 ("Leff Decl.").

To efficiently advance the dockets, in its Order of August 29, 2011, the Court set out a process for the selection of 45 plaintiffs to proceed through full pretrial discovery. (Exhibit "B" to Leff Decl.). At the core of this process is the TCDI database, which pursuant to the Court's directive, maintains and keeps track of each active plaintiff's answers to a set of court-ordered interrogatories. The Court's Order of August 29, 2011, states each plaintiff must personally swear to his or her interrogatory responses by personal signature.

In its Order of September 28, 2011, responding to a request to relax the requirement that Plaintiffs' interrogatory responses be duly sworn to, the Court confirmed that, consistent with the Fed. R. Civ. P. 33, each interrogatory must be answered "separately and fully in writing under oath." (Exhibit "C" to Leff Decl.). To "avoid defaults," the Court allowed Plaintiffs and their counsel until – "but not beyond" – October 31, 2011, to provide proper certification of their responses. The Court further noticed that the Plaintiff-selection process would be delayed owing to this new extension of time.

In its Order of November 8, 2011, the Court again provided Plaintiffs and their counsel additional time to submit certifications, moving the deadline forward to November 14, 2011. (Exhibit "D" to Leff Decl.). The Court reiterated, consistent with its remarks on the records at an October 18, 2011 hearing, Plaintiffs' certifications must be supported by an official oath or sworn to under penalty of perjury pursuant to 28 U.S.C. §1746. The Court rejected improper declarations and required all Plaintiffs failing to properly certify their responses to show cause by November 18, 2011, why their cases should not be dismissed for failure to prosecute.

In its November 8, 2011 Order, the Court made it very clear that the certification was to follow the language as indicated in the form provided by 28 U.S.C. §1746. To ensure complete clarity, the Court quoted the language verbatim in its Order. The Court further stated that a certification that did not conform to the quoted language was *not* the substantial equivalent of same. See Exhibit "D."

On November 17, 2011, the Court yet again accommodated and granted Plaintiffs' request to extend the deadline for Plaintiffs to submit certifications of their

interrogatory responses until December 2, 2011. (Exhibit "E" to Leff Decl.). Noting that this enlargement further delayed the Plaintiff-selection process, the Court's Order stated "[n]o further enlargements will be granted." On December 3, 2011, the Napoli Firm requested, yet again, to extend the certification deadline—this time on behalf of 170 Plaintiffs who had failed to properly certify their interrogatory responses by December 2. Whether by intent or oversight, the December 3, 2011 motion failed to include 132 additional Plaintiffs who had *also* failed to properly certify their interrogatory responses by the December 2 deadline. In its Order of December 8, 2011, (Exhibit "F" to Leff Decl.), the Court denied the Napoli Firm's motion and dismissed, with prejudice, the claims of the 170 moving Plaintiffs.[1]

On January 11, 2012, Defendants submitted a motion to dismiss the claims of the remaining 132 Plaintiffs who had been excluded from the Napoli Firm's December 3, 2011 motion but who failed to properly verify their interrogatory responses by the deadline. Oral argument was heard on July 23, 2012, before this Court and by Order dated July 25, 2012 (Exhibit "G" to Leff Decl.), the Court dismissed thirty-one (31) Plaintiffs who failed to submit properly verified interrogatory responses by the Court's deadline.[2] These cases were dismissed on the same grounds as stated in this Court's December 8, 2011 Order (Exhibit "F" to Leff Decl.) dismissing 170 other plaintiffs who failed to timely provide proper verifications for their interrogatory responses.

As part of its July 25, 2012 Order, the Court stated if the 31 Plaintiffs wished to challenge the dismissal of their cases, they could submit a motion pursuant to Fed. R.

---

[1] Though the Court's Order advised Plaintiffs that they could challenge the dismissal through a Rule 60(b) motion filed by January 2, 2012, only 13 of those plaintiffs have done so. As discussed further herein, the Court refused to reinstate the eight cases where Plaintiffs provided similar excuses to those provided here.
[2] The remainder of the 132 Plaintiffs have dismissed their claims.

Civ. P. 60(b) by August 24, 2012. (*See* Exhibit "G" to Leff Decl.) On August 24, 2012, the 22 plaintiffs identified on Exhibit "A," each submitted a motion seeking to reinstate their individual case. The grounds for seeking reinstatement for all 22 Plaintiffs are identical. In the interests of judicial economy, Defendants submit this single, unified response in opposition to all of the 22 motions.

It is not disputed that all of the 22 plaintiffs failed to timely submit proper verifications to their interrogatory responses as required by the Court's Orders. Each Plaintiff asserts they were delayed in certifying their response because:

(a) Plaintiffs were unsure as to whether they were going to remain in the litigation or elect to participate in the Victims Compensation Fund provided via the James Zadroga 9/11 Health and Compensation Act of 2010 (hereinafter "Zadroga"). They believed they had until January 2, 2012 to make this decision and upon electing not to participate in Zadroga, signed their certifications;

(b) Plaintiffs believed their prior certification was sufficient because it was signed and was similar to the Court-ordered certification with few differences between them; and

(c) Plaintiffs state their injuries had not changed and the one-month difference between December 2, 2011, and January 2, 2012, would not have prejudiced the defendants.

Plaintiffs' excuses fail to meet the grounds to reinstate their cases under Rule 60(b) of the Fed. R. Civ. P. Plaintiffs' contemplation of whether to participate in

Zadroga does not alter or circumvent their obligations to comply with Court-ordered discovery. In its November 17, 2011 Order (Exhibit "E" to Leff Decl.), the Court was very clear that proper certifications were to be submitted no later than December 2, 2011. The December 2, 2011 deadline was the *fourth* extension of time granted by the Court to Plaintiffs to submit properly verified interrogatory responses: the initial deadline of August 29, 2011 was extended to September 28, 2011, extended again to October 31, 2011, extended again to November 8, 2011, extended again to November 14, 2011 and finally extended to December 2, 2011. Compliance was not dependent on whether a Plaintiff would elect to participate in Zadroga, nor would compliance with the Court's Order preclude any of the Plaintiffs from electing to participate in Zadroga. Moreover, compliance with the Court's Order did not place a significant burden on the Plaintiffs.

Plaintiffs' purported beliefs that their prior certifications were "similar" and had few differences from the certification ordered by the Court are irrelevant. In its November 8, 2011 Order (Exhibit "D" to Leff Decl.), the Court was very clear that the certification was to follow the language as indicated in the form provided by 28 U.S.C. §1746. To prevent any misunderstanding, the Court quoted the language of 28 U.S.C. §1746 in its Order. The Court further stated that a certification that failed to conform to the quoted language was *not* the substantial equivalent and would not be acceptable. There can be no mistake as to the language the certification was required to contain and these Plaintiffs simply failed to comply with this Court's directive.

In addition, the allegation that Plaintiffs' injuries did not change over the course of the litigation is not a valid ground for failing to comply with this Court's Orders. The Court's Orders applied to all Plaintiffs, not just those with new injuries. Of the 170 cases

dismissed for failure to properly certify interrogatory responses by the December 2 deadline pursuant to the Court's December 8, 2011 Order, 13 of those Plaintiffs moved to reinstate their case under Rule 60(b) of the Fed. R. Civ. P. *None* of the cases where Plaintiffs' simply failed to follow the Court's instructions, whether due to misunderstanding, other obligations, or because of law-office neglect or filing order were reinstated. For the instant 22 cases, Plaintiffs simply failed to follow the Court's directives. As consistent with the Court's April 4, 2012 Order (Exhibit "H" to Leff Decl.), none of these cases should be reinstated and the motions should be denied.

## ARGUMENT

### THE CASES SHOULD NOT BE REINSTATED AS PLAINTIFFS REPEATEDLY IGNORED THE COURT'S ORDERS

This Court was well within its authority pursuant to Fed. R. Civ. P. 41(b) to dismiss the twenty-two (22) Plaintiffs' cases currently seeking review under Rule 60(b).

Rule 41(b) states, in pertinent part, that if "the plaintiff fails to prosecute or to comply with . . . a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Although not specifically cited within Rule 41(b), a district court also possesses "the inherent power to dismiss a case, *sua sponte*, for lack of prosecution." *Thomas v. Shinseki*, 2011 U.S. Dist. LEXIS 115971 (emphasis in original). *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962); *Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir. 1998). The district court's authority to invoke this remedy is essential "because of the strong policy favoring prompt disposition of cases." *Lyell Theatre Corp.*, 682 F.2d 37, 43 (S.D.N.Y. 1987). Further, it is well established that a district court's dismissal of "an action is warranted when a litigant . . . fails to comply with legitimate Court directives. . . ." *Id.* citing to *Beeks v. Reilly*, No. 07 Civ 3865, 2009 WL 2568531,

at *2 (E.D.N.Y. Aug. 19, 2009) (citations omitted). Such dismissals are also determined to be the "functional equivalent of an order of dismissal with prejudice." *Storey v. O'Brien*, No. 10-3303-cv, 2012 U.S. App. LEXIS 10598 (2d Cir. May 25, 2012) citing to *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 417 F. Supp. 2d 417, 420 (S.D.N.Y. 2006), *See also Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-07 (2001) (defining an "adjudication on the merits" pursuant to Rule 41(b) as "barring the plaintiff from returning later, to the same court, with the same underlying claim").

Plaintiffs' argument that this Court was incorrect in dismissing the 22 cases cited is predicated on misapplied and/or irrelevant case law regarding the standards established within the Federal Rules of Civil Procedure and case precedents of the Second Circuit. The majority of Plaintiffs' argument is grounded in the holding of *Sterling Promotional Corp. v. General Acc. Ins. Co. of New York*, which Plaintiffs incorrectly attempt to apply to the current litigation. 86 Fed.Appx. 441 (2d Cir. 2004). *Sterling* involved a party's failure to comply with a discovery order in an ordinary two-party case, not a mass tort litigation involving thousands of Plaintiffs and hundred of defendants, such as the current litigation. A single Plaintiff's failure to comply with a Court Order has a direct impact on all parties—Plaintiffs and Defendants. The repeated indifference of the Plaintiffs seeking relief for nearly 100 days following four extensions prejudiced not only Defendants in this matter, but fellow Plaintiffs' as well, by not allowing the litigation to proceed accordingly and in a timely fashion. Plaintiffs purposely flouted the express directives of this Court, although Plaintiffs' were repeatedly notified by this Court that their reticence could potentially result in dismissal. The Court was well within its right to manage its docket as necessary to ensure the orderly execution of cases, and no lesser sanction could

be made available when the demographics of the entire docket in full were required in choosing Plaintiffs for expedited discovery.

Further, Plaintiffs' continue to state the delay in not meeting the Court's final December 2, 2011 deadline to submit the newly worded verifications was only one months time. This is simply not true. Plaintiffs' were originally given notice of the directive to collect properly worded certifications in the Court's August 29, 2011 Order. Four extensions via multiple orders over three month's time were provided to Plaintiffs'. This Court was well within its rights to dismiss all non-compliant Plaintiffs.

### PLAINTIFFS SEEKING REINSTATEMENT FAILED TO OFFER VALID GROUNDS UNDER RULE 60(b)

The Court repeatedly extended deadlines for nearly 100 days, or over three months, to the 22 Plaintiffs' seeking relief via Rule 60(b) from the July 25, 2012 Order. These Plaintiffs' have failed to proffer valid reasons and/or legally recognized grounds under Rule 60(b) for their repeated indifference in flouting this Court's Orders.

Rule 60(b) allows a district court to reconsider a previous order or judgment and to provide requisite relief based on any of the following six criteria: (1) "mistake, inadvertence, surprise, or excusable neglect;" (2) "newly discovered evidence;" (3) "fraud . . .misrepresentation, or other misconduct of an adverse party;" (4) "the judgment is void;" (5) "the judgment has been satisfied . . .or is no longer equitable that the judgment should have prospective application;" and (6) " any other reason justifying relief from the operation of the judgment." *Williams v. New York City Dep't of Corr.*, 219 F.R.D. 78, 83, citing to Fed. R. Civ. P. 60(b).

A Rule 60(b) motion is determined at the "sound discretion of the trial court." *Williams* at 84 citing *Velez v. Vassallo*, 203 F. Supp. 2d 312, 333 (S.D.N.Y. 2002) (citing

*Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990). Although this discretion is provided to the district courts, Rule 60(b) was intended to "strike a balance between the interests of fairness and the finality of judgments," and as such, "final judgments should not be lightly reopened." *Williams* at 85 citing *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986); *Velez*, 203 F. Supp. 2d at 333.

*Determination of Rule 60(b) Review*:

In determining whether a moving party should be granted relief, the Second Circuit has deemed Rule 60(b) to be considered a motion of "extraordinary judicial relief" and relief granted "only upon a showing of exceptional circumstances." *Harrison v. N.Y. City Admin for Children's Servs.*, 2005 U.S. Dist. LEXIS 17761, No. 02 Civ 947 (S.D.N.Y. Aug. 23, 2005) citing to *Nemaizer*, 793 F.2d at 61. *See also Salomon v. 1498 Third Realty Corp.*, 148 F.R.D. 127, 128 (S.D.N.Y. 1993). A moving party must successfully demonstrate that at least one of the aforementioned six delineated criteria within Rule 60(b) is valid as per a "three-prong test" adopted by the Second Circuit: "First, there must be 'highly convincing' evidence supporting the motion; second, the moving party must show good cause for failing to act sooner; and third, the moving party must show that granting the motion will not impose an undue hardship on the other party." *Williams* at 84, citing to *Broadway v. City of New York*, No. 96 Civ 2798, 2003 WL 21209635 at *3 (S.D.N.Y. May 21, 2003); *Kotlicky v. U.S. Fidelity Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987). *See also State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 246 F. Supp. 2d 231, 248 (S.D.N.Y. 2002) (holding that whether relief is justified, the burden is with the moving party).

In the cases at bar, only two of the six listed criteria within Rule 60(b) are potentially applicable pursuant to the arguments raised by the Plaintiffs. This includes Fed. R. Civ. P. 60(b)(1), which allows the district court to relieve a party from a final judgment or order due to "mistake, inadvertence, surprise, or excusable neglect," or Fed. R. Civ. P. 60(b)(6), allowing for the granting of relief as per "any other reason justifying relief from the operation of the judgment."

However, the Second Circuit has recognized that the "grand reservoir of equitable power" granted within Rule 60(b)(6) upon the district court as being problematically vague in its extensive ability to grant review and relief. *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986). Therefore, in order to ensure that Rule 60(b)(1) and Rule 60(b)(6) remain "mutually exclusive" of one another so that multiple claims for relief are not reconsidered via multiple criteria listed under Rule 60(b), the Second Circuit held "that any conduct which generally falls under the former cannot stand as a ground for relief under the latter." *United States v. Cirami*, 535 F.2d 736, 740 (2d Cir. 1976) (internal quotation marks omitted); *see also Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 850 (1988), (where the Court determined that Rule 60(b)(6) should be utilized only in matters of "particular importance" and not for "neglect or late of due diligence"); *United States v. Erdoss*, 440 F.2d 1221, 1223 (2d Cir. 1971).

Therefore, "where a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) citing to *Klapprott v. United States*, 335 U.S. 601, 614 (1949). As a result, Plaintiffs' motion for relief is limited to consideration of Fed. R. Civ. P. 60(b)(1), which would only allow relief from the Court's July 25, 2012

Order due to a potential "mistake, inadvertence, surprise, or excusable neglect." Given that the Plaintiffs' excuses do not rise to the level required under Fed. R. Civ. P. 60(b)(1), such relief is not available to the Plaintiffs.

*Rule 60(b)(1) Review*:

The Second Circuit has held that the reason offered by the moving party for why a delay occurred when seeking relief within a Rule 60(b)(1) motion is the "most prominent factor" within any analysis. *Hartford Steam Boiler Inspection & Ins. Co. v. Refractories, Inc.*, 212 F.R.D. 62, 65 (D. Conn. 2003) citing to *Mason v. Schriver*, No. 96 Civ. 6942, 1999 WL 498221, at *2 (S.D.N.Y. July 13, 1999). *See United States v. Hooper*, 43 F.3d 26, 28 (2d Cir. 1994) (holding that a legal assistant's ignorance of a rule establishing a deadline did not constitute "excusable neglect" to justify a late filing of an appeal); *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994) (holding that the failure to follow the express language of a rule regarding the time to file a notice of appeal did not fall under the definition of "excusable neglect"). As a result, "when the adversary process has been halted because of an essentially unresponsive party, default judgement [sic] is appropriate to protect the non-defaulting party from interminable delay and continued uncertainty as to his rights." *Salomon*, 148 F.R.D. at 128.

In applying the aforementioned "three-prong test" established by the Second Circuit, the Plaintiffs here offer neither the "highly convincing" evidence to support the current motion, as required under the first prong, nor do the Plaintiffs exhibit the second prong's "good cause" in having failed to act sooner. All 22 motions offer the identical excuses that all fail to meet any of the grounds required to reinstate their case under Rule

60(b). Regardless of whether Plaintiffs were equivocating between participating in Zadroga or continuing their cases, there was no reason or excuse to delay in complying with the Orders of this Court for nearly 100 days (or over three months) and providing properly verified interrogatories. Compliance with this Court's Orders would not have hindered or precluded Plaintiffs' later participation in Zadroga.

By failing to comply with this Court's Orders, the Plaintiffs' also fail to meet the final prong of the Second Circuit's "three-prong test." The Plaintiffs' imposed unfair and undue hardship upon Defendants through their repeated delays — even after receiving four extensions. More importantly, in seeking the reinstatement of these 22 dismissed cases, the Plaintiffs would continue to impose an undue hardship on the entire 21 MC 102 docket by further altering the demographics and statistics of all Plaintiffs to be chosen by the Special Masters for future intensive discovery.

As one of their reasons for their delay in complying with the Court's November 8, 2011 Order (Exhibit "D" to Leff Decl.), Plaintiffs assert such compliance was unnecessary, and accordingly their cases should be reinstated. Aside from Plaintiffs' clear and inappropriate rebuke of this Court's authority to issue orders and directives in managing the caseload involving thousands of Plaintiffs, the Plaintiffs' assertion that the prior certification signed was "substantially similar" is irrelevant and should not be condoned by this Court.[3]

In its November 8, 2011 Order (Exhibit "D" to Leff Decl.), the Court never stated language to be contained in the certification was optional. The Court was explicit that

---

[3] Plaintiffs improperly rely on New Jersey state rules as well as New Jersey state and federal case law in support for their argument that the revisions to the wording used by the prior certifications should be reconsidered. Yet, as expressed above, Plaintiffs cannot simply cite to the "excusable error" and "equitable relief" criteria within Rule 60(b), and must meet the requirements of the "three-prong test" established by the Second Circuit.

Plaintiffs were <u>required</u> to follow the language as indicated in the form provided by 28 U.S.C. § 1746. To ensure complete clarity, the Court quoted the language verbatim in its Order. The Court further stated a certification that did not conform to the quoted language was *not* substantially equivalent and it was not up to the Plaintiffs to determine whether compliance was necessary. There can be no mistake as to the language the certification was to contain. These dismissed Plaintiffs simply repeatedly refused to comply with this Court's directive.

Lastly, the argument that Plaintiffs' injuries had simply not changed and therefore another one-month delay to alter the language within the certifications is irrelevant and not a valid ground for failing to comply with this Court's Orders. As demonstrated, the Court is well within its rights to issue such Orders and the beliefs of Plaintiffs who ignored this Court cannot be excused as mere error. The Court showed repeated patience and generosity in providing four separate extensions to Plaintiffs to adhere to the dictates of this Court. Plaintiffs' indifference in doing so should not be condoned by this Court.

## CONCLUSION

Based on the forgoing, Defendants respectfully request this Court deny each of the 22 motions seeking to reinstate their claims because these plaintiffs failed to adhere to the Court's December 2, 2011 deadline for the certification of their court-ordered interrogatory responses.

Dated: New York, New York
       September 7, 2012

                                            Respectfully submitted,

                                            Richard E. Leff (RL-2123)

McGIVNEY & KLUGER, P.C.
80 Broad Street, 23rd Floor
New York, New York 10004
(212) 509-3456
*Attorneys for the Defendants*
*American Express Company, American Express Bank, Ltd. American Express Travel related Services Company, Inc., 90 Church Street Limited Partnership, Boston Properties, Inc., Lehman Brothers Inc., Lehman Commercial Paper Inc., Lehman Brothers Holdings Inc., RY Management Co., Inc., AMG Realty Partners, LP., Stoner & Co., B.R. Fries & Associates, Inc. and Member of Defense Liaison Committee*

*Defense Liaison Committee in the 21 MC 102 and 21 MC 103 Dockets*

Lee Ann Stevenson
Brett Broadwater
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
Telephone: (212) 446-4800

Philip Goldstein
Loree Shelko
McGUIRE WOODS
1345 Avenue of the Americas, 7th Floor
New York, NY 10105
Telephone: (212) 548-2100

Stanley Goos
HARRIS BEACH PLLC
100 Wall Street
New York, NY 10005
Telephone: (212) 313-5452

Joseph Hopkins
Alyson Villano
PATTON BOGGS LLP
1185 Avenue of Americas, 30th Floor
New York, NY 10036
Telephone: (646) 557-5100

John M. Flannery

Allyson Avila
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
150 East 42nd Street
New York, NY 10017-5639
Telephone: (914) 872-7111

Thomas A Egan
Lissa Gipson
FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 412-9507

William J. Smith
Corey Frank
FAUST GOETZ SCHENKER & BLEE LLP
Two Rector Street, 20th Floor
New York, NY 10006
Telephone: (212)-363-6900