# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | |
|---|---|
| *In Re: World Trade Center Lower Manhattan Disaster Site Litigation* ) ) ) | Civil Action No. 21 MC 102 (AKH)  (If the action is pending in another district, state where: |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To:   Building Maintenance Services
11 Penn Plaza
New York, NY 10001
(212) 714-0004

Building Locations: 20 Broad Street and 2 Broadway

☑ *Testimony:* **YOU ARE COMMANDED** to produce a witness for a 30(b)6 deposition on behalf of Building Maintenance Services at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment. The deposition will continue day-to-day until completed:

| Place: U.S. Legal Support, Inc. 425 Park Avenue, 5th Floor New York, NY 10022 (or a convenient location to be determined) | Date and Time: 06/07/2013 at 10:00AM |
|---|---|

The deposition will be recorded by this method:  videotape and stenographically

☑ *Production:* **YOU ARE FURTHER COMMANDED** to produce at the place set forth above on 05/31/2013 at 9:00 AM, the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Schedule A.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: May 2, 2013

CLERK OF COURT

OR

_____   _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Certain Plaintiffs, who issues or requests this subpoena, are: Christopher R. LoPalo (CL-6466), Worby Groner Edelman & Napoli Bern, LLP, 350 Fifth Avenue, Suite 7413, New York, New York 10118, Clopalo@napolibern.com, (212) 267-3700.

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 21 MC 102 (AKH)

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information;
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
     **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person

~~who produced the information must preserve the information until the claim is resolved.~~

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

### Section I

Preliminary Statement

This subpoena is being issued on behalf of one or more Plaintiffs in the federal court action commonly known as *In re World Trade Center Lower Manhattan Disaster Site Litigation,* 21 MC 102 **(AKH)** (SDNY) ("the Litigation"). The issuing Plaintiffs are suing numerous individuals ("defendants"), who failed to provide, among other things, proper personal protection equipment relating to the rescue, recovery, and debris removal operations at the World Trade Center Site and related locations ("WTC Site and related locations") (as defined below) following the terrorist attacks on September 11,2001.

### Section II
Scope of Subpoena

This subpoena requires You to produce or permit the inspection, copying, testing or sampling of Documents (as defined below) that are in your custody, possession, or control and concern work (as defined below) at the WTC Site and related locations during the Relevant Time Period (as defined below).

### Section III

Definitions and Directions

The following definitions apply in the context of this subpoena:

"Documents" refers to anything that is not privileged and is responsive to one or more of the requests made in Section IV. This includes, but is not limited to, the following items, whether printed or recorded or reproduced by any other mechanical or electrical process, written, produced by hand or produced by or stored in a computer or by other electronic means, regardless of origin or location: books, notes, notations, calendars, message slips, schedules, planners, records, communications, reports, correspondence, letters, telegrams, e-mails, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, applications, booklets, brochures, catalogues, circulars, magazines, pamphlets, periodicals, bulletins, instructions, minutes, other communications (including, but not limited to, inter and intra office communications), purchase orders, bills of lading, bid tabulations, questionnaires, surveys, contracts, agreements, options to purchase, memoranda of agreements, assignments, licenses, books of account, billings, credit card records, orders, invoices, statements, bills, checks, vouchers, ledger sheets, accounts, journals, cancelled checks, bank statements, bank passbooks, confirmations, statements of accounts, analyses, diaries, graphs, notebooks, charts, tables, working papers, plans, indices, summaries or records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of accountants or consultants, deposition transcripts or other transcripts, accounting books or records, data sheets, data processing cards, photographs, photographic negatives, pictures, phone records, tape recordings, discs, wire recordings, transcripts of recordings, drawings, motion picture film, electronic or magnetic records or tapes, advertisements, press releases, drafts, and marginal comments appearing on any such documents, all other written or printed matter of any kind, or any other data compilations from which information can be obtained and translated if necessary, as well as any electronically stored information ("ESI"), located in Your offices or at an off-site location (including home offices).

"Communicate" or "communication" shall mean all inquiries, discussions, conversations, negotiations, agreements, emails, undertakings, meetings, telephone conversations, letters, notes, telegrams, advertisements, or other forms of information exchange, whether oral or written, between two or more persons.

"Record" or "records" shall mean any and all records, files (including computer files), documents (as defined by the Federal Rules of Evidence, including those in electronic form), graphs, charts, maps, writings, correspondence, drawings, transcripts, drafts, recordings, data, studies, guidelines, directives, and/or reports.

"ESI" includes, but is not limited to, the contents of computer hard drives, floppy discs, CD-Rom discs, removable/external/portable storage devices, network servers and personal digital assistants. The information contained on such media normally includes, but is not limited to, electronic mail, word processing files, spreadsheets, imaged documents, presentations, pictures, audiovisual recordings and databases. This subpoena encompasses all of your departments as well as any personal, home and/or portable media used by You.

"Identify," "identity," or "identification" mean, when used in reference to a natural person, his or her full name; present or last known home address (including street name and number, city or town, state, zip code, and telephone number); present or last known business address (including street name and number, city or town, state, zip code, and telephone number); present or last known occupation, position, business affiliation, and job description; occupation, position, business affiliation and job description at the time relevant to the particular interrogatory being answered. If a company, corporation, association, partnership, or legal entity other than a natural person: its full name; a description of the type of organization or entity, the full address of its principal place of business; the jurisdiction of its incorporation or organization; and the date of its incorporation or organization. If a document: its description (for example: letter, memorandum, report, etc.); its title; its date; the number of pages therein; its subject; the identity of its author, signatory or signatories, and any person who participated in its preparation; the identity of its addressee or recipient; the identity of each person to whom copies were sent and each person by whom copies were received; its present location; and the identity of its present custodian. If any such document was, but is no longer, in the possession or subject to the control of plaintiff, state what disposition was made of it and when. If an oral communication: the date and time when it occurred; the place where it occurred; the complete substance of the communication; the identity of each person participating in the communication.

"Concerning" and "relating to" (or any form thereof) shall mean, in whole or in part, alluding to, analyzing, characterizing, commenting upon, comprising, concerning, constituting, containing, dealing with, describing, disclosing, discussing, embodying, evidencing, explaining, identifying, mentioning, pertaining to, referring to, reflecting, responding to, setting forth, showing, stating, supporting or summarizing.

"Work" or "services" refers to any and all work or services performed by You, which were requested, provided and/or contracted for (in whole or in part) by You.

"Relevant Time Period" means January 1, 1995 to the Present.

"WTC Site" or "WTC Site and related locations" refers to any area in the State of New York where work was performed as a result of, or in response to, the 9/11 terrorist attacks, including but not limited to work at 20 Broad Street and 2 Broadway, New York, NY.

'You" and 'Your" refer to you; your agency, your organization; subsidiaries, affiliates, predecessors and/or successors of your agency or organization; and/or agents, servants, employees or contractors hired by you, your agency or organization or subsidiaries, affiliates, predecessors and/or successors of your agency or organization.

"And" or "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. The plural of any word used herein includes the singular and the singular includes the plural. The masculine gender of any word used herein includes the feminine. All verbs used herein shall be construed to include all tenses. The past tense of any word used herein includes the present tense, and the present tense includes the past tense.

Documents produced in response to this subpoena must be produced as they are kept in the normal course of business or shall be organized and labeled to correspond with the requests made in Section IV. FRCP 45(d)(1)(A).

Do not assume that Documents responsive to this subpoena should be produced in hard copy. The Plaintiffs may wish to inspect or image hard copy documents, and they have the right to designate the form in which ESI is produced. *See* FRCP 45(a)(1)(D). Thus, it is very important that You **contact the attorney who issued this subpoena before producing**

**Documents.** The Plaintiffs will attempt to make Your production as efficient as possible. However, they reserve their right to refuse an improperly formatted or otherwise unacceptable production.

If You withhold Documents on a claim that they are privileged or subject to protection as trial-preparation materials, Your claim must be made expressly and must be supported by a description of the nature of the Documents that is sufficient to enable the party issuing this subpoena to contest the claim. FRCP 45(2)(A).

Each of the requests made in Section IV is to be read consistently with the definitions provided above.

Failure to obey this subpoena maybe deemed a contempt of court. FRCP 45(e).

*Section IV*
Documents Requested

All documents concerning the clean-up and construction efforts in Lower Manhattan following the collapse of the World Trade Center on September 11, 2001, including, but not limited to the following:

1. All testing performed, identifying the nature of the tests, the dates and the results;

2. All raw data collected;

3. The hierarchy of responding agencies and/or offices;

4. Protective gear supplied by You to anyone including but not limited to office cleaners, construction workers, fire fighters, police personnel, emergency medical personnel and other rescue and recovery workers;

5. Protective gear supplied to office cleaners, construction workers, fire fighters, police personnel, emergency medical personnel and other rescue and recovery workers;

6. Protective gear You recommended for use by office cleaners, construction workers, fire fighters, police personnel, emergency medical personnel and other rescue and recovery workers;

7. Clean up proposals prepared for or by You;

8. Completed clean-up projects by location, date commenced and completed and the nature of project;

9. Air sample data from World Trade Center site (beginning on September 11, 2001 and continuing to the present time, identifying date collected, tests performed and results of such testing);

10. Air sample data from residential and commercial areas within a four-mile radius of the World Trade Center site (beginning on September 11, 2001 and continuing to the present time, identifying date collected, tests performed and results of such testing);

11. Ground sample data for the World Trade Center site beginning on September 11, 2001 and continuing to the present (identifying site of sample gathering, date, tests performed, facility where testing was performed and results of testing);

12. Ground sample data for the commercial and residential areas within a four-mile radius of the World Trade Center site beginning on September 11, 2001 and continuing to the present (identifying site of sample gathering, date tests performed, facility where testing was performed and results of testing);

13. Copies of all contracts entered into with all construction companies, general contractors and sub contractors for all construction and demolition performed at the World Trade Center site and surrounding buildings on and after

September 11, 2001;

14. All minutes, memoranda, agendas or correspondence, in written or electronic media format *(i.e.,* computer discs,);

    e-mail, photographs, videotape, cd-rom, DVDs), arising from safety and compliance meetings;

15. All daily reports, memoranda, notes and correspondence in written or electronic media format, related to observed compliance by New York City, New York State, federal employees and employees of contractors and subcontractors, including but not limited to office cleaners, construction workers, fire fighters, police personnel, emergency medical personnel and other rescue and recovery workers while working on the World Trade Center site and surrounding buildings from September 11, 2001 to the present time;

16. Documents reflecting agreements and/or arrangements for You or Your members, employees, or agents to perform Services concerning or related to 9/11 and/or the "WTC Site and related locations (including, but not limited to, proposals, purchase orders and contracts with all attachments, as well as Documents concerning negotiation, acceptance and amendment of any agreements, arrangements, and/or contracts);

17. Documents reflecting Your plans and coordination of Services concerning or related to 9/11 and/or the "WTC Site and related locations (including, but not limited to, proposals, purchase orders, program specifications, memorandums, correspondence, and project manuals);

18. Documents reflecting Services performed by You or Your members, employees, or agents concerning or related to the health or safety at the "WTC Site and related locations (including, but not limited to, any program, guidance, protocol, recommendations, or communications, oral or written, relating thereto);

19. Documents reflecting Services performed by You or Your members, employees, or agents concerning or related to the WTC Site and related locations (including, but not limited to, daily, weekly and monthly logs, progress reports, Services orders, journals, notes, and punch lists);

20. Photographs, videos, drawings, recordings, and images in any form (including digital and electronic) in Your possession, custody, or control that were taken in connection with or during the course of the rescue, recovery, and debris removal at the WTC Site and/or related locations;

21. Documents Identifying You or Your members, employees, or agents, or any other individuals, who performed and/or received Services concerning or related to the WTC Site and related locations (including, but not limited to, any union records, personnel records, attendance/sign-in sheets, or meeting records);

22. Documentation of any collective bargaining agreements governing You or Your members regarding work performed concerning or related to the WTC Site and related locations;

23. Documents concerning or related to staffing of Your members, employees, or agents, or any other individuals, at the WTC Site and related locations (including, but not limited to, correspondence, notes, payrolls, log books, schedules, and work assignment sheets);

24. Documents concerning or related to Work performed at the WTC Site and related locations by You or Your members, employees, or agents, or any other individuals (including, but not limited to, correspondence, notes, work plans, diagrams, and copies of any agreements);

25. Documents Identifying Your members, employees, or agents, or any other individuals, who were responsible for worker health and safety at the WTC Site and related locations.

26. Documents regarding any health and/or safety plan concerning or related to 9/11 and/or the "WTC Site and related locations.

27. Documents concerning any and all meetings with Your members, employees, or agents, or any other individuals,

groups, or agencies, concerning or related to 9/11 and/or the "WTC Site and related locations (including, but not limited to, meeting minutes, attendance/sign-in sheets, curricula, pamphlets, handouts, literature, books, correspondence, and certificates of completion).

28. Documents concerning any attorneys, law firms, or representatives thereof, who attended meetings with Your members, employees, or agents, or any other individuals, groups, or entities, for purposes of discussing claims related to the rescue, recovery, and debris removal at the WTC Site and related locations.

29. Documents reflecting information provided to Your members, agents, or employees, or any other individuals, groups, or entities, relating to possible legal claims against Defendants arising from the rescue, recovery, and debris removal at the WTC Site and related locations.

30. Documents reflecting any coordination, interaction, sharing of information, or any other communication(s), between You, Your agents, or employees and any attorney, lawyer, counselor, or any other advocate representing, or purporting to represent any Defendant(s) in the Litigation;

31. Documents reflecting communications with Your members, agents, or employees, or any other individuals, groups, or entities, regarding any attorney, lawyer, counselor, or any other advocate, who could be retained to defend legal claims against Plaintiffs arising from the rescue, recovery, and debris removal at the WTC Site and related locations.

32. Documents reflecting any payments, donations, or funding provided by You, Your agents, or employees to any attorney, lawyer, counselor, or any other advocate representing, or purporting to represent any Defendant(s) in the Litigation;

33. Documents reflecting and any all press releases, media appearances, publications, communications to any members of the press, or any public communications by You, Your members, agents, or employees relating to worker safety in connection with the World Trade Center attacks on September 11, 2001.

34. Documents concerning any training or seminars for any individuals or groups concerning or related to 9/11 and/or the "WTC Site and related locations (including but not limited to attendance/sign-in sheets, curricula, pamphlets, handouts, literature, books, correspondence, and certificates of completion).

35. Documents concerning personal protective equipment provided by or provided to You or Your members, employees, or agents, or any other individuals, during the Relevant Time Period (including, but not limited to, purchasing/billing records, inventory records, consignment/leasing records, protocols, instructions for use, and fit-testing records).

36. Documentation of the actual use of and/or failure to use personal protective equipment by Your members, employees, or agents, or any other individuals, while engaged in activities concerning or related to the WTC Site and related locations (including, but not limited to, correspondence, reports, meeting minutes, and notices).

37. Documents containing, consisting of, documenting, describing, discussing, referencing, constituting, reporting, contributing, and/or summarizing any indoor and outdoor monitoring, analysis, testing, and/or sampling (air, dust, water, river sediment, sewer systems, outfalls, drinking water, etc.) activities at or around the WTC Site and related locations including, but not limited to any reports, laboratory data sheets, data (both in raw and QA/QC'd form), summaries, analyses, notices, press releases, or public statements concerning environmental contaminants (including, but not limited to, individual analytes, compositions and compounds), remediation, environmental investigation, field notes, environmental modeling, and/or risk assessment and property appraisal, regardless of whether such documents were (i) prepared by or at Your request; (ii) considered by any governmental (city, state, or federal) or private entity, regardless of its origin; or (iii) made available and/or shared with the public or governmental or private entities.

38. Documents relating to any Communication from or to You or Your members, employees, or agents, or any other individuals, concerning or related to the WTC Site and related locations, including but not limited to, air and/or environmental quality recommendations and reports, as well as any underlying data or records supporting such communications.

39. Documents concerning the use of decontamination facilities or equipment by You or Your members, employees, or agents, or any other individuals, concerning or related to the WTC Site and related locations (including, but not limited to, maps, diagrams, schematics, blueprints, manuals, instructions, training materials, logs, and correspondence).

40. Documents concerning any health or safety complaints concerning or related to the WTC Site and related locations (including, but not limited to, reports, correspondence, notes, and logs).

41. Injury and/or accident reports related to any work or activities performed concerning or related to the WTC Site and related locations (including, but not limited to, reports, correspondence, notes, and logs).

42. Documents concerning any advice, referrals, references or instructions related to claims concerning or related to 9/11 and/or the WTC Site and related locations (including, but not limited to, fliers, pamphlets, announcements, or correspondence).

43. Documents concerning any research administered or participated in by You or Your members, employees, or agents, or any other individuals, concerning or related to 9/11 and/or the WTC Site and related locations (including, but not limited to, proposals, protocols, recruitment announcements, and correspondence).

44. Documents concerning Workers' Compensation or similar existing or potential claims regarding injuries allegedly sustained during work or volunteer activities performed concerning or related to 9/11 and/or the WTC Site and related locations filed by or on behalf of any of Your members, employees, or agents or any other individuals.

45. Documents concerning the medical monitoring of any individuals or groups who performed Work or activities concerning or related to the WTC Site and related locations (including but not limited to reports, referrals, x-rays, CT scans, MRI films, pulmonary function testing, and all other medical records).

46. Documents noticing, advertising, or otherwise publicizing any medical provider, health registry, medical monitoring program, treatment program, clinical trial, study, research, and/or surveys concerning, relating to, and/or reflecting workers, volunteers, responders, or any other persons participating in the rescue, recovery, debris removal effort, or any other work related, in connection with, or in response to the World Trade Center attacks on September 11, 2001, including, but not limited to, form letters, print advertisements, flyers, notices, oral publications, media communications, press releases, website postings, notes, summaries, related correspondence, and/or any other record thereof.

47. Documents concerning the fit testing of You or Your members, employees, or agents, or any other individuals, who performed work or activities concerning or related to the WTC Site and related locations (including but not limited to sign-in sheets, test cards, test reports, and any other documentation of testing).

48. Documents concerning health and safety citations issued by any federal, state, or local body concerning or related to 9/11 and/or the WTC Site and related locations (including but not limited to the Environmental Protection Agency, the Federal Emergency Management Agency, the Occupational Safety and Health Administration, New York Qty Department of Environmental Protection, New York City Department of Design & Construction, New York City Department of Buildings, New York Qty Office of Emergency Management, New York City Department of Health & Mental Hygiene, New York City Building Department, New York City Fire Department, and New York Qty Police Department).

49. Documents reflecting any communication or correspondence to or from any private entity, government agency, or

      research or monitoring program concerning or related to the WTC Site and related locations (including, but not limited to, notes, copies of press releases, recommendations, reports, and data).

50. Documents identifying all past or present employee(s), member(s), agent(s), or records custodian(s) for You possessing, controlling, or maintaining documents relating to any and all work performed by You in connection with the WTC Site and related locations.

51. If any of the foregoing documents have been destroyed, advise the seeker of the date of and authority for such destructions. If some records are not readily available as others, kindly produce those documents/records that are immediately available and a list of the outstanding documents, those outstanding documents to be produced at a later date when such missing records are found or otherwise prepared for release.

## Section V
### Deposition Topics

A)   Physical and occupancy description of subject building (140 West Street, New York, New York), including its tenants, as of 9/11/2001 and thereafter, including the structure of the building, as well as its ventilation system and operation thereof;

B)   Relationships of the named parties with regard to the subject building as well as non-party contractors or others providing or retaining services at the building as to the 9/11/2001 related clean up and/or decontamination;

C)   Policies and procedures, including any manuals relating thereto, regarding the subject building as to the 9/11/2001 related clean-up and/or decontamination, including any safety plans and/or procedures in effect as of 9/11/2001 and during the subsequent months and years during which the related work was performed;

D)   Damage sustained to the subject building as a result of the events of 9/11/2001, including the contamination of the subject building by materials or substances, including those toxic in nature;

E)   Work performed at the subject building as a result of the events of 9/11/2001 including clean-up, restoration, decontamination and testing for toxic or dangerous materials or substances, including location of the work within/without of the building;

F)   Air quality or other testing done prior, during and subsequent to the work with reference to the subject building as a result of the events of 9/11/2001;

G)   Communications with contractors and/or their employees relating to the work to be performed and/or performed, including issues of worker safety, including any air quality or other safety testing done at the subject building as a result of the events of 9/11/2001 reflective of the air and nature of the materials being cleaned, decontaminated, removed, or restored, including any information concerning respirator and other safety equipment to be utilized and information concerning respirator and other safety equipment provided, including filters, fit testing and related training;

H)   Information relating to insurance claims, including surveys, reports, air quality and other testing for toxic substances, and any remediation;

I)   Information relating to any federal/city/state agencies for applications, permits and violations applied for or received relative to the work at the subject building as a result of the events of 9/11/2001;

J)   Safety standards used or referred to by PAR Environmental Corporation that relate to work performed at the subject building. This will include safety practices of their own employees and

        their subcontractors.  The witness will need to testify about sources PAR Environmental Corporation refers to for safety standards.  The witness will need to be familiar with the specific application of the relevant standards to the work performed at the subject building;

K)     As pertaining to the relevant agreements for this litigation, whether oral or written, what PAR Environmental Corporation understood in 2001-2006 to be its obligations for safety on the worksite as to the clean up and debris removal at the subject building;

L)     Employee manuals, memoranda and correspondence pertaining to safety rules and/or regulations to be followed by PAR Environmental Corporation's employees to ensure workplace safety at the subject building;

M)     Details about documents and/or records created in the normal course of business;

N)     The types of records PAR Environmental Corporation keeps;

O)     The manner in which documents are indexed, located and maintained;

P)     All document retention plans, technical manuals, instructions, policies, booklets, memoranda, or guidelines to employees;

Q)     PAR Environmental Corporation's record destruction process;

R)     The employee(s) in charge of maintaining records;

S)     The employee(s) in charge of distributing records internally and determining the distribution path;

T)     A description on the number and type of mainframes, mini-computers, local area network and widearea network servers, desktop and laptop computers in use at PAR Environmental Corporation and home computers used by PAR Environmental Corporation's employees for PAR Environmental Corporation related work.

U)     The type of operating system(s) and application software used on all of PAR Environmental Corporation's computers;

V)     Accessibility including information about user names, logons, passwords, and encryption programs;

W)     Information concerning PAR Environmental Corporation's backup schedule, tape rotation, tape retention, and data destruction procedures and policies for all of PAR Environmental Corporation's computers;

X) Information concerning the maintenance methods, procedures, and policies for all PAR Environmental Corporation's computers, including information regarding the disposition of used computers and computer parts;

Y) Information concerning the type of electronic mail system(s) used by PAR Environmental Corporation's personnel, including, but not limited to, name and version, installation dates, number of users, electronic mail retention schedules and location of users' mail files. Also, any guidelines or policies issued to PAR Environmental Corporation's personnel concerning the use of electronic mail;

Z) Information concerning any Internet gateways or software used to connect PAR Environmental Corporation's computer system with the Internet, and any guidelines or policies issued to PAR Environmental Corporation's personnel concerning employee use of Internet;

AA) Information concerning any word processing systems, database management systems, project management software, and electronic spreadsheet software used by PAR Environmental Corporation's personnel, and file retention schedules, including any guidelines or policies issued to PAR Environmental Corporation's personnel concerning the use of such software;

BB) Maintenance of hardware, software, including upgrades or replacements and utility programs used;

CC) The chain of custody of hardware and software, including upgrades or replacements, and utility programs used;

DD) How electronic documents are maintained, archived, indexed, including descriptions of hardware and software used, and where this is physically located;

EE) Corporate policies regarding use of computers and other technology, such as phone, faxes, PDA's, and voicemail; and

FF) Electronic records management policies.