UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X          21 MC 102 (AKH)
IN RE:  WORLD TRADE CENTER LOWER
MANHATTAN DISASTER SITE LITIGATION          21 MC 103 (AKH)

IN RE:  COMBINED WORLD TRADE CENTER
LOWER MANHATTAN DISASTER SITE
LITIGATION (straddler plaintiffs)

-------------------------------------------------------X

---

**DEFENDANTS REPLY ON THE MOTION TO DISMISS CERTAIN PLAINTIFFS
CLAIMS WITH PREJUDICE FOR VIOLATING ESTABLISHED DISCOVERY
PROCEDURES AND REGULATIONS PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 37**

---

Richard E. Leff (RL – 2123)
McGIVNEY & KLUGER, P.C.
80 Broad Street, 23rd Floor
New York, New York 10004

The Defendants in the above-captioned matter hereby submit the following Reply Memorandum of Law in further support of its Motion to Dismiss Certain Plaintiffs' Claims with Prejudice for Violating Established Discovery Procedures and Regulations Pursuant to Federal Rule of Civil Procedure 37 (the "Motion to Dismiss").

## PRELIMINARY STATEMENT

Plaintiffs Cristhian Tapia[1] and Seweryn Wojciechowski[2] have continually and willfully ignored this Court's Orders regulating discovery by being derelict in their timely production of relevant and necessary medical documentation. Accordingly, Defendants request Plaintiffs Cristhian Tapia and Seweryn Wojciechowski be dismissed with prejudice; to be granted the right to make replacement selections accordingly for Group II expedited discovery, as well as any other relief this Court deems just and proper.

## ARGUMENT

### I.   PLAINTIFFS WILLFULLY IGNORE FACTS AND ORDERS MADE BY THIS COURT REGULATING DISCOVERY

Once again Plaintiffs mislead this Court by claiming to have been substantially compliant in providing Defendants with all requisite medical diagnoses and documentation pertaining to Plaintiffs Cristhian Tapia and Seweryn Wojciechowski. Plaintiffs ignored the standards and orders dictated by this Court in how it regulates and handles the core discovery process for all litigants in this matter. Plaintiffs have not only failed in their obligation to supplement discovery pursuant to the Federal Rules, but have also willfully ignored the repeated Orders of this Court

---

[1] Civil Action No. 08-cv-02248
[2] Civil Action No. 08-cv-02319

claiming they did not have a duty to update subsequent documentation in a timely fashion to Defendants as long as, "Group I and Group II cases is to be completed by August 30, 2013."[3]

### A. **Group I and II Discovery Order**:

Plaintiffs' claim they are permitted to supplement requisite discovery for all Group II Plaintiffs up to the Court established deadline for fact discovery on August 30, 2013[4] regardless of when such documentation was first propounded and/or made available to Plaintiffs. Yet, the rationale behind such a claim belies all inherent logic. To accept this argument would be to ostensibly grant a full and complete pardon to Mr. Tapia, Mr. Wojciechowsi, and to any other similarly situated Plaintiff who has been continually derelict in their Rule 26(e) duties to timely supplement discovery. Failure is in violation of this Court's repeated statements to all parties whereby all new, consequential information be produced via "timely supplement[s]" as determined by when parties were either made aware, or should have been made aware of the need for such amendments.[5]

The commencement of Group II expedited discovery and the establishment of discovery deadlines for trial did not create the "lifeboat" so desired by Plaintiffs. The failure to update and amend requisite discovery for upwards of seven (7) years only serves to further skew the purpose and intent of the core discovery process for all parties as repeatedly cited by this Court. Plaintiffs should not be allowed to benefit by their own neglect or maleficent acts.

---

[3] *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Certain Plaintiffs Claims with Prejudice Pursuant to Fed. R. Civ. 37, *In Re: World Trade Center Lower Manhattan Disaster Site Litigation*, 21 MC 102 (AKH) (S.D.N.Y. May 28, 2013), ECF No. 4785 at Page 5.

[4] *See* Order Regulating Discovery and Trials of Group I and Group II Selected Cases, *In Re: World Trade Center Lower Manhattan Disaster Site Litigation*, 21 MC 102 (AKH) (S.D.N.Y. March 21, 2013), ECF No. 4647, annexed to the Leff Decl. as Exhibit A.

[5] Transcript of Record at 17-18, *In Re: World Trade Center Lower Manhattan Disaster Site Litigation*, 21 MC 102 (AKH) (S.D.N.Y. October 11, 2012). A copy of the Transcript of Record is annexed to the Leff Decl. as Exhibit B.

**B. Rule 26(e)(1)(A):**

Interestingly, Plaintiffs cite to and thereafter conveniently omit, aspects of the affirmative duty owed Defendants pursuant to Rule 26(e)(1)(A) of the Federal Rules of Civil Procedure dictating that supplemental disclosures and/or corrections must be made in a timely manner.[6] Plaintiffs attempt to utilize Rule 26(e)(1)(A) as both a sword and a shield, claiming to have in fact affirmatively adhered to supplementing medical documentation as required while also asserting its protection insofar by professing adherence to this Rule by only recently providing to Defendants hundreds of pages of medical records documenting alleged newly claimed injuries and diagnoses which were in fact originally ascertained upwards of seven (7) years ago.[7]

Yet, no attempted semantic ploy attempted by Plaintiffs in arguing they have engaged in diligent disclosure of discovery can ignore the simple fact that these medical records are not supplementary to the Plaintiffs allegations, they are simply overdue. The records provided alter the status of Plaintiffs overall demands in a manner that is wholly beneficial to Plaintiffs and were only provided following their selection by Defendants. Prior to Mr. Tapia's selection as a Tier 2 designated Plaintiff, a total of only approximately fourteen (14) pages of medical records had been made available by Plaintiff's counsel.[8] Only after Mr. Tapia's selection as a Group II Plaintiff were approximately 100 pages of additional medical documentation first provided by

---

[6] See Fed. R. Civ. P. 26(e)(1)(A): Supplementing Disclosures and Responses, (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing

[7] Documents provided by Napoli following receipt of McGivney and Kluger's deficiency letter concerning Plaintiff Cristhian Tapia on February 21, 2013 included the potential diagnosis of asthma made at Bellevue Hospital Center as early as January 5, 2006 and February 2, 2006. As late as April 16, 2010, the provided documents make reference to a potential diagnosis of asthma. Yet, no such documents were otherwise provided, nor were such claims made via TCDI, until Mr. Tapia's selection for Group II discovery.

[8] Medical Documents provided to the Mediconnect website (acting as the main repository for all medical documents pertaining to Plaintiffs in the current docket) consisted of five (5) individual packets comprising 14 pages were uploaded on November 28, 2008, November 30, 2008, January 8, 2010, and December 29, 2010.

Napoli in February 2013. Although these medical documents were dated from 2006 through 2010, none were previously disclosed and now result in Mr. Tapia alleging injury Tier 4 status.

Similarly, Mr. Wojciechowski had previously been designated a Tier 3 injury status and was chosen by Defendants for Group II discovery following the review of approximately 47 pages (dating from 2005-2009) of medical documentation available at the time of selection.[9] Once again, only following the inclusion of Mr. Wojciechowski as a Group II Plaintiff were an additional thirty (30) pages of medical records disclosed, new ailments claimed, and a new Tier 4 designation alleged.

Had Plaintiffs truly complied with Rule 26(e)(1)(A), they would have updated and supplemented Plaintiffs medical records "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."[10] Timely submission cannot be construed as being seven (7) years late and only after it is deemed to be helpful by a Plaintiff now selected for expedited discovery.

## II.   PLAINTIFFS INCORRECTLY APPLY THE THREE-PRONG TEST TO DETERMINE WHETHER SANCTIONS ARE APPLICABLE FOR FAILURE TO ADHERE TO DISCOVERY ORDERS

Plaintiffs misconstrue its application of the conjunctive three-prong test as previously cited by this Court, in determining whether failure to comply with a court order may result in a finding of civil contempt. Such a finding may be reached when, "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Musalli Factory for Gold & Jewelry Co. v. New York Fin. LLC*, No. 06 Civ. 82 (AKH),

---

[9] Medical Documents provided to the Mediconnect website (acting as the main repository for all medical documents pertaining to Plaintiffs in the current docket) consisted of four (4) individual packets comprising 47 pages were uploaded on December 17, 2010, February 23, 2010, April 13, 2010, and June 4, 2010.
[10] *See* Fed. R. Civ. P. 26(e)(1)(A)

2010 U.S. Dist. LEXIS 58439 at *7, citing to *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995).

       a.   *The "Clear and Unambiguous" Prong*

     As previously cited, an order may be considered "clear and unambiguous" when it leaves "no uncertainty in the minds of those to whom it is addressed'" and who "must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King,* 65 F.3d at 1051 citing *Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n,* 889 F.2d 389, 400 (2d Cir. 1989) (stating "a federal court [must] frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid"). *See Yurman Studio, Inc. v. Castaneda*, Nos. 07 Civ. 1241, 07 Civ. 7862 (SAS), 2009 U.S. Dist. LEXIS 13870 at *6 (S.D.N.Y. Feb. 23, 2009) (emphasizing that the "clear and ambiguous" element "requires that the order be specific in terms and that it shall describe in reasonable detail . . . the act or acts sought to be restrained." (internal quotations omitted).

     In applying this three-prong test as established by the Second Circuit, Plaintiffs once again conveniently omit and/or disregard the repeated unambiguous edicts this Court has repeatedly commanded all parties, via repeated written Orders,[11] oral dictates as expressed from the bench at court conferences,[12] and by previously dismissing Plaintiffs who had not timely certified their responses.[13] In fact, Plaintiffs counsel was himself specifically and directly instructed by this Court at the October 11, 2012 Court Conference that supplemental discovery would be disregarded if they were not deemed to be "timely" as determined by when parties

---

[11] *See* Opinion and Order Denying Motions to Reinstate 22 Dismissed Plaintiffs, *Re: World Trade Center Lower Manhattan Disaster Site Litigation*, 21 MC 102 (AKH) (S.D.N.Y. October 22, 2012), ECF No. 4502, annexed to the Leff Decl. as Exhibit C.
[12] *See* Exhibit B.
[13] *See* Exhibit C

were either made aware, or should have been made aware of, the need for such amendments.[14]

For Plaintiffs to now claim that they were somehow uninformed of the repeated orders of this

Court in person as well as subsequent Court dictates belies common sense logic or reason. As

such, Plaintiffs were on notice and meet the requirements of the initial prong of this test.

        *b.   The "Clear and Convincing" Prong*

The second prong of the three-prong test determining the validity of a civil contempt

allegation is whether proof of the aforementioned noncompliance is "clear and convincing." The

Second Circuit has held the standard to be used "requires a quantum of proof adequate to

demonstrate a reasonable certainty that a violation occurred." *Gucci Am., Inc.,* 2012 U.S. Dist.

LEXIS 171520 at *14 citing to *Levin v. Tiber Holding Corp.,* 277 F.3d 243, 250 (2d Cir. 2002).

As outlined previously, Plaintiffs were repeatedly placed on notice as to the potential

ramifications stemming from a lack of compliance with this Court's Orders. Incredibly, Plaintiffs

claim that in spite of the repeated clear and unambiguous orders from this Court specifically with

regard to the need for timely disclosure of discovery and proper submittal of Core Discovery

responses pursuant to TCDI that there was no "clear and convincing" violation of this Court's

discovery rules and parameters. Medical documentation from upwards of seven (7) years ago has

only now been produced by Plaintiffs not to express worsening of injury but instead was a willful

omission of medical documentation only now rectified solely to alter the injury-tier designations

of Mr. Tapia and Mr. Wojciechowski. There can be no clearer evidence of Plaintiffs overt failure

to abide by the rules of discovery by ignoring this Court's Orders and repeatedly failing to

properly and timely update discovery documentation. Accordingly, Plaintiffs fully satisfy the

second prong this test.

---

[14] *Id.* at 17-18.

### c.   The "Lack of Reasonable Diligence" Prong

The final prong to determine if a party has committed civil contempt is if the offending party had "not diligently attempted to comply in a reasonable manner." *Musalli*, 2010 U.S. Dist. LEXIS 58439 at *7. The standard for ascertaining whether diligence occurred "requires a party to develop reasonably effective methods of compliance." *Zino Davidoff SA v. CVS Corp.*, No. 06 Civ. 15332 (RJS), 2008 U.S. Dist. LEXIS 36548 at *23 (S.D.N.Y. Apr. 17, 2008). Although the Second Circuit has not fully addressed what constitutes "reasonable diligence," it has noted "that 'substantial compliance' is the appropriate standard in evaluating noncompliance in a contempt case." *Gucci America, Inc*, 2012 U.S. Dist. LEXIS 171520, at *16, citing to *Yurman Studio*, 2009 U.S. Dist. LEXIS 13870 at *7.

Contrary to Plaintiffs belief, the failure to provide relevant and important medical documentation claiming to exhibit diagnoses for injuries alleged against Defendants for upwards of seven (7) years cannot in any reasonable degree be deemed reasonably diligent nor substantially compliant pursuant to applicable case law. Rather than being substantially compliant, Plaintiffs have engaged in insincere acts intended to subvert the discovery process through deficient information or by providing necessary documentation only at a time most beneficial to Plaintiffs interests. In so doing, Plaintiffs knowingly altered the TCDI database following Group II selections thus rendering moot the criteria and reasoning utilized by Defendants in making its choices. Plaintiffs have been repeatedly made aware that the integrity of the information available throughout discovery is paramount. As a result, selections by Defendants and the Court for Group II discovery were premised on incorrect, outdated, and/or false data. Accordingly, in no reasonable manner can Plaintiffs be considered to have substantially complied with the third and final prong of this Court's test and Plaintiffs should not

be permitted to benefit from their own reticence to this Court's numerous discovery orders. Plaintiffs' actions thus satisfy all three cited prongs and should be found in contempt for failure to obey discovery orders.

### III.   PLAINTIFFS CONTINUE TO IGNORE THE PREJUDICIAL EFFECT CREATED BY MAKING UNTIMELY CLAIMS UPON DEFENDANTS DURING COURT ORDERED DISCOVERY

#### A.   TCDI Database:

A distinct pattern continues to emerge throughout this litigation whereby Plaintiffs continue to willfully disregard the repeated Orders of this Court, in both written and verbal forms, pertaining to the discovery associated with and the overall purpose of the TCDI database. This Court has made clear through repeated statements that changes to the database were to be considered as amendments to Core Discovery itself, and would require proper adherence to rules governing timely supplementation.[15] The alleged "diligent compliance" offered by Plaintiffs cannot be accepted without also ignoring the repeated statements made by this Court to Plaintiffs counsel regarding the importance of updated records and reliable information.

Further, whereas Plaintiffs continue to allege that the inappropriate action of one Plaintiff does not otherwise affect all other Plaintiffs and Defendants within the docket, this Court has repeatedly and decidedly disagreed with that assessment. The inherent purpose of TCDI has never been hidden by this Court and it has consistently held that, "the core discovery program was to bring all cases forward simultaneously, to allow counsel for plaintiffs and defendants, and the court and the special masters, to work with a common core of knowledge to select sampled cases for intensive deposition discovery, trials and negotiations of settlements."[16]

---

[15] *Id.* at 17-18.
[16] *See* Exhibit C.

9

The inherent purpose of Plaintiffs, Defendants, and the Court in each selecting 10 Plaintiffs for Group II was to gain a fuller understanding of the entire plaintiff population in a litigation involving thousands of Plaintiffs and hundreds of defendants. Numerous factors were considered in the selection of particular Plaintiffs including whether "they worked in numerous buildings, and some because they worked in one, or a few, buildings; some were chosen who alleged slight injuries and some because they alleged severe injuries; some because their injuries showed stronger relation to the toxins that floated into the buildings, and some because their injuries, often cancers, were more tenuously linked to exposure to the debris. The choices and samplings were complex, often intuitive, and the errant plaintiffs should not now be allowed to skew the substantial progress that has been made in all the viable cases."[17]

Obviously, both Defendants and Special Masters were dependant on information provided by Plaintiffs as well as the overall validity of the TCDI database entries in order to determine which Plaintiffs should be selected for further discovery. All decisions were heavily predicated on the accuracy and reliability of the data provided within TCDI to create the diverse selection of Plaintiff cases necessary for continued discovery. The fact that Mr. Tapia's and Mr. Wojciechowski's records are upwards of seven (7) years old before being produced is not disputed by Plaintiffs. Moreover, the alleged injuries are not newly diagnosed or a worsening of a condition. They were simply never disclosed until recently. Unfortunately, such disregard for this Court's repeated dictates only further conveys what has been the continued contemptible nature by which Plaintiffs have looked upon this Court's Orders and the TCDI database.

**B.  <u>Allegations of Discovery Delay</u>:**

Plaintiffs argue this motion is nothing more than an attempt by Defendants to postpone fact discovery. Nothing can be further from the truth. This motion is one in a number of efforts to

---

[17] *Id.*

help expedite discovery by obtaining truthful, accurate information and to purge the TCDI database of rampant corruption made necessary by the inaccurate and incorrect entries proffered by various Plaintiffs resulting in a database so unreliable to the extent where further discovery was deemed necessary.[18]

Further, Plaintiffs' invocation of language barriers (citing Mr. Tapia as being a native Spanish speaker and Mr. Wojciechowski being a native Polish speaker) is not only disingenuous, it is simply untrue when considering how both Plaintiffs had no difficulty in timely bringing a litany of claims and allegations upon a vast variety of Defendants. Such alleged language impediments do not clarify or provide any reasonable excuse at explaining a full seven-year failure to properly supplement discovery responses in a timely manner as specifically cited to by Plaintiffs own Response via Rule 26(e)(1)(A).

## CONCLUSION

For the reasons set forth above, Defendants once again respectfully request the Court grant its motion, enter an Order dismissing the claims of Cristhian Tapia and Seweryn Wojciechowski with prejudice, as well as allowing Defendants to choose alternative Plaintiffs for Group II discovery.

Dated: New York, New York
        May 30, 2013

                                Respectfully submitted,


                                Richard E. Leff (RL-2123)
                                McGIVNEY & KLUGER, P.C.
                                80 Broad Street, 23rd Floor
                                New York, New York 10004

---

[18] *See* April 18, 2013, Status Conf. Hearing Trans. at 2:7-18. A copy of the Transcript of Record is annexed to the Leff Decl. as Exhibit D.

(212) 509-3456

*Attorneys for the Defendants*
*American Express Company, American Express*
*Bank, Ltd., American Express Travel related*
*Services Company, Inc., 90 Church Street Limited*
*Partnership, Boston Properties, Inc., Lehman*
*Brothers Inc., Lehman Commercial Paper Inc.,*
*Lehman Brothers Holdings Inc., and Member of*
*Defense Liaison Committee*