D4IUWTCC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x

In re: WTC Lower Manhattan Disaster Site Litigation    21 MC 102

---------------------------------x

New York, N.Y.
April 18, 2013
3:15 p.m.

Before:

HON. ALVIN K. HELLERSTEIN

District Judge

APPEARANCES

GREGORY J. CANNATA & ASSOCIATES
Attorneys for Plaintiffs
BY: GREGORY J. CANNATA

ROBERT A. GROCHOW, P.C.
Attorneys for Plaintiffs
BY: ROBERT A. GROCHOW

NAPOLI BERN RIPKA SHKOLNIK LLP
Attorneys for Plaintiffs
BY: PAUL J. NAPOLI
DIONISIOS GEORGATOS

HARRIS BEACH PLLC
Attorneys for Defendant Century 21
BY: STANLEY GOOS

McGIVNEY KLUGER, P.C.
Attorneys for Various Defendants
BY: RICHARD E. LEFF

KIRKLAND & ELLIS LLP
Attorneys for Defendant Verizon New York
BY: LEE ANN STEVENSON

ALSO PRESENT
Special Master Jim Anderson

(Case called)

THE COURT: This is a progress conference to see how we are doing. The last event in this case was on March 21, 2013 when I entered a case management order regulating discovery and trials of various cases that we will be selecting.

The first date on here is August 30, 2013 which is the adjourn date, several times adjourned of the completion of fact discovery. I have said this in the past with earlier dates, but I want to emphasize it now. I am not going to enlarge this again. That date is engraved in stone -- stone that will last as long as this case and longer. I expect that all of these dates will also be fixed. And the other date that is engraved in stone is May 5, 2014 which will be the first trial commencement. And there may be other trials at that time or sequentially following it. I just want all of you to have very clear notice that these schedules are binding, particularly, the first and the last.

Anybody want to comment to me about where you are and what problems you might be having?

MR. CANNATA: Good afternoon, your Honor.

Your Honor, at the last conference that we had on February 22nd, concerning the worker's compensation liens, your Honor, I reported to your Honor that I had been in discussions with all the carriers, and there were many of them that were

inclined to agree to the same arrangement, the same compromise as was reached in the 21 MC 100 case.

I am happy to tell the Court at this point, that I have entered into a written stipulations with six of the larger carriers. They cover approximately two-thirds of Mr. Grochow's and my clients.

In addition, we have several carriers who agreed to a case-by-case agreement rather than a blanket agreement. That covers about another dozen clients. I have been in discussion with approximately five other carriers, but we have yet to reach an agreement with them, although I am still discussing the matter with them. That covers approximately 15 or so out of my 85 clients.

THE COURT: What does that mean, 15 of your 85 clients are covered?

MR. CANNATA: 15 are not covered yet, but I have a deal in place --

THE COURT: 70 of your clients, if they experience a recovery by settlement or ultimate disposition, will not be subject to liens among the carriers?

MR. CANNATA: No. They will be subject to a 25 percent lien, 25 percent of the lesser of the amount of the settlement or the present lien, and benefits will continue. That was the same arrangement that was reached in the 21 MC 100 case for all of the carriers other than Liberty. So we made

progress on that. We have not made complete progress yet, but we have made some considerable progress.

THE COURT: How have you done, Mr. Napoli?

MR. NAPOLI: I think it is more of the same, your Honor. We have had many of the carriers commit in 100 to committing in 102 to the same terms of the agreement. Other carriers really don't want to negotiate until there is a resolution and do it on a case-by-case basis.

THE COURT: How many carriers do you have tied up?

MR. NAPOLI: I think that we have tied up about a dozen carriers, your Honor. We think we have got the majority of our cases covered, either now or will have them covered when the time is ripe, at or near the time of settlement. There are continuing benefits that a lot of these people are receiving. And I think it is one aspect of an ultimate resolution that is going to have to await in a settlement on a case-by-case basis.

THE COURT: How do you want to use this information, Mr. Cannata, what practical effect will it have?

MR. CANNATA: The practical effect will be, it will be much easier to resolve the cases.

THE COURT: Are we at that point?

MR. CANNATA: No. We have made very little -- actually no progress on that score.

THE COURT: Do you think you will?

MR. CANNATA: We had a conference with your Honor in

chambers --

THE COURT: Do you want to or are the cases in position to profit by discussion or is information still so evanescent that discussions would be premature?

MR. CANNATA: I think that the defendants and the plaintiffs at this point have a good feel for the merits of the case.

THE COURT: Maybe as to liability, what about damages?

MR. CANNATA: Defendants have conducted full depositions on eight of those plaintiffs, the first eight in wave 1 and have seen all of the medical records of those plaintiffs.

THE COURT: But you have 800.

MR. CANNATA: We have 30 more in phase 2. Those depositions go on for several days, so we are not going to have the depositions conducted within the next month or two. It is going to take longer than that.

THE COURT: It seems to me you are not close to settling the cases.

MR. CANNATA: There are different ways to settle a case, your Honor. We have had some discussions with the defendants. We were hoping that after we met with your Honor in chambers, we met with the defense lawyers on committee. We approached it with them as we will be happy to discuss it either as a global settlement or as a building-by-building

settlement. We have made demands of each building on a building-by-building basis.

We also suggested perhaps a mediator, either a private mediator or a court-appointed mediator as your Honor suggested to do some of the buildings, maybe look at the plaintiffs in those buildings and try to come to an agreement as to one particular building and then use that as a framework for a larger settlement. The defendants want to confer with the large group. And we've gotten a response back from them saying that they want to do a global settlement, but that because our numbers are what they feel are too high, there is no point in discussing it with us.

THE COURT: Well, that seems a bit of information for many plaintiffs. I don't know how you have a principled basis for any kind of settlement.

MR. CANNATA: They have the medical records on the plaintiffs, your Honor. The only thing they are lacking at this point are depositions and physical examinations by a doctor. So that is not going to happen for the next five years. So if that is the position, then we will never have this case settled.

THE COURT: Mr. Leff, what do you think?

MR. LEFF: I don't know how long that is going to take but we are actively pursuing the depositions of the 30 plaintiffs. We are going to be starting with plaintiffs'

depositions actually next week. We are going forward with plaintiffs' treating depositions. Those are actually starting again also next week for the Group 1.

THE COURT: When do you think there will be a point that is reached that would be worthy of settlement discussions?

MR. LEFF: We have spoken with the larger defense group and the larger defense group is interested in having discussions on a global basis.

THE COURT: How can I approve a settlement if I don't have information?

MR. LEFF: We don't have enough information yet either, quite frankly. Having depositions of only eight plaintiffs just really is not enough.

THE COURT: I agree.

MR. LEFF: We found that the TCDI information as we deposed these plaintiffs varies drastically from the information we get out of the plaintiffs, so it will take a few more months.

THE COURT: That's why I say what I say. If the TCDI information had been reliable, they would provide a statistical dispersion that could justify settlement on an aggregate scale. But it is reported to me that they are not reliable, so depositions are necessary to determine the degree of reliability and the depositions are expensive and difficult and time-consuming. It seems to me from what you say that we are

years away from the settlement.

MR. LEFF: I don't know about that. I think that the defendants are open-minded to having discussions. I think we need to go forward with discovery for a few months longer to see what we get out of this group and the data that we get as a result of these depositions and the independent medical examination results that we get from this group. And I think that this group intends to revisit this and engage in discussions eventually with the plaintiffs.

THE COURT: I don't know that I would be in a position to review a settlement for approval or disapproval without some kind of reliable statistical information that would show the justification, just the same way we had in the 100 case. I think we just have to go along with this schedule unless there is a way found to show reliability of the information produced in the core discovery phase.

MR. LEFF: I think we have to go along with the schedule for a while. We agree with you.

THE COURT: What else can I do for you?

MR. CANNATA: Let me just say, your Honor, that when we reached what we felt was a dead end with the larger group, the settlement of the entire litigation, we turned to talking to defendants on an individual basis. And that is actually proving, I believe, to be more fruitful to us because we have spoken to several buildings and defendants. They want to

discuss the case. We are discussing it. We have not resolved any cases yet, but I believe that that is a fruitful pursuit and we are going to continue doing that.

THE COURT: Thank you, Mr. Cannata.

Is there anything else that I can do?

Jim?

SPECIAL MASTER ANDERSON: I can think of nothing.

THE COURT: Mr. Napoli.

MR. NAPOLI: We would ask on behalf of our clients, we think that discovery and trials lead to settlements. And we know the Court has now designated 38 cases for full discovery and a select group for trial in May. We would ask that more plaintiffs be set in additional groups for depositions now, for further selection later on for trial. We think that this will give additional information to the parties because these cases are unique in the sense that people worked in a variety of different buildings with a variety of different positions, with a variety of different exposures and that the 38 are insufficient to cover all of the various parameters that we are seeing in the plaintiff population. And if we can cluster additional cases, either another 30 or 50 or 100, and our office is willing to do those depositions, your Honor and prepared to do them forthwith, we think that that will accelerate the resolution of the case, and there is no doubt about it in my mind, certainly.

THE COURT: Mr. Leff.

MR. LEFF: I think that the idea of it sounds good. The fundamental problem is that the data in TCDI is not so good. So in order to select these cases, and what we found in these 30, we are selecting cases that are supposed to be some type of cross representations of the various injuries and we talked about tiers, Tiers II, III and IV, and we choose things based upon the information that is in TCDI, and if that information is inaccurate, you are sort of shooting in the dark and that is somewhat problematic.

THE COURT: I don't think, unless there is a consensus that you would be willing to add to the group, unless it were shown to me by motions that there is reliability in the statistical information.

MR. NAPOLI: I am saying, put aside the questions because there are only so many questions in TCDI, the answers by plaintiffs in the data, it is really a flat approach of looking at the case.

THE COURT: What does that mean?

MR. NAPOLI: You are not really getting the dynamic sense of who the plaintiff is, what they were doing, what the actual work was.

THE COURT: That was intended to be elicited by those questions.

MR. NAPOLI: But if it just doesn't come out the way

it does in a deposition and these depositions going on for a few days. What I am suggesting, your Honor, is take it on a FIFO basis, the first cases filed --

THE COURT: I am unwilling to do that, Mr. Napoli. I am unwilling to do that for numbers of reasons.

MR. NAPOLI: Thank you, your Honor.

THE COURT: The selection process of going forward is intended to be based on a core of knowledge that is reliable and shared by all the parties, the special masters and the Court.

For various reasons about which I and the special masters have written articles in the Cornell Law Review and the Washington University Law Review, I am unwilling to do any kind of statistical sampling going forward without a body of reliable statistical information.

I disagree with you, Mr. Napoli. The core of discovery was intended to give us an ability to picture where people worked, how long they worked, for whom they worked, what their damages were, what their injuries were on an objective basis -- or as objective as possible -- and what their prior medical histories have been. And without that and other such information, it is not possible to project a reliable statistical sample other than to burden the case.

FIFO is not an appropriate procedure. It awards the plaintiff's lawyer who signed up a lot of players. It doesn't

reward people who suffered substantial injuries and want to get recompensed. It only slows us up. We will go forward on this basis until we see that there is a better basis.

I need to set another meeting. You are finishing discovery August 30. On the assumption that, if I am needed for any discovery issue, you will let me know, we should meet in September. We will have a meeting the week of September 15 -- September 17 at 2 o'clock. I will expect then to discuss the completion of discovery, whatever we learn from discovery, and if there are more cases that need to be put into the sample, but that will be on the eve of selecting Group 1 and Group 2 cases, with the idea of choosing five cases by plaintiffs, five by defendants, five by the special masters and me to comprise a 15-case trial group.

Thank you very much.

o 0 o