**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
                                                         :

IN RE WORLD TRADE CENTER LOWER         :
MANHATTAN DISASTER SITE LITIGATION   :   21 MC 102 (AKH)
------------------------------------------------------------- x
                                                          :

MIECZYSLAW ZYGMUNT AND ROSA       :   09 CV 0679 (AKH)
ZYGMUNT,                                     :
                     Plaintiffs,       :
                                           :
-against-                                 :
                                         :
59 MAIDEN LANE ASSOCIATES, LLC, ET AL. :
                    Defendants     :
                                         :
------------------------------------------------------------- x


<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT**</u>
<u>**STATUTE OF LIMITATIONS MOTION FOR SUMMARY JUDGMENT**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF UNDISPUTED FACTS............................................................................2

STANDARD OF REVIEW .......................................................................................................6

ARGUMENT...............................................................................................................................7

    I.     Mr. Zygmunt's Alleged Exposure-Based Claims, Filed Nearly Six Years
          After Discovery Of His Alleged Injuries, Are Time-Barred. ..................................7

          A.     Mr. Zygmunt Discovered His Respiratory Conditions More Than
                Five Years Before Filing Suit. ...................................................................8

          B.     Mr. Zygmunt Discovered His Sinusitis, Rhinitis, and Chronic
                Nasopharyngitis More Than Five Years Before Filing Suit. .....................11

          C.     Mr. Zygmunt Discovered His Gastro-Intestinal Conditions More
                Than Five Years Before Filing Suit...........................................................12

          D.     Mr. Zygmunt Discovered His Sleep Apnea More Than Five Years
                Before Filing Suit......................................................................................13

    II.    Mr. Zygmunt's Alleged PTSD Claim Is Time-Barred. ........................................14

CONCLUSION ........................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Bartlett v. Moore Bus. Forms, Inc.*,
   No. 96-1632, 2000 WL 362022 (N.D.N.Y. Mar. 30, 2000)................................................. 8, 10

*Braunscheidel v. Stryker Corp.*,
   No. 12-1004, 2013 WL 1337013 (N.D.N.Y. Mar. 29, 2013)................................................. 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................................ 6

*Fathi v. Pfizer, Inc.*,
   No. 109841/06, 2009 WL 2950876 (Sup. Ct. N.Y. County Aug. 31, 2009)........................... 11

*Galletta v. Stryker Corp.*,
   283 F.Supp.2d 914 (S.D.N.Y. 2003) ............................................................................. 7, 8, 14

*Goffredo v. City of New York*,
   33 A.D.3d 346 (1st Dep't 2006)....................................................................................... 8

*Greenberg v. U.S. Envtl. Protection Agency*,
   No. 21 MC 100 (AKH), D.E. 3017 (S.D.N.Y. Apr. 11, 2013) ............................................ 7, 8

*Harley v. 135 E. 83rd Owners Corp.*,
   655 N.Y.S.2d 507 (1st Dep't 1997) ................................................................................. 8

*Kaczmarek v. Bethlehem Steel Corp.*,
   884 F.Supp. 768 (W.D.N.Y. 1995) .................................................................................. 6

*Major v. Astrazeneca, Inc.*,
   No. 01-618, 2006 WL 2640622 (N.D.N.Y. Sept. 13, 2006) ................................................. 7

*Matter of New York Cty. DES Litig.*,
   89 N.Y.2d 506 (1997) ............................................................................................. 7, 8, 10, 14

*Morgan v. Abco Dealers, Inc.*,
   No. 01-9564, 2007 WL 4358392 (S.D.N.Y. Dec. 11, 2007) ................................................. 8

*Neri v. R.J. Reynolds Tobacco Co.*,
   185 F.Supp.2d 176 (N.D.N.Y. 2001) ............................................................................. 8, 10

*O'Halloran v. 345 Park Co.*,
   675 N.Y.S.2d 55 (1st Dep't 1998) .................................................................................. 11

*Oeffler v. Miles Inc.*,
   660 N.Y.S.2d 897 (3rd Dep't 1997)................................................................................. 8

*Prohaska v. Sofamor, S.N.C.*,
   138 F.Supp.2d 422 (W.D.N.Y. 2001) ............................................................................. 8

*Tuitt v. City of New York*,
   85 A.D.3d 640 (1st Dep't 2011)...................................................................................... 14

*Velez v. Project Renewal*,
   Civ. No. 02-3084, 2003 WL 402500 (S.D.N.Y. Feb. 20, 2003) ........................................... 6

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................................... 6

Fed. R. Civ. P. 56(e) ................................................................................................... 6

N.Y. C.P.L.R. § 214(5) ......................................................................................... 1, 7, 8

N.Y. C.P.L.R. § 214-c(2) ................................................................................... 1, 7, 8, 14

The Defense Liaison Counsel ("DLC") in the above-captioned matter submits this memorandum of law in support of Defendants' Motion for Summary Judgment to dispose of the case filed by plaintiff Mieczyslaw Zygmunt on January 23, 2009, pursuant to New York Civil Practice Law and Rules Sections 214(5) and 214-c(2), because it was filed years after the statute of limitations expired.

## PRELIMINARY STATEMENT

To efficiently advance the hundreds of cases pending in this consolidated action, the Court, Plaintiffs' counsel, and Defendants' counsel selected two groups of plaintiffs to proceed through pretrial discovery.  Discovery has shown that the suit brought by one of these plaintiffs, Mieczyslaw Zygmunt, should be dismissed for the straightforward reason that it was filed too late.  Under New York statute, an exposure-based personal injury claimant must bring suit within three years of the discovery of his or her alleged injuries.  It is black-letter law that discovery occurs not upon diagnosis or a plaintiff's recognition of the cause of his or her injury, but rather when a plaintiff first discovers the manifestations or symptoms of the medical condition upon which his or her claim is based.  Here, the undisputed record shows that Mr. Zygmunt discovered symptoms related to each and every one of his alleged injuries by 2003 at the latest, ***but did not file his complaint until nearly six years later***, in 2009.  By that time, the three-year statute of limitations period had long since expired, and Mr. Zygmunt's claims were time-barred.  For this reason, Mr. Zygmunt's suit should now be dismissed in its entirety.

## STATEMENT OF UNDISPUTED FACTS

On August 29, 2011, the Court set out a process for the selection of 45 plaintiffs from the 21 MC 102 and 21 MC 103 dockets to proceed through full pretrial discovery. (Order Amending Summary Order—August 2, 2011 Conference, Aug. 29, 2011 [Doc. No. 4080].) One of the plaintiffs selected is the subject of this Motion: Mieczyslaw Zygmunt (09CV0679).

Mr. Zygmunt, an experienced asbestos clean-up worker who retired at the age of 64 in 2006 after working more than 25 years in the industry,[1] assisted with 9/11 related clean-up efforts at various buildings in lower Manhattan from September 2001 through March 2002. (Ex. B, TCDI Report at 1; *see also* Ex. C, Local 78 Work History at 2.) Mr. Zygmunt alleges that while working at those locations he was exposed to asbestos and other toxic substances, and that this exposure allegedly caused him to contract eleven different injuries, including: interstitial lung disease ("ILD"), asthma, reactive airways dysfunction syndrome ("RADS"), chronic bronchitis, sinusitis, rhinitis, chronic nasopharyngitis, sleep apnea, GERD, gastritis, lung nodules, and post-traumatic stress disorder ("PTSD").[2] (Ex. B, TCDI Report at 2.)

The discovery record—including: (a) Mr. Zygmunt's sworn deposition testimony; (b) the discovery responses he submitted under oath in this litigation; (c) medical records from his March 2003 examination in connection with the WTC Worker and Volunteer Medical Screening Program at Mt. Sinai (the "WTC Screening Program"); (d) a workers' compensation claim form,

---

[1]   Ex. A, Zygmunt Dep. Tr. at 113:20-114:7 (6/13/13). "Ex. __" refers to Exhibit __ to the Declaration of Lee Ann Stevenson, submitted herewith.

[2]   Mr. Zygmunt's TCDI response also lists coronary artery disease, "moderate obstruction/mild restriction," and a deviated nasal septum as injuries. Ex. B, TCDI Report at 2. But these three alleged injuries do not require the continuance of Mr. Zygmunt's suit. Mr. Zygmunt has already agreed to discontinue his claim for coronary artery disease. Ex. D, Zygmunt Stipulation of Discontinuance. "Moderate obstruction/mild restriction" is not a recognized condition, but rather seemingly refers to Mr. Zygmunt's alleged respiratory symptoms. For the reasons Mr. Zygmunt's actual respiratory conditions are untimely, his symptoms of "moderate obstruction/mild restriction" also cannot support a claim. *See* Section I.A, *supra*. Finally, no reasonable juror could find that Mr. Zygmunt's alleged 9/11-related exposure caused a deviated nasal septum. Ex. E, Causes of Deviated Septum, Mayo Clinic (deviated septum can be caused only by "a condition present at birth" or "[i]njury to the nose…that causes the nasal septum to be moved out of position," not by exposure to irritants).

2

signed and dated by Mr. Zygmunt as of November 8, 2003; and (e) medical records from Mr. Zygmunt's December 2003 follow-up examination at Mt. Sinai—confirms that *Mr. Zygmunt began to report or to claim to suffer from persistent symptoms related to each of these alleged conditions by 2003 at the latest*. Specifically, the discovery record shows that:



- ██████████████████████████ Mr. Zygmunt claims to have first suffered from ██████████████████████████████████

- ██████████████████████████ As noted above, Mr. Zygmunt claims that he first began ████████████████████████████

- ████████████████████████████████████████

- ████████████████████████████████████████

---

3   Ex. F, Pl.'s Resp. to Defs.' Discovery Demands, at 277-283, 285.

4   Ex. G, Zygmunt Dep Tr. at 21:19-23:4 (10/11/2013).

5   *Id.* at 22:22-23:11.

6   *Id.* at 75:21-76:2; Ex. H, WTC Screening Program Letter at 000002; *see also* Ex. I, Zygmunt Dep. Tr. at 170:7-171:13 (8/28/2013).

7   Ex. J, Workers Compensation Form.

8   Ex. F, Pl.'s Resp. to Defs.' Discovery Demands, at 277-283, 285.

9   Ex. G, Zygmunt Dep Tr. at 21:19-23:4 (10/11/2013).

10  *Id.* at 21:19-23:11.

11  Ex. I, Zygmunt Dep Tr. at 170:7-171:13 (8/28/2013).

12  Ex. H, WTC Screening Program Letter at 000002.

13  Ex. I, Zygmunt Dep Tr. at 170:7-171:13  (8/28/2013).



14   *Id.* at 175:10-23; *see also* Ex. F, Pl.'s Resp. to Defs.' Discovery Demands, at 286.

15   Ex. I, Zygmunt Dep Tr. at 170:7-171:13 (8/28/2013).

16   Ex. J, Workers Compensation Form.

17   Ex. G, Zygmunt Dep Tr. at 21:19-23:4 (10/11/2013).

18   Ex. H, WTC Screening Program Letter at 000002-000003.

19   Ex. I, Zygmunt Dep Tr. at 170:7-171:13 (8/28/2013).

20   Ex. H, WTC Screening Program Letter at 000002.

21   *Id.* at 000003.

22   Ex. G, Zygmunt Dep Tr. at 21:19-23:4 (10/11/2013).

23   *Id.* at 22:19-23:15.

24   Ex. H, WTC Screening Program Letter at 000002.

25   Ex. G, Zygmunt Dep Tr. at 99:19-101:5, 21:19-23:4 (10/11/2013).

26   *Id.* at 22:19-23:15.

27   Ex. H, WTC Screening Program Letter at 000002 (noting "throat irritation").



Removing any doubt of Mr. Zygmunt's recognition of his alleged symptoms as of 2003, during his follow-up examination at Mt. Sinai on December 8, 2003, Mr. Zygmunt not only complained that these symptoms persisted but also linked their onset to the time period during which he worked at the WTC site.  When specifically asked what symptoms he had experienced in the one year prior to September 11, 2001, and those experienced since September 11, 2001, Mr. Zygmunt confirmed his recognition of a number of alleged "new" symptoms following his 9/11-related work, including: ███████████████████████████████████████████████

███████████████████████████████████████████████ He also claimed that a

---

28   Ex. I, Zygmunt Dep Tr. at 170:7-171:13 (8/28/2013).
29   Ex. G, Zygmunt Dep Tr. at 100:9-102:19 (10/11/2013).
30   Ex. H, WTC Screening Program Letter at 000002.
31   Ex. I, Zygmunt Dep Tr. at 170:7-171:13 (8/28/2013).
32   Ex. J, Workers Compensation Form.
33   *Id.*
34   Ex. K, St. Mark's Treatment Plan Review.
35   Ex. L, WTC Screening Program Medical Questionnaire at 000291-294; *see also* Ex. M, WTC Screening Program Assessment and Plan Form.

number of "prior" symptoms, including ███████████████████████████████████

████████████████████████████████████

     Despite his recognition of all of these symptoms, Mr. Zygmunt did not file his complaint until January 23, 2009.[37]

## STANDARD OF REVIEW

     The standard for granting summary judgment is a familiar one:  a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  If a moving party meets its burden, the non-moving party must then present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Though facts and their reasonable inferences are to be drawn in favor of the non-moving party, that party must raise "more than just metaphysical doubt as to material facts" to defeat a summary-judgment motion; "mere speculation and conjecture" do not suffice. *Velez v. Project Renewal*, Civ. No. 02-3084, 2003 WL 402500, at *1 (S.D.N.Y. Feb. 20, 2003) (quotations & citations omitted).

     "Under the Rule, a party moving for summary judgment can meet its burden either by producing evidence showing the absence of a genuine issue of material fact, or by pointing out to the court that there is an absence of evidence supporting one or more of the essential elements of the nonmoving party's case." *Kaczmarek v. Bethlehem Steel Corp.*, 884 F.Supp. 768, 773 (W.D.N.Y. 1995) (*citing Celotex*, 477 U.S. at 325).

---

[36]   Ex. L, WTC Screening Program Medical Questionnaire at 000291-294; *see also* Ex. M, WTC Screening Program Assessment and Plan Form.

[37]   Ex. N, Zygmunt Complaint.

## ARGUMENT

**I.   Mr. Zygmunt's Alleged Exposure-Based Claims, Filed Nearly Six Years After Discovery Of His Alleged Injuries, Are Time-Barred.**

Under New York statute, Mr. Zygmunt's exposure-based personal injury claims are subject to a three-year statute of limitations. N.Y. C.P.L.R. §§ 214(5), 214-c(2).[38] As his injuries are alleged to have been "caused by the latent effects of exposure to any substance or combination of substances," the three year limitation period commences on "the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." *Id.* § 214-c(2).

It is well-settled that "CPLR 214-c(2)'s reference to 'discovery of the injury' was intended to mean discovery of the condition on which the claim was based and nothing more." *Matter of New York Cty. DES Litig.*, 89 N.Y.2d 506, 513 (1997); *Greenberg v. U.S. Envtl. Protection Agency*, No. 21 MC 100 (AKH), D.E. 3017, at 2-3 (S.D.N.Y. Apr. 11, 2013) ("Discovery occurs when the injured party discovers the primary condition on which the claim is based."). Thus, a plaintiff need not make the causal link between his symptoms and his alleged exposure for the statute of limitations to commence. *DES Litig.*, 89 N.Y.2d at 514; *Major v. Astrazeneca, Inc.*, No. 01-618, 2006 WL 2640622, at *19 (N.D.N.Y. Sept. 13, 2006) ("a cause of action for latent injury accrues when the plaintiff becomes aware of his symptoms, regardless of when he learns what caused those symptoms"). Nor must a plaintiff's injury be medically diagnosed. *DES Litig.*, 89 N.Y.2d at 514-15; *Galletta v. Stryker Corp.*, 283 F.Supp.2d 914, 917 (S.D.N.Y. 2003) ("The three year limitations period runs from the date when plaintiff first noticed symptoms, rather than when a physician first diagnosed those symptoms."). Instead, "the

---

[38]   As provided by the Air Transportation Safety and System Stabilization Act of 2001, § 408(b)(2), New York substantive law governs Mr. Zygmunt's personal injury claims.

significant date is when plaintiff began experiencing symptoms," *Galletta*, 283 F.Supp.2d at 917,

and the statute commences upon a plaintiff's "discovery of the manifestations or symptoms of

the latent disease that the harmful substance produced." *Greenberg*, No. 21 MC 100 (AKH),

D.E. 3017, at 2-3 (citing *DES Litig.*, 89 N.Y.2d at 509, 514).

 As discussed above, Mr. Zygmunt claims to suffer from eleven injuries allegedly caused

by exposures during his 9/11-related clean-up work.  But the undisputed record shows that, under

N.Y. C.P.L.R. §§ 214(5), 214-c(2), Mr. Zygmunt discovered, or reasonably should have

discovered, each and every one of these claimed injuries ***by 2003 at the latest***.  Because Mr.

Zygmunt waited nearly six years after that date to file this suit, all of those claims are time-barred as

a matter of law.  *See, e.g.*, *Greenberg*, No. 21 MC 100 (AKH), D.E. 3017, at 3-4 (granting

summary judgment on statute of limitations grounds where plaintiff "failed to file suit within

three years of discovering [his] symptoms"); *Morgan v. Abco Dealers, Inc.*, No. 01-9564, 2007

WL 4358392, at *3-5 (S.D.N.Y. Dec. 11, 2007) (same); *Goffredo v. City of New York*, 33 A.D.3d

346, 347 (1st Dep't 2006) (same); *Galletta*, 283 F.Supp.2d at 917 (same); *Neri v. R.J. Reynolds*

*Tobacco Co.*, 185 F.Supp.2d 176, 181-183 (N.D.N.Y. 2001) (same); *Prohaska v. Sofamor,*

*S.N.C.*, 138 F.Supp.2d 422, 430-32 (W.D.N.Y. 2001) (same); *Bartlett v. Moore Bus. Forms, Inc.*,

No. 96-1632, 2000 WL 362022, at *7 (N.D.N.Y. Mar. 30, 2000) (same); *Oeffler v. Miles Inc.*,

660 N.Y.S.2d 897, 825-26 (3rd Dep't 1997) (same); *Harley v. 135 E. 83rd Owners Corp.*, 655

N.Y.S.2d 507, 137-38 (1st Dep't 1997) (same); *DES Litig.*, 89 N.Y.2d at 514-15 (same).

 A. <u>Mr. Zygmunt Discovered His Respiratory Conditions More Than Five Years</u>
   <u>Before Filing Suit</u>.

 Mr. Zygmunt's first category of injuries are respiratory conditions allegedly caused by

exposure, including interstitial lung disease ("ILD"), asthma, reactive airways dysfunction

syndrome ("RADS"), chronic bronchitis ("CB"), and lung nodules.  The symptoms associated

with these respiratory conditions are similar, and include shortness of breath (ILD,[39] asthma,[40] and RADS[41]), coughing/wheezing (asthma, RADS and CB[42]), chest pain (asthma, RADS and CB), and trouble sleeping/fatigue (Asthma, RADS and CB).  As detailed above, Mr. Zygmunt's medical records and testimony show his recognition of each of these symptoms by 2003 at the latest.

For example, Mr. Zygmunt claimed in his sworn core discovery responses that the date



his ██████████████████████████████████ ████ ██

██████████████████████████████████████████ ████

██ ████ ████ ████ ██████████ ████ Similarly, Mr. Zygmunt's medical records

note that he reported ████████████████████████████████████████

████ ████ ██████████████████████████ ████ ████████

██████████████████████████████ ██████ ████████████

████████████████████ ████ ████████ ████ Put simply, Mr. Zygmunt

---

[39] Ex. O, Symptoms of Interstitial lung disease, Mayo Clinic.

[40] Ex. P, Symptoms of Asthma, Mayo Clinic.

[41] RADS and asthma share the same symptoms.  *See* Ex. Q, Reactive airway disease: Is it asthma?, Mayo Clinic ("Sometimes the terms 'reactive airway disease' and 'asthma' are used interchangeably. Often, the term 'reactive airway disease' is used when asthma is suspected, but not yet confirmed.").

[42] Ex. R, Symptoms of Bronchitis, Mayo Clinic.

[43] Ex. F, Pl.'s Resp. to Defs.' Discovery Demands, at 277-283, 285.

[44] Ex. G, Zygmunt Dep Tr. at 21:19-23:4 (10/11/2013).

[45] *Id.* at 21:19-23:15.

[46] Ex. H, WTC Screening Program Letter at 000002; *see also* Ex. I, Zygmunt Dep Tr. at 170:7-171:13 (8/28/2013).

[47] Ex. J, Workers Compensation Form.

[48] Ex. H, WTC Screening Program Letter at 000002.

[49] Ex. I, Zygmunt Dep Tr. at 170:7-171:13 (8/28/2013).

[50] *Id.* at 175:10-23.

[51] Ex. J, Workers Compensation Form.

[52] Ex. L, WTC Screening Program Medical Questionnaire at 000291-294; *see also* Ex. M, WTC Screening Program Assessment and Plan Form.

complained of a litany of symptoms related to his alleged respiratory conditions throughout 2001 to 2003, when he started to seek treatment, yet nonetheless did not file suit until January 2009.

Importantly, New York law does not require that a plaintiff be "incapacitated by his symptoms" for the statute of limitations to be triggered. *Braunscheidel v. Stryker Corp.*, No. 12-1004, 2013 WL 1337013, at *5 (N.D.N.Y. Mar. 29, 2013) (citation and quotation omitted). "To the contrary, all that [New York law] requires is that the plaintiff's symptoms not be inconsequential or isolated." *Id.*; *see also Neri*, 185 F.Supp.2d at 182 (citing *DES Litig.*, 89 N.Y.2d at 514 n.4). Far from being inconsequential or isolated, Mr. Zygmunt repeatedly reported significant respiratory symptoms, which, according to him, caused him to ██████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████  ─  ████████████████████████████████████████████████████████

████████████████████████████████  Courts have repeatedly held that, for statue-of-limitation purposes, discovery occurred as a matter of law under similar, if not less severe, circumstances. *See, e.g., Bartlett*, 2000 WL 362022, at *4-5 (holding that plaintiff "discovered" her injuries as a matter of law where more than three years prior to the commencement of her action: (a) "virtually all of plaintiff's alleged symptoms emerged;" (b) her symptoms caused her to "miss over three weeks of work"; and  (c) she "prepared a workers' compensation claim stating her symptoms began" before the three-year statutory period); *Neri,* 185 F.Supp.2d at 182 (plaintiff "discovered" injury after experiencing shortness of breath and coughing for "many years" before filing suit, despite the fact that plaintiff "did not reach the point at which he thought it necessary

---

[53]   Ex. G, Zygmunt Dep Tr. at 21:19-23:15 (10/11/2013).
[54]   Ex. J, Workers Compensation Form.

to consult a doctor"); *Fathi v. Pfizer, Inc.*, No. 109841/06, 2009 WL 2950876, at *4 (Sup. Ct. N.Y. County Aug. 31, 2009) (holding that plaintiff discovered injury where symptoms were "persistent" and caused plaintiff to "seek[] medical treatment for this condition from various healthcare providers" over a six-month period of time); *cf. O'Halloran v. 345 Park Co.*, 675 N.Y.S.2d 55 (1st Dep't 1998) (finding injuries "inconsequential" where "[p]laintiff only missed two and a half days of work" and "neither sought medical attention nor filed a workers' compensation claim").

The undisputed record shows that Mr. Zygmunt's reported respiratory-related medical symptoms triggered the statute-of-limitations period in 2003—at the latest. Because he failed to file suit for his respiratory claims within three years of that time, those claims must now be dismissed.

B.  Mr. Zygmunt Discovered His Sinusitis, Rhinitis, and Chronic Nasopharyngitis More Than Five Years Before Filing Suit.

Mr. Zygmunt's next set of alleged injuries are sinus conditions including sinusitis, rhinitis, and chronic nasopharyngitis. Like the group of respiratory conditions, the symptoms associated with these sinus-related conditions are similar, and include runny nose, stuffy nose, and ear pain.[55] When deposed, Mr. Zygmunt testified that ███████████████████████

████████████████████████████████████████████████████████████████████

████████████████████  When examined by the Mt. Sinai WTC Screening Program in March 2003, he complained of continued ████████████████████████████████████████

████████████████████  His physical examination at that time ███████████████

---

[55]  *See* Ex. S, Symptoms of Chronic Sinusitis Mayo Clinic; Ex. T, Symptoms of Nonallergic rhinitis, Mayo Clinic. Chronic nasopharyngitis is also known as the common cold. *See* 1 ICD-9 CM Table of Diseases and Injuries § 460; *see also* Ex. U, Symptoms of Common cold, Mayo Clinic.

[56]  Ex. G, Zygmunt Dep Tr. at 21:19-23:4 (10/11/2013).

[57]  Ex. H, WTC Screening Program Letter at 000002.

██████████████████████████████████ which, in a letter addressed to Mr. Zygmunt, his

physician indicated ████████████████████████████ The same examination

uncovered some nasal discharge.[59]  The medical records from his December 3, 2003 follow-up

examination at Mt. Sinai again note Mr. Zygmunt's ██████████████████████████████

████████████████████████

Because Mr. Zygmunt recognized, or had reasonable notice of, reportedly persistent

symptoms related to his alleged nasal conditions more than five years before he filed suit, his

claims based on those conditions are time-barred.

C.   Mr. Zygmunt Discovered His Gastro-Intestinal Conditions More Than Five Years
     Before Filing Suit.

Mr. Zygmunt's third set of alleged injuries include two gastro-intestinal conditions:

GERD and gastritis.  The symptoms associated with GERD include heartburn and indigestion,

regurgitation of food or sour liquid, chest pain, dry cough and hoarseness or sore throat.[61]  For

gastritis, the symptoms include heartburn and indigestion, vomiting, nausea, and a feeling of

fullness in the upper abdomen.[62]

Mr. Zygmunt testified that he first experienced symptoms suggestive of GERD, namely,

██████████████████████████████ while he was still on-site in lower Manhattan.[63]  His

core discovery response states that ████████████████████████████████ were

all symptoms of GERD that first appeared in March 2003 ██████████████████  Most

telling, however, is the fact that when Mr. Zygmunt complained of ████████ in March 2003

---

58   *Id.* at 000003.

59   *Id.*

60   Ex. L, WTC Screening Program Medical Questionnaire at 000292, 000296.

61   Ex. V, Symptoms of GERD, Mayo Clinic.

62   Ex. W, Symptoms of gastritis, Mayo Clinic.

63   Ex. G, Zygmunt Tr. at 99:19-101:5 (10/11/2013).

64   Ex. F, Pl.'s Resp. to Defs.' Discovery Demands, at 287.

during his WTC Screening Program examination, his doctor ***explicitly informed him that his***

***symptoms were*** ████████████████ Regarding his alleged gastritis, at that same March

2003 WTC Screening Program examination, Mr. Zygmunt reported symptoms of ████████

████████ On December 8, 2003, also during a WTC Screening Program examination, Mr.

Zygmunt identified ████████████ that had worsened since September 11, 2001, and

further confirmed ████████████████████████████

Because Mr. Zygmunt, by his own admission, claims to have discovered  aforementioned

symptoms well over three years before filing suit, his gastro-intestinal claims should be

dismissed.

D.      Mr. Zygmunt Discovered His Sleep Apnea More Than Five Years Before Filing
        Suit.

Finally, Mr. Zygmunt alleges that he suffers from sleep apnea as a result of his exposure.

The signs and symptoms of sleep apnea include loud snoring, abrupt awakenings with shortness

of breath, insomnia, and headache.[68]  Once again, the record shows that Mr. Zygmunt discovered

this claim in 2003.  As discussed above, Mr. Zygmunt claims to have suffered from ████████

████ throughout 2002 and 2003.  (*See* Section I.A., *supra*.)  Mr. Zygmunt further testified that

he began suffering from ████████████ ***before*** May 2002.  ████████████ continued into

2003, as consistently evidenced in the medical records from Mr. Zygmunt's 2003 visits to Mt.

Sinai.  During his March 2003 examination, Mr. Zygmunt complained of ████████████

████████████████████████.  In December 2003, Mr. Zygmunt again

identified ████████████ he suffered after September 11, 2001.  He also complained of

---

[65]   Ex. H, WTC Screening Program Letter at 000002.
[66]   *Id.*
[67]   Ex. L, WTC Screening Program Medical Questionnaire at 000291-000294.
[68]   Ex. X, Symptoms of Sleep Apnea, Mayo Clinic.

████████████████████████.  Finally, Mr. Zygmunt's core discovery response confirms that

████████████████████████████████████████████████████

████████████████████████  that first appeared in March 2003.[69]

Because Mr. Zygmunt discovered the aforementioned symptoms well over three years before filing suit, his sleep apnea claim must be dismissed.

## II.   Mr. Zygmunt's Alleged PTSD Claim Is Time-Barred.

Mr. Zygmunt's claim for alleged PTSD is not subject to New York's discovery rule. *See Tuitt v. City of New York*, 85 A.D.3d 640, 641 (1st Dep't 2011) (PTSD "is not the type of physical injury caused by latent exposure to a toxic substance required by 214–c."). Instead, the three-year statute of limitations on that claim runs from the date of the alleged tortious conduct. *Tuitt*, 85 A.D.3d at 641 (holding that the latest date plaintiff's PTSD could have accrued was "on the last date he worked at the WTC site, April 2002"). The undisputed record proves that Mr. Zygmunt's PTSD claim accrued—and the statute of limitations began to run—no later than March 2002, when he last worked at the World Trade Center site. Mr. Zygmunt did not file suit until 2009, and thus his PTSD claim is time-barred and must be dismissed.[70]

## CONCLUSION

For all these reasons, the Defendants in the 21 MC 102 and 21 MC 103 dockets respectfully request that this Court grant summary judgment in their favor and dismiss the suit filed by Mieczyslaw Zygmunt (09CV0679) in its entirety.[71]

---

[69]   Ex. F, Pl.'s Resp. to Defs.' Discovery Demands at 286.

[70]   Even if Mr. Zygmunt's PTSD claim were subject to the discovery rule, it would still be time-barred.  As noted above, he was ████████████████ in August 2004. Ex. K, St. Mark's Treatment Plan Review.  His failure to file suit within three-years of that date would render his PTSD claim untimely.  *See DES Litig.*, 89 N.Y.2d at 514 n.4 (holding that "'discovery of the injury occurs within the meaning of CPLR 214-c(2) when the plaintiff is diagnosed with the primary condition for which damages are sought").

[71]   Summary judgment on Mr. Zygmunt's claims necessitates dismissal of Plaintiff Roza Zygmunt's only claim, for loss of consortium, which is derivative of Mr. Zygmunt's primary claims.  *See, e.g., Galletta*, 283 F. Supp.

Dated: November 6, 2013
      New York, NY

/s/ Lee Ann Stevenson
Lee Ann Stevenson (LS 3065)
Brett J. Broadwater
**KIRKLAND & ELLIS LLP**
601 LEXINGTON AVENUE
New York, NY  10022-4611
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
lstevenson@kirkland.com

*Attorney for Defendant Verizon New York Inc.*
*Member of Defense Liaison Committee*

*Defense Liaison Committee in 21 MC 102 and 21 MC 103 Dockets*

Richard E. Leff
**MCGIVNEY & KLUGER, P.C.**
80 Broad Street, 23rd Floor
New York, NY  10004
Telephone:  (212) 509-3456
rleff@mklaw.us.com

Philip Goldstein
**MCGUIRE WOODS LLP**
1345 Avenue of the Americas
New York, NY  10105
Telephone:  (212) 548-7012
pgoldstein@mcguirewoods.com

Thomas A Egan
**FLEMMING ZULACK**
**WILLIAMSON ZAUDERER LLP**
One Liberty Plaza
New York, NY  10006
Telephone:  (212) 412-9507
tegan@fzwz.com

Stanley Goos
**HARRIS BEACH PLLC**
100 Wall Street
New York, NY  10005
Telephone: (212) 313-5452
sgoss@harrisbeach.com

John M. Flannery
**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER LLP**
150 East 42nd Street
New York, NY  10017
Telephone:  (914) 872-7111
john.flannery@wilsonelser.com

William J. Smith
**FAUST GOETZ**
**SCHENKER & BLEE LLP**
Two Rector Street, 20th Floor
New York, NY  10006
Telephone:  (212) 363-6900
wsmith@fgsb.com

---

2d at 917 ("Because all three of Galletta's claims are time-barred, his wife's derivative claim for loss of consortium . . . also fails.").

*Defendants in Case No. 09CV0679, Mieczyslaw Zygmunt and Rosa Zygmunt vs. 59 Maiden Lane, LLC, et al.*

David M. Pollack
David B. Sherman
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
77 Water Street, 21st Floor
New York, New York 10005
Telephone: (212) 232-1300
David.Pollack@lewisbrisbois.com
David.Sherman@lewisbrisbois.com

*Attorney for Defendants*
Syska Hennessy Group, Inc., and
William F. Collins AIA Architects, LLP

Richard E. Leff
**MCGIVNEY & KLUGER, P.C.**
80 Broad Street, 23rd Floor
New York, NY 10004
Telephone: (212) 509-3456
rleff@mklaw.us.com

*Attorney for Defendants*
Boston Properties Inc. & 90 Church Street
Limited Partnership,
General Reinsurance Corp. i/s/h/a General re
Services Corp.,
National Association of Securities Dealers, Inc.
(NASD), The New York City Industrial
Development Agency (NYCIDA), New York
City Economic Development Corporation
(NYCEDE), and The NASDAQ Stock
Market, Inc.

Alex R. Malino
William D. Joyce III
**BARRY, MCTIERNAN & MOORE, LLC**
2 Rector Street, 14th floor
New York, NY 10006
Phone: (212) 313-3600
alexmalino@bmmfirm.com
wjoyce@bmmfirm.com

*Attorneys for Defendants*
Ann Taylor Stores, Inc.,
Structure Tone, (UK) Inc.,
and Structure Tone Global Services, Inc.

John M. Flannery
Allyson Avila
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
1133 Westchester Avenue
White Plains, NY 10604
Phone: (914) 323-7000
john.flannery@wilsonelser.com
Allyson.avila@wilsonelser.com

*Attorney for Defendant*
Tellabs Operations, Inc.

Salvatore J. Calabrese
**AHMUTY DEMERS & MCMANUS**
199 Water Street
New York, NY 10038
Phone:  (212) 513-7788
Salvatore.Calabrese@admlaw.com

*Attorneys for Defendant*
Hillmann Environmental Group, LLC

Suzanne Halbardier
Charles C. Neal
**BARRY, MCTIERNAN & MOORE, LLC**
2 Rector Street, 14th Floor
New York, NY 10006
Phone: (212) 313-3600
cneal@bmmfirm.com

*Attorneys for Defendants*
Amtrust Realty/59 Maiden Lane

Gregory J. Popadiuk, Esq.
**FAUST GOETZ SCHENKER & BLEE LLP**
Two Rector Street, 20th Floor
New York, NY 10006
Phone: (212) 363-6900 ext. 25
gpopadiuk@fgsb.com

*Attorneys for Defendant*
Tucker Anthony

Frank J. Keenan
**METHFESSEL & WERBEL**
450 Seventh Avenue, Suite 1400
New York, NY 10123
Phone (212) 947-1999
Keenan@methwerb.com

*Attorneys for Defendant*
Blackmon Mooring Steamatic Catastrophe, Inc. d/b/a BMS CAT

Glenn A. Monk
**HARRINGTON, OCKO & MONK**
81 Main St.
White Plains, NY 10601
Phone: (914) 686-4800
gmonk@homlegal.com

*Attorneys for Defendant*
St. John's University

Maria J. Ciccia
**COZEN O'CONNOR**
45 Broadway, 16th Floor
New York, NY 10006
Phone: (212) 509-9400

*Attorneys for Defendants*
LVI Environmental Services, Inc. and LVI Services, Inc.

Robert R. Rigolosi
**SEGAL MCCAMBRIDGE SINGER & MAHONEY LTD**
850 Third Ave, Suite 1100
New York, NY 10003
Phone: (212) 651-7500
Rrigolosi@SMSM.com

*Attorneys for Defendants*
One Wall Street Holdings LLC and The Bank of New York Company, Inc.

Michael D. Hynes
John Vukelj
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 335-4500
John.Vukelj@dlapiper.com

*Attorneys for Defendant*
FGP 90 West