**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                    :

IN RE WORLD TRADE CENTER LOWER     :
MANHATTAN DISASTER SITE LITIGATION   :   21 MC 102 (AKH)

------------------------------------------------------------ x
                                      :

MIECZYSLAW ZYGMUNT AND ROSA       :   09 CV 0679 (AKH)
ZYGMUNT,                                :
                   Plaintiffs,      :
                                      :

-against-                               :
                                      :

59 MAIDEN LANE ASSOCIATES, LLC, ET AL. :
                   Defendants      :
                                      :

------------------------------------------------------------ x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT STATUTE OF LIMITATIONS MOTION FOR SUMMARY JUDGMENT

<u>**PRELIMINARY STATEMENT**</u>

In a transparent legal maneuver, Plaintiff Mieczyslaw Zygmunt has abandoned more than half of his claimed injuries in hopes of salvaging some compensable claim. To do so, Plaintiff tries to pin his early-reported, persistent respiratory symptoms solely on his claimed ***upper*** respiratory injuries (*i.e.*, Sinusitis, Rhinitis, Chronic Nasopharyngitis, and Obstructive Sleep Apnea), which he now concedes as time-barred, but then staunchly argues that those same respiratory symptoms could not have possibly been related to his claimed ***lower*** respiratory injuries (*i.e.*, Asthma, RADS, Chronic Bronchitis, Lung Nodules, and Interstitial Lung Disease). This attempt fails. Plaintiff's own sworn testimony conclusively establishes that symptoms commonly associated with ***all*** of the injuries he alleges, including his claimed lower respiratory injuries, arose and were persistent more than three years before Plaintiff filed his lawsuit. Indeed, the very medical records that Plaintiff submits in opposition to Defendants' motion show the same. New York law is clear that the statute of limitations is triggered not by the diagnosis of injury, as Plaintiff argues, but by the manifestation of persistent symptoms, which Plaintiff has unequivocally and repeatedly testified under oath occurred before 2005. Under New York law, Plaintiff's claims are time-barred.

<u>**ARGUMENT**</u>

**I.     Mr. Zygmunt Has Abandoned His Claims For Sinusitis, Rhinitis, Chronic Nasopharyngitis, Obstructive Sleep Apnea, GERD, and PTSD.**

Mr. Zygmunt filed suit in January 2009, asserting claims for "twelve unique and distinct injuries from his exposure to the toxic substances at the World Trade Center site." (Opp. at 1.) When the parties selected 45 individual plaintiffs to proceed through full pretrial discovery,

Plaintiffs' counsel hand-selected Mr. Zygmunt to be one such individual.[1]   The parties then engaged in over a year of discovery regarding Mr. Zygmunt's allegations, throughout which time he maintained his claims for alleged "upper respiratory illnesses" and "other illnesses," including PTSD.  (Opp. at 1.)  This discovery involved significant expense to Defendants.  In fact, just a few weeks after Defendants completed Plaintiff's deposition, Defendants had Plaintiff undergo a psychological examination pursuant to Rule 35 of the Federal Rules of Civil Procedure, an examination which costs Defendants thousands of dollars.  Plaintiff doggedly resisted resolution of the present motion, asserting that it was premature and could not be decided prior to the completion of fact discovery.   Yet, in opposition to Defendants' motion, Plaintiff quickly concedes that the early discovery of symptoms associated with his claimed upper respiratory illnesses and "other injuries" results in those claims being time-barred:

- "We acknowledge however, that during [2002-2003], the plaintiff's ████████████ ████████████████████████ **Suit for these distinct illnesses or medical conditions was not timely commenced**."  (Opp. at 6 (emphasis added).)

- "[In 2002-2003] Mr. Zygmunt also began to experience ████████████ ██████████████████████████████████ **suit for this illness was not timely commenced**."  (*Id.* at 6-7 (emphasis added).)

- ████████████████████████████████████ and **are thus time-barred**."  (*Id.* at 1 (emphasis added).)

Mr. Zygmunt has thus abandoned more than half of his claims as time-barred.  These claims never should have been asserted, let alone maintained throughout fact discovery—and it is undisputed that these claims must now be dismissed.  *See Greenberg v. U.S. Envtl. Protection Agency*, No. 21 MC 100 (AKH), D.E. 3017, at 3 (S.D.N.Y. Apr. 11, 2013).

---

[1]   *See* Declaration of Brett J Broadwater dated  Dec. 20, 2013 ("Broadwater Decl.") at Ex. Y (October 26, 2012 Email from Plaintiffs' Counsel to Defendants).

## II.     Mr. Zygmunt's Claims for His Alleged Lower Respiratory Injuries Are Likewise Time-Barred

### A.     Mr. Zygmunt Has Admitted That He Discovered Persistent Symptoms of His Alleged Lower Respiratory Illnesses More Than Five Years Before Filing Suit.

Plaintiff's attempt to downplay his early-reported persistent respiratory symptoms as nothing more than "nasal and sinus symptoms" bears little scrutiny.  (Opp. at 3.)  Plaintiff concedes that, based on "authoritative medical textbooks," symptoms of his alleged lower respiratory illnesses include dyspnea or shortness of breath (Asthma, ILD, and RADS)[2] and coughing and wheezing (Asthma, RADS, and Bronchitis).[3]  Indeed, wheezing is a classic symptom indicative of lower respiratory injury or illness.  (Def. Ex. P (wheezing is a symptom of asthma); Ex. Q (wheezing is a symptom of RADS).)  As discussed below, since the inception of his lawsuit, ███████████████████████████████████████████████████████

███████████████████████████████████████

In his very first set of core discovery responses, which he completed and certified under penalty of perjury on March 20, 2009—less than three months after filing suit— Mr. Zygmunt was asked to identify each "specific injury alleged," the "date symptom(s) first appeared" for that injury, and to "describe symptom(s)" associated with the alleged injury.  Mr. Zygmunt swore that symptoms of Asthma, RADS, and Bronchitis—the lower respiratory injuries he now tries to isolate from the other injuries he concedes developed earlier—██████████████████████

██████████████████████████████████████."[4]  Mr. Zygmunt also swore that, in regard to these lower respiratory injuries, his ████████████████████████

---

[2]    D.I. 63, Pl.'s Statement of Undisputed Facts and Controverting Defendants Statement of Undisputed Facts, at ¶¶ 4-6.  Dyspnea is a medical term for breathing discomfort or shortness of breath. *See* Opp. at 10, n. 5.

[3]    *Id.* at ¶¶ 5, 6, 7.

[4]    Ex. F, Pl.'s Resp. to Defs.' Discovery Demands, at 278-280.

████████████████████████████████████.”[5]   Other symptoms that Mr. Zygmunt specifically attributed to his lower respiratory injuries included: “████████████████████████████ ████████████████████████████████████.”[6]   Mr. Zygmunt never amended or withdrew these sworn interrogatory responses.

At his August 8, 2013 and October 11, 2013 depositions, consistent with his 2009 discovery responses, Mr. Zygmunt testified under oath that he began experiencing symptoms associated with each of his alleged lower respiratory injuries following his 9/11-related work, and confirmed that those symptoms persisted throughout much of 2002.[7]   For example, he testified that upon completing his 9/11-related work in March 2002, he was unable to work for the next two months owing, at least in part, to his respiratory symptoms:



Mr. Zygmunt testified that these symptoms were still present when he resumed work in May 2002.



---

[5]   *Id.* ███████████████████████████████████████████████

[6]   *Id.*

[7]   Notably, in August 2001, before he began his 9/11-related work, Mr. Zygmunt underwent a pulmonary function test, conducted by Dr. Rydzewski, that indicated ██████████████████████████████.  *See* Broadwater Decl. at Ex. AB.

[8]   Ex. G, Zygmunt Dep Tr. at 22:22-23:4. (10/11/2013)

[9]   *Id.* at 21:19-23:15.

Mr. Zygmunt testified that his ███████████████ continued—and caused him

to seek medical treatment—in 2003.[10]  As Mr. Zygmunt testified, approximately "a year, [or] a

year and a half" after completing his 9/11 related work in March 2002, he was experiencing

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████"[11]  Further, he testified that, consistent with records from

Mt. Sinai's Medical Monitoring Program, he began ████████████████ in 2003:



Mr. Zygmunt similarly has admitted that ████████████████ in 2004:

Mr. Zygmunt's sworn testimony shows that he was experiencing, and seeking treatment for,

persistent symptoms of his alleged lower respiratory conditions well before January 2006.

Because he did not file his claims based on those alleged injuries until January 2009, his suit is

---

[10]   *Id.* at 171:12-172:9.

[11]   Ex. I, Zygmunt Dep Tr. at 170:7-171:13 (8/28/2013).   Mr. Zygmunt further confirmed in a worker's
compensation form that he filled out and signed in November 2003, that he was suffering f████████
██████████████.   *See* Ex. J.

[12]   *Id.* at 175:3-13. In a 2005 WTC Medical Monitoring Program Interviewer-Administered Medical Questionnaire,
Mr. Zygmunt reported that ██████████████████████████████ in 2003.
Broadwater Decl. at Ex. Z, at ZygmuntMieczyslaw040941_000153, 164.

[13]   Ex. G, Zygmunt Dep Tr. at 171:18-25 (10/11/2013)

time-barred. *See O'Hara v. AMEC Constr. Mgmt.*, No. 11-4252, 2013 U.S. App. LEXIS 23609, at *2 (2d Cir. Nov. 25, 2013) (affirming dismissal of respiratory conditions because plaintiff "conceded that he began experiencing symptoms including shortness of breath, wheezing, and nonproductive coughing" more than three years prior to initiating suit); *Greenberg*, D.E. 3017, at 2-3 (granting summary judgment where plaintiff "testified that he 'was coughing and bringing up all kinds of black stuff' while working at the WTC site," and that "those symptoms persisted, on and off," more than three years prior to suit); *Galletta v. Stryker Corp.*, 283 F. Supp. 2d 914, 917 (S.D.N.Y. 2003) (plaintiff's deposition admissions conclusively demonstrated that he discovered symptoms in 1998 and thus his 2002 suit was time-barred); *Oeffler v. Miles Inc.*, 241 A.D.2d 822, 825 (3d Dep't 1997) (plaintiff's sworn testimony of repeated symptoms was sufficient to prove discovery of her injuries and commence statute).

Furthermore, Plaintiff's own description of his medical history and the medical records that Plaintiff submits with his opposition brief are replete with reported respiratory issues indicating that Plaintiff recognized, or reasonably should have recognized, persistent symptoms associated with lower respiratory illness by 2005 at the latest. In his opposition brief, Plaintiff concedes that:





Plaintiff's medical records demonstrate that Plaintiff himself reported persistent symptoms associated with lower respiratory injury throughout 2004 and 2005:

Records from Mt. Sinai's Medical Monitoring Program include similar reports:

*See* Broadwater Decl. at Ex. AA.

Plaintiff's medical records also undermine Plaintiff's argument that ████████████ ████████████████████████████ somehow prevent his claims from being time-barred. (*See* Opp. at 16 ("███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████").)  What

---

[14]  These records, together with Plaintiff's own sworn discovery responses and deposition testimony, flatly contradict Plaintiff's revisionist-history version of his medical complaints: ████████████████ ████████████████████████████████████████████████████████ Fairly presented, this evidence leaves no doubt that Plaintiff was reporting ██████████████████████████ from at least 2003 to 2005.

Mr. Zygmunt's medical records *actually* show is that he was



.[15]

.[16]

.[17]

Because Mr. Zygmunt discovered, or reasonably should have discovered, the conditions upon which his lower respiratory claims are based more than three years prior to filings his January 2009 suit, this case must be dismissed in its entirety.

     B.    <u>The Statue of Limitations Commenced Upon Mr. Zygmunt's Discovery Of The Conditions Upon Which His Claim Is Based, Not Upon Diagnosis Of His Injury.</u>

New York law is clear: the statute of limitations commences upon the date of discovery of an injury by a plaintiff, N.Y. C.P.L.R. § 214-c(2), and "discovery of an injury is the 'discovery of the condition on which the claim was based and nothing more.'" *O'Hara,* 2013 U.S. App. LEXIS 23609, at *2 (citing *Matter of New York Cty. DES Litig.*, 89 N.Y.2d 506, 513 (1997)).  As explained in Section II.A. above, Mr. Zygmunt discovered the conditions upon which his alleged lower respiratory injuries were based well over three years before filing suit, rendering his claim time-barred.

---

[15]   *See* Pl.'s Ex. 9

.)

[16]   Def. Ex. H, at 11.

[17]   *See, e.g.*, Pl.'s Ex. 17

Plaintiff's attempts to avoid this rule of law are unavailing. Plaintiff's primary argument—that the statute of limitations cannot commence until Mr. Zygmunt is "diagnosed" with or "develops" his alleged lower respiratory diseases—is contrary to well-established New York precedent. (*See* Opp. at 15-19.) As the New York Court of Appeals has explained, it is the "discovery of the manifestations or symptoms" of an alleged injury, not a physician's diagnosis of the development of a disease, that triggers the three-year statute. *DES Litig.*, 89 N.Y.2d at 514-15 (the New York Legislature did not intend that "the date for commencing an action under CPLR 214-c(2) would depend on such fortuitous circumstances as . . . the diagnostic acuity of [a plaintiff's] chosen physician"); *see Morgan v. Abco Dealers, Inc.*, Civ. No. 01-9564, 2007 WL 4358392, at *3 (S.D.N.Y. Dec. 11, 2007) (CPLR 214-c(2) "forecloses claims by plaintiffs who were aware of the symptomatic manifestations of their illnesses but contend that their causes of action did not accrue until the official diagnoses of the illnesses"); *Galletta v. Stryker Corp.*, 283 F. Supp. 2d 914, 917 (S.D.N.Y. 2003) ("The three year limitations period runs from the date when plaintiff first noticed symptoms, rather than when a physician first diagnosed those symptoms, so the significant date is when plaintiff began experiencing symptoms, not when Dr. Zelicof diagnosed them."); *Ferreri v. McGhan Med. Corp.*, Civ No. 95-6189, 1997 WL 580714, at *3 (S.D.N.Y. Sept. 17, 1997) (same). Indeed, CPLR 214-c(2) does not require the discovery of the "development" of an illness to commence the statute, rather discovery can occur upon only the recognition of the "physical condition or other similarly discoverable objective manifestation of the damage [or symptoms] caused by previous exposure." *Bartlett v. Moore Bus. Forms, Inc.*, Civ. No. 96-1632, 2000 WL 362022, at *4 (N.D.N.Y. Mar. 30, 2000).

This Court recently applied this rule in the consolidated World Trade Center-related litigation.  In *Greenberg v. U.S. Envtl. Protection Agency*, No. 21 MC 100 (AKH), D.E. 3017, (S.D.N.Y. Apr. 11, 2013), the Court dismissed plaintiff's claims for asthma, sarcoidosis, and other alleged respiratory injuries where plaintiff testified that he experienced a chronic cough that "persisted, on and off" as well as frequent wheezing, chest tightness, and shortness of breath more than three years before filing suit.  *Id.* at 2-3.  Although plaintiff's sarcoidosis was formally first diagnosed within the statutory period, ████████████████████████████████

████████, the Court granted summary judgment as to *all* respiratory injuries, noting that there was significant overlap between the symptoms that characterized plaintiff's other, more general respiratory injuries and those associated with sarcoidosis.  *Id.* at 4.  The Court held that because those admittedly common symptoms arose prior to the statutory period, plaintiff specific claim based on sarcoidosis was time-barred along with his more general respiratory claims.

Other courts interpreting CPLR 214-c(2) have similarly dismissed claims as time-barred where a plaintiff discovers the symptoms of the alleged injury more than three years prior to bringing suit—even if the initial diagnosis or discovery of the disease itself falls within the allowable three-year period.  For example, in *Harley v. 135 E. 83rd Owners Corp.*, plaintiff first experienced symptoms associated with her alleged allergic reaction to mold in December 1987, but didn't file suit until 1993.  238 A.D.2d 136, 136-37 (1st Dep't 1997).  In opposing summary judgment, plaintiff argued that the statute should not commence until 1990, the date she "was informed for the first time by [her physician] that she might be suffering from an allergic reaction to an unknown substance."  *Id.* at 137.  To support this position—just as Mr. Zygmunt argues in this case—the "plaintiff aver[ed], with evidentiary support, that she saw a number of doctors [from 1988-1990] and received a wide range of diagnoses, none of which disclosed her

actual problem." *Id.* Nonetheless, and as Mr. Zygmunt concedes, the court rejected the argument that the 1990 diagnosis triggered the statute. (*See* Opp. at 17 (citing *Harley* and recognizing that "[e]ven though the diagnosis of a mold allergy was not made until [1990], the triggering event for Statute of Limitations purposes was when the plaintiff developed the injury [in 1987].").) Instead, because "there [was] no dispute that plaintiff's symptoms began in December 1987" based on her own admissions, the statute commenced in 1987 and the plaintiff's suit was time-barred. *Harley*, 238 A.D.2d at 137-38.

Similarly, in *Neri v. R.J. Reynolds Tobacco Co.*, plaintiff began experiencing symptoms of emphysema—including "shortness of breath and at least some coughing"—more than three years before his suit was commenced. 185 F. Supp. 2d 176, 180 (N.D.N.Y. 2001). Nonetheless, plaintiff argued that his February 1998 suit was timely because he was not diagnosed with emphysema until December 1995. *Id.* at 181-82. The court again rejected plaintiff's argument that the date his doctor found that emphysema had developed controlled, given that, "[b]y his own admission, [plaintiff] experienced coughing and had trouble breathing when exerting himself for many years prior to the formal diagnosis that he suffered from emphysema." *Id.* at 182. The court accordingly held that "discovery of his injury" occurred prior to plaintiff's diagnosis, and plaintiff's untimely claim was dismissed on summary judgment. *Id.* at 182-83; *see also Galletta*, 283 F. Supp. 2d at 916-17 (dismissing 2002 suit given plaintiff's 1998 discovery of his symptoms, despite the fact that his "doctor did not diagnose those symptoms until 1999"); *Whitney v. Quaker Chem. Corp.*, 90 N.Y.2d 845, 847 (1997) (dismissing 1993 claim as untimely where plaintiff discovered symptoms in 1989: "Neither plaintiff's contention that his symptoms worsened and changed in 1991 nor the diagnosis of a doctor he first visited in September 1991 that [the substance at issue] caused his injury makes his claim timely."). In

short, New York courts have repeatedly rejected the very argument Plaintiff advances here, and the Court should hold that the statute of the limitations began to run when, according to his own sworn testimony, Plaintiff first experienced persistent symptoms of his alleged lower respiratory injuries, and not when such injuries were first diagnosed.[18]

    C.    <u>Plaintiff's Attempts To Escape The Application Of CPLR 214-c(2)'s Time-Bar Lack Merit.</u>

To escape his admissions that he suffered from symptoms of his alleged lower respiratory injuries prior to 2006, Plaintiff argues that his symptoms were too "isolated and inconsequential" to trigger the three-year statute of limitations under CPLR 214-c(2).[19]  (Opp. at 21-26.)  But the record before the Court on this motion belies Plaintiff's argument: not only were Plaintiff's symptoms persistent prior to January 2006,[20] these symptoms caused him **(1)** to seek medical treatment ▊▊▊▊▊▊▊▊▊ ▊▊ ▊▊▊▊▊▊ *compare Braunscheidel v. Stryker Corp.*, Civ. No. 12-10004, 2013 WL 1337013, at *5 (N.D.N.Y. Mar. 29, 2013) (barring claim where plaintiff sought

---

[18]    Because determining the date of diagnosis or development of Mr. Zygmunt's alleged lower respiratory injuries is not required under CPLR 214-c(2), this court need not perform "a detailed analysis of plaintiff's medical records," solicit "testimony of those rendering treatment," or rely on the declaration of Plaintiff's alleged expert Dr. Pulle to dispose of this case.  (*See* Opp. at 2.)  Instead, as discussed in Section II.A, Mr. Zygmunt's own admissions that he was experiencing symptoms associated with his alleged lower respiratory injuries outside of the applicable statutory period are sufficient to warrant dismissal regardless of any interpretation of the medical record.  *See Galletta*, 283 F. Supp. 2d at 917 (plaintiff's deposition admission that he first experienced symptoms in 1998—despite conflicting medical records indicating that his doctor believed symptoms first presented in 1999—conclusively demonstrated discovery in 1998 and time-barred plaintiff's 2002 suit).

[19]    The Court need not consider the December 11, 2013 affidavit submitted by Mr. Zygmunt in opposition to Defendants' motion.  In the first instance, Mr. Zygmunt concedes that while he was "working in Lower Manhattan cleaning buildings surrounding Ground Zero as a Local 78 asbestos handler during the third week of September 2001" he experienced ▊▊▊▊▊▊▊▊▊▊▊▊ Pl.'s Ex. 34 at ¶2.  And to the extent the affidavit contradicts Mr. Zygmunt's earlier sworn testimony, it must be rejected.  *See In re WTC Lower Manhattan Disaster Site Litig.*, 21 MC 102, D.E. 4367, Summary Order Dismissing Case, July 25, 2012 ("Plaintiffs may not create an issue of fact, after the filing of defendants' motion, by disputing prior sworn statements." (citing *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991)).

[20]    *See* Section II.A., *supra*; *see also* Opp. at 21, 24-25.

[21]    Ex. H, WTC Screening Program Letter at 000002; Ex. L, WTC Screening Program Medical Questionnaire at 000291-294; *see also* Ex. M, WTC Screening Program Assessment and Plan Form.

[22]    Opp. at 11 (citing Pl.'s Ex. 12).

[23]    Opp. at 12 (citing Pl.'s Ex. 17).

medical attention multiple times prior to the three-year statutory period) *with O'Halloran v. 345 Park Co.*, 251 A.D.2d 260, 261 (1st Dep't 1998) (symptoms inconsequential where plaintiff did not seek medical attention prior to the three-year statutory period); and **(2)** to miss two months of work in March 2002,[24] *compare Bartlett*, 2000 WL 362022, at *4-5 (barring claim where symptoms caused plaintiff to miss over three weeks of work) *with O'Halloran*, 251 A.D.2d at 261 (finding plaintiff's symptoms inconsequential as she missed two and a half days of work); *Castiglione*, 22 A.D.3d at 935 (missed zero days of work); *Cabrera v. Picker Int'l Inc.*, 2 A.D.3d 308, 309 (1st Dep't 2003) (missed zero days of work); *Johnson v. Exxon Corp.*, 258 A.D.2d 946, 946 (4th Dep't 1999) (alleged injury did not prevent plaintiff from working).

Plaintiff also argues that the "two injury" or "second injury" rule—which holds that "diseases that share a common cause may nonetheless be held separate and distinct where their biological manifestations are different"[25]—saves his claim for alleged lower respiratory symptoms.  (Opp. at 26-28.)  But in doing so, Plaintiff confuses the diagnosis of a "separate" injury with the manifestation of the symptoms of the injury.  Plaintiff does not deny that ████████████████████████████████ are symptoms of his alleged lower respiratory illnesses.[26]  Thus, even if his lower respiratory diseases are "entirely new injuries,"[27] the statute of limitations would not be tolled because the symptoms of these supposedly "new injuries" are identical to the symptoms that Mr. Zygmunt experienced during and immediately after his work

---

[24]   *See* Zygmunt Tr. 20:7-21:18; 22:19-23:4 (10/11/2013).

[25]   *See In re World Trade Ctr. Disaster Site Litig.*, 834 F. Supp. 2d 184, 191 (S.D.N.Y. 2011).

[26]   Ex. O (symptoms of interstitial lung disease); Ex. P (symptoms of asthma); Ex. Q (RADS shares the same symptoms of asthma); Ex. R (symptoms of bronchitis).

[27]   The conclusions reached in Dr. Pulle's affidavit, Plaintiff's Exhibit 35, are based exclusively on his review of a limited set of medical records.  Importantly, Dr. Pulle reviewed neither Plaintiff's deposition transcripts nor Plaintiff's core discovery responses. If anything, despite the doctor's attempt to downplay Plaintiff's symptoms, Dr. Pulle's affidavit only supports Defendants' argument: it recognizes that Mr. Zygmunt experienced ████████████████████████ during his work at the World Trade Center site in 2001 and continuing through at least 2005. (Pl.'s Ex. 35 ¶¶ 3, 7-8.)

at the World Trade Center site.[28]  *Ferreri*, 1997 WL 580714, at \*3 (second-injury rule does not apply where symptoms underlying first diagnosis do not materially differ from symptoms underlying later diagnosis); *Whitney*, 90 N.Y.2d at 845 (plaintiff's contention that his symptoms worsened did not make claim timely where plaintiff's symptoms "led him to make repeated visits to the hospital…for treatment and "to file a workers' compensation claim"); *see also Greenberg*, No. 21 MC 100 (AKH), D.E. 3017.  Accordingly, because Plaintiff discovered the manifestation of the symptoms associated with his lower respiratory injuries before 2006, his lower respiratory claims are time barred.

### III.  The Court Should Summarily Reject Plaintiff's Invitation to Legislate From the Bench.

In Section V of his opposition, Plaintiff argues, rather remarkably, that the Court "must take cognizance" of other specific legislative acts in interpreting CPLR 214-c(2).  Specifically, Plaintiff points to amendments to N.Y. GML §50-e (or Jimmy Nolan's law), changes to Article 8-A of New York State Workers' Compensation Law, and the federal James Zadroga 9/11 Health and Compensation Act of 2010—which Plaintiff suggests all weigh in favor of a "more liberal" reading of CPLR 214-c(2).  The Court should reject that suggestion.  Not only has the Second Circuit recently affirmed this Court's straightforward application of CPLR 214-c(2) to a plaintiff's 9/11-related claims, *see O'Hara*, 2013 U.S. App. LEXIS 23609, but each of the legislative acts to which Plaintiff looks undercuts the contention that CPLR 214-c(2) deserves unique interpretation in a 9/11-related civil suit against private defendants.

---

[28]  The two cases cited by Plaintiff are inapposite.  In *Golod*, plaintiff developed entirely new symptoms of ocular injury.  *Golod v. La Roche*, 964 F. Supp. 841, 851 (S.D.N.Y. 1997).  Likewise, in *Fusaro*, the court noted that mesothelioma and lung cancer, with which plaintiff was diagnosed after he developed asbestosis and after the statute of limitations had run, "may develop without any manifestation of asbestosis."  *Fusaro v. Porter-Hayden Co.*, 548 N.Y.S.3d 856, 859 (N.Y. Sup. Ct. 1989).  Here, Mr. Zygmunt's alleged upper and lower respiratory injuries share many of the same symptoms and Plaintiff has not pointed to any unique symptom that Mr. Zygmunt was unaware of until after 2006.

*First*, in enacting Jimmy Nolan's law to extend notice-of-claims provisions applicable to certain municipal entities and in altering Article 8-A to extend the deadline for 9/11-related Workers' Compensation claims, the New York state legislature revisited particular filing deadlines *without* amending CPLR 214-2(c), or creating any 9/11-related exception to its three-year limitations period.  Consistent with the *expressio unius exclusio alterius* canon of statutory construction, "'[w]here a statute describes the particular situations in which it is to apply and no qualifying exception is added, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded.'"  *Raynor v. Landmark Chrysler*, 959 N.E.2d 1011, 1015 (2011) (quoting *Matter of Alonzo M. v. New York City Dept. of Probation*, 532 N.E.2d 1254 (1988)).  That the New York legislature left CPLR 214-2(c) untouched—despite Jimmy Nolan's law and amendments to Article 8-A—indicates that the legislature intended CPLR 214-2(c) to continue to apply in ordinary course to civil claims against private defendants like those left in Mr. Zygmunt's lawsuit.

*Second*, the federal Zadroga Act provides qualifying 9/11 clean-up workers with a non-adversarial avenue to financial compensation and medical treatment and monitoring.  As the Court well knows, one prerequisite to receiving compensation under the Act is that an applicant must waive his right to bring civil claims based on his 9/11-related injuries.  *See* 28 C.F.R. § 104.61.  The Act is, of course, silent regarding when a potential application must, under New York state law, file a lawsuit after the onset of persistent physical symptoms.  Mr. Zygmunt presumably made an informed decision to maintain his lawsuit, and thereby waive any right under the Act to financial compensation for his alleged injuries, and he cannot now look to the Act to somehow alter the settled state law that applies in that lawsuit.

## CONCLUSION

For all these reasons, the Defendants in the 21 MC 102 and 21 MC 103 dockets respectfully request that this Court grant summary judgment in their favor and dismiss the suit filed by Mieczyslaw Zygmunt in its entirety.

Dated: December 20, 2013          /s/ Lee Ann Stevenson
      New York, NY          Lee Ann Stevenson (LS 3065)
                                       Brett J Broadwater
                                       **KIRKLAND & ELLIS LLP**
                                       601 LEXINGTON AVENUE
                                       New York, NY  10022-4611
                                       Telephone:     (212) 446-4800
                                       Facsimile:     (212) 446-4900
                                       lstevenson@kirkland.com

*Attorney for Defendant Verizon New York Inc.*
*Member of Defense Liaison Committee*

*Defense Liaison Committee in 21 MC 102 and 21 MC 103 Dockets*

Richard E. Leff
**MCGIVNEY & KLUGER, P.C.**
80 Broad Street, 23rd Floor
New York, NY  10004
Telephone:  (212) 509-3456
rleff@mklaw.us.com

Stanley Goos
**HARRIS BEACH PLLC**
100 Wall Street
New York, NY  10005
Telephone: (212) 313-5452
sgoss@harrisbeach.com

Philip Goldstein
**MCGUIRE WOODS LLP**
1345 Avenue of the Americas
New York, NY  10105
Telephone:  (212) 548-7012
pgoldstein@mcguirewoods.com

John M. Flannery
**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER LLP**
150 East 42nd Street
New York, NY  10017
Telephone:  (914) 872-7111
john.flannery@wilsonelser.com

Thomas A Egan
**FLEMMING ZULACK**
**WILLIAMSON ZAUDERER LLP**
One Liberty Plaza
New York, NY  10006
Telephone:  (212) 412-9507
tegan@fzwz.com

William J. Smith
**FAUST GOETZ**
**SCHENKER & BLEE LLP**
Two Rector Street, 20th Floor
New York, NY  10006
Telephone:  (212) 363-6900
wsmith@fgsb.com

16

*Defendants in Case No. 09CV0679, Mieczyslaw Zygmunt and Rosa Zygmunt vs. 59 Maiden Lane, LLC, et al.*

David M. Pollack
David B. Sherman
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
77 Water Street, 21st Floor
New York, New York 10005
Telephone:  (212) 232-1300
David.Pollack@lewisbrisbois.com
David.Sherman@lewisbrisbois.com

*Attorney for Defendants*
Syska Hennessy Group, Inc., and
William  F. Collins AIA Architects, LLP

Richard E. Leff
**MCGIVNEY & KLUGER, P.C.**
80 Broad Street, 23rd Floor
New York, NY 10004
Telephone:  (212) 509-3456
rleff@mklaw.us.com

*Attorney for Defendants*
Boston Properties Inc. & 90 Church Street
Limited Partnership,
General Reinsurance Corp. i/s/h/a General re
Services Corp.,
National Association of Securities Dealers, Inc.
(NASD), The New York City Industrial
Development Agency (NYCIDA), New York
City Economic Development Corporation
(NYCEDE),  and The NASDAQ Stock
Market, Inc.

Alex R. Malino
William D. Joyce III
**BARRY, MCTIERNAN & MOORE, LLC**
2 Rector Street, 14th floor
New York, NY 10006
Phone:  (212) 313-3600
alexmalino@bmmfirm.com
wjoyce@bmmfirm.com

*Attorneys for Defendants*
Ann Taylor Stores, Inc.,
Structure Tone, (UK) Inc.,
and Structure Tone Global Services, Inc.

John M. Flannery
Allyson Avila
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
1133 Westchester Avenue
White Plains, NY 10604
Phone:  (914) 323-7000
john.flannery@wilsonelser.com
Allyson.avila@wilsonelser.com

*Attorney for Defendant*
Tellabs Operations, Inc.

18

Salvatore J. Calabrese
**AHMUTY DEMERS & MCMANUS**
199 Water Street
New York, NY 10038
Phone:  (212) 513-7788
Salvatore.Calabrese@admlaw.com

*Attorneys for Defendant*
Hillmann Environmental Group, LLC

Suzanne Halbardier
Charles C. Neal
**BARRY, MCTIERNAN & MOORE, LLC**
2 Rector Street, 14th Floor
New York, NY 10006
Phone:  (212) 313-3600
cneal@bmmfirm.com

*Attorneys for Defendants*
Amtrust Realty/59 Maiden Lane

Gregory J. Popadiuk, Esq.
**FAUST GOETZ SCHENKER & BLEE LLP**
Two Rector Street, 20th Floor
New York, NY 10006
Phone: (212) 363-6900 ext. 25
gpopadiuk@fgsb.com

*Attorneys for Defendant*
Tucker Anthony

Frank J. Keenan
**METHFESSEL & WERBEL**
450 Seventh Avenue, Suite 1400
New York, NY 10123
Phone:  (212) 947-1999
Keenan@methwerb.com

*Attorneys for Defendant*
Blackmon Mooring Steamatic Catastrophe,
Inc. d/b/a BMS CAT

Glenn A. Monk
**HARRINGTON, OCKO & MONK**
81 Main St.
White Plains, NY 10601
Phone:  (914) 686-4800
gmonk@homlegal.com

*Attorneys for Defendant*
St. John's University

Maria J. Ciccia
**COZEN O'CONNOR**
45 Broadway, 16th Floor
New York, NY  10006
Phone:  (212) 509-9400

*Attorneys for Defendants*
LVI Environmental Services, Inc. and LVI
Services, Inc.

Robert R. Rigolosi
**SEGAL MCCAMBRIDGE SINGER & MAHONEY LTD**
850 Third Ave, Suite 1100
New York, NY 10003
Phone:  (212) 651-7500
Rrigolosi@SMSM.com

*Attorneys for Defendants*
One Wall Street Holdings LLC and The Bank
of New York Company, Inc.

Michael D. Hynes
John Vukelj
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020
Phone:  (212) 335-4500
John.Vukelj@dlapiper.com

*Attorneys for Defendant*
FGP 90 West