UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE WORLD TRADE CENTER DISASTER SITE LITIGATION | 21 MC 102 (AKH) |
| BERTHA TACHE,<br><br>Plaintiff(s),<br><br>v.<br><br>100 CHURCH STREET, et al.,<br><br>Defendants. | DOCKET NO. 07-cv-1537-AKH<br><br>**DECLARATION IN OPPOSITION TO MOTION FOR A PROTECTIVE ORDER AND IN SUPPORT OF CROSS-MOTION FOR CONTEMPT AND TO COMPEL COMPLIANCE** |

PAMELA B. GOLDSMITH, an attorney duly admitted to practice law in and before the Courts of the State of New York and the United States District Court for the Southern District declares the following pursuant to 28 U.S.C. § 1746:

1. I am a member of the law firm Harris Beach PPLC (hereinafter "defendants' counsel"), attorneys for defendants Zar Realty Corporation and 100 Church, LLC (hereinafter "defendants"), and, as such, am fully familiar with the facts and circumstances herein based upon my participation in the defense of this action and my review of the file materials maintained by my office.

2. This Declaration is respectfully submitted in opposition to non-party Dr. Carlos Serrano's (hereinafter "Dr. Serrano") Motion for a Protective Order from deposition in the Bertha Tache case ("hereinafter "*Tache*") and in support of the within Cross-Motion for Contempt and to Compel Compliance with said Subpoena for deposition, and for such other and further relief as this Court deems just and proper.

3. As detailed below, the arguments set forth in Dr. Serrano's Motion for a Protective Order lack support in both the law and fact. Dr. Serrano maintains he should not have to comply with a valid Subpoena to Testify at a Deposition in a Civil Action timely and properly served by defendants' counsel ("the Subpoena") on the sole basis that he has appeared on two prior occasions to testify in response to subpoenas served by other law firms regarding different plaintiffs in the World Trade Center litigation. As Dr. Serrano has, in clear contravention of the Federal Rules, willfully failed to comply with the Subpoena with no legitimate justification, we respectfully request that this Court find him in contempt and compel his appearance for a deposition in this matter.

4. From the outset, this Court should be aware that, of the approximate 125 treating physician depositions held in this litigation, Dr. Serrano is the only physician to refuse to comply with a Subpoena and appear for deposition and the only physician to seek a protective order. The Subpoena was timely served on December 6, 2013, initially returnable January 13, 2014, and adjourned as a courtesy to Dr. Serrano based upon Dr. Serrano's representation he would appear on a subsequent date. Dr. Serrano was provided with the standard deposition witness fee and cashed the check on December 20, 2013. At no time did Dr. Serrano or his counsel advise he would not submit to deposition until February 11, 2014, when his counsel stated for the first time that Dr. Serrano would not appear for deposition, without setting forth any justifiable basis for such newly conveyed position. Such conduct by Dr. Serrano and his counsel should not be tolerated and Dr. Serrano should be found in contempt of the Subpoena and compelled to appear for deposition.

5. Despite acknowledging receipt of the Subpoena and previously agreeing to appear for a deposition in this case, Dr. Serrano now argues that this Court should issue a protective order foreclosing this discovery because he "do[es] not believe his appearance at a

deposition is necessary," and "from [his] end, it will be costly and burdensome" (*see* Affidavit of Dr. Serrano at ¶6). Pursuant to the well-established standard articulated by the federal courts, neither Dr. Serrano's argument that submitting to a three-hour long deposition in this case would unduly burden him nor his personal assessment that such deposition is not necessary to our defense of this action serves as a valid basis for foreclosing this discovery.

6. Under the broad scope of discovery permitted in federal civil litigation, "it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition." Fed. R. Civ. P. 26(b)(1); *Naftchi v. New York University Medical Center*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997). Courts have made clear that the fact that a proposed witness is "a busy person or professes lack of knowledge of the matters at issue" is not a valid basis on which to issue such an order. *Id; see also CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984) (granting motion to compel further deposition of president of affiliate of plaintiff, *inter alia*, because "the fact that the witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery.").

7. As acknowledged in his Affidavit, Dr. Serrano was served with a valid Subpoena for deposition in the matter *Bertha Tache v. 100 Church Street, et al.* by defendants' counsel on December 6, 2014. The return date of the Subpoena was January 13, 2014 (annexed hereto as Exhibit "**A**" is the Subpoena and affidavit of service).

8. On December 13, 2013, Dr. Serrano contacted Kimberly Connick of defendants' counsel and advised of his plans to be out of the country on the return date of January 13, 2014, requested an adjournment and advised he would appear on a subsequent date which would be scheduled when he returned from his trip. Ms. Connick agreed to adjourn the January 13th deposition to accommodate Dr. Serrano's schedule and was next contacted on January 22, 2014, by "Sucre", who identified himself as Dr. Serrano's office manager. Sucre advised that Dr.

Serrano was back in the country and would appear for his deposition on a mutually agreeable date. Contrary to the assertions made in Dr. Serrano's Affidavit, the date of January 30th was not offered or agreed to by defendants or Dr. Serrano's office at that time. In fact, during his conversation with Ms. Connick, Sucre specifically advised of Dr. Serrano's *unavailability* on January 30th because of another deposition he had scheduled on that date (annexed as Exhibit "**B**" is the Affidavit of Kimberly A. Connick, Esq. detailing her interactions with Dr. Serrano's office regarding receipt of the Subpoena and the scheduling of his deposition). There was no further communication directly from Dr. Serrano's office with respect to scheduling a date for the *Tache* case. Dr. Serrano allegedly retained counsel two days later.

9. As set for in the Declaration of Dr. Serrano's counsel, Ms. Chaya Gourarie, she was first contacted to represent Dr. Serrano with regard to the World Trade Center Litigation subpoenas on January 24, 2014, two days after the conversation between Ms. Connick and Dr. Serrano's office. At no time did Ms. Gourarie or her office contact defendants' counsel regarding Dr. Serrano's deposition in the *Tache* case or regarding any other deposition. Ms. Gourarie acknowledges in her Declaration that she did not contact defendants' counsel, but fails to set forth the reason why she failed to contact defendants' counsel.

10. Although defendants' counsel has no knowledge regarding Ms. Gourarie's subsequent assertion that she "immediately contacted the attorneys from Cozen O'Connor and communicated Dr. Serrano's request to have the remaining depositions all held on a single date," what is relevant to the present motion is the undisputed fact that Dr. Serrano's counsel failed to contact anyone at defendants' counsel's firm regarding the scheduling of Dr. Serrano's deposition for plaintiff *Tache*. Indeed, the first knowledge defendants' counsel had that Dr. Serrano was represented by counsel was at the January 30, 2014 depositions, when Ms. Gourarie appeared for Dr. Serrano in two other cases. Dr. Serrano was not produced on that date for the *Tache* case.

11. Given the utter lack of communication between Dr. Serrano's counsel and defendants' counsel prior to January 30, 2014, Ms. Gourarie's suggestion that defendants should have somehow presumed that Dr. Serrano wished to sit for three depositions on January 30, 2014, is both unreasonable and inconsistent with the protocols which have been followed for over 125 other treating physician depositions that have been held in these cases.  Moreover, Dr. Serrano's deposition had never been noticed for January 30, 2014 in the *Tache* case and all parties in the *Tache* case were not present.

12. Upon learning that Dr. Serrano was represented by counsel on January 30, 2014, Carolyn Davis of defendants' counsel immediately requested Ms. Gourarie provide Dr. Serrano's availability on or before February 14, 2014 for his deposition in *Tache*.  Ms. Gourarie declined to provide a date for the deposition and requested defendants' counsel accept an affidavit from Dr. Serrano in lieu of a deposition, to which Ms. Davis responded that she would advise whether the same was possible upon further review of the medical records.

13. Two business days later, on February 3, 2014, Ms. Davis telephoned Ms. Gourarie and left a voicemail message advising that, upon further review of the records, a deposition was required and, again, requested a deposition date.  Ms. Gourarie did not respond to the voicemail message and, by February 4, 2014 email, Ms. Davis requested a deposition date.  In response, Ms. Gourarie emailed that she would speak to her client about the proposed dates and contact Ms. Davis the following day (annexed as Exhibit "**C**" is a copy of the February 4, 2014 email exchange between Ms. Davis and Ms. Gourarie).

14. Ms. Gourarie did not, as represented, contact Ms. Davis the following day.  As such, Ms. Davis sent a second follow-up email on February 6, 2014 inquiring as to whether Ms. Gourarie was able to confirm a date for Dr. Serrano's deposition.  Ms. Gourarie responded, stating "My client and I will most likely be available on 2/14" (annexed as Exhibit "**D**" is a copy of the

February 6, 2014 email exchange between Ms. Davis and Ms. Gourarie).

15. On February 11, 2014, Ms. Gourarie sent an email stating, for the first time, her position that Dr. Serrano was not served with a valid deposition subpoena and was not obligated to appear for a deposition (annexed as Exhibit "**E**" is a copy of Ms. Gourarie's February 11, 2014 email). Prior to this date, neither Dr. Serrano nor any attorney on his behalf had ever objected to or made any application for relief from the Subpoena. In fact, as detailed above, Dr. Serrano had on multiple prior occasions explicitly agreed to submit to a deposition and, importantly, Dr. Serrano's underlying motion does not argue the Subpoena was not properly served or that the Subpoena was defective in any manner.

16. On the following day, February 12, 2014, in response to Ms. Gourarie's email, correspondence was sent to Ms. Gourarie, explaining again that, although defendants adjourned Dr. Serrano's deposition as a courtesy to accommodate his travel schedule, the Subpoena remained valid and enforceable. Defendants' counsel also proposed several alternative dates for the deposition (*see* Exhibit "**G**" annexed to the Declaration of Chaya Gourarie, Defendants' counsel's February 12, 2014 correspondence to Ms. Gourarie). This correspondence was followed by multiple email correspondences and telephone calls between your declarant and Ms. Gourarie, during which time Ms. Gourarie changed her position and stated that Dr. Serrano was not required to comply with the Subpoena because he had appeared for depositions in other cases and her preference was to resolve the dispute through motion practice (*see* Exhibits "**H**" and "**I**" annexed to the Declaration of Chaya Gourarie).

17. Ms. Gourarie's position for refusing to produce Dr. Serrano for deposition is defendants' counsel's attendance at Dr. Serrano's prior depositions regarding other World Trade Center plaintiffs and the supposed "lack of preparation" to depose Dr. Serrano in *Tache* on those dates to support the argument that the Subpoena should be quashed. Of note, one of the

depositions to which Ms. Gourarie refers was held in October, two months prior to service of the Subpoena on Dr. Serrano in *Tache*. Nonetheless, it is evident that appearance at depositions in other World Trade Center cases has absolutely no bearing on the validity nor serves as a basis to quash the Subpoena at issue regarding plaintiff *Tache*. Moreover, at no time was defendants' counsel advised by Dr. Serrano or his counsel that Dr. Serrano would appear in *Tache* on January 30th. In fact, during the January 22, 2014, telephone conversation between Dr. Serrano's office manager, Sucre, and Ms. Connick, Sucre advised January 30th was *not* available due to Dr. Serrano being scheduled for deposition in other matters.

18. Defendants have made every effort to accommodate Dr. Serrano's schedule by offering to hold the deposition at a mutually agreeable date, time, and location and that the deposition will be limited to three hours. Defendants even expressed the willingness to commence the deposition in the early morning or late afternoon to minimize Dr. Serrano's time away from practice (*see* Exhibit "**I**" annexed to the Declaration of Chaya Gourarie, Your declarant's email, dated February 14, 2014). Despite the courtesies extended by defendants, Dr. Serrano has maintained the unsupportable position that appearing at another deposition would be unduly burdensome.

19. Without any authority to support his position, Dr. Serrano essentially argues that defendants missed its one opportunity to depose him on January 30, 2014. Notably, among the dozens of subpoenas and over 125 depositions which have taken place in this litigation, Dr. Serrano is the only physician whose refusal to appear for a deposition has necessitated this sort of motion practice. Under such circumstances, the federal court issuing the subpoena "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed. R. Civ. P. 45(g).

20. With respect to Ms. Gourarie's request that the Court "Order Dr. Serranos' [sic]

deposition appearance contingent on the advance payment of $5000 to DR. [sic] Serrano" (*see* Declaration of Chaya Gourarie at ¶13), representing Dr. Serrano's fees and Ms. Gourarie's fees, defendants respectfully refer to Your Honor's prior rulings that treating physicians subpoenaed in the World Trade Center Litigation shall only be entitled to usual and customary witness fees.  The treating physician in the approximate 125 depositions received only the referenced witness fees.  Moreover, most of those physicians appeared with counsel, and no defense or plaintiff counsel paid those attorney fees.  In accordance with this ruling, Dr. Serrano received a check in the amount of $53.03 along with service of the Subpoena, which he cashed on or about December 20, 2013 (annexed as Exhibit "**F**" is a copy of a Chase Online printout of a canceled check issued to Carlos J. Serrano, MD in the amount of $53.03).

21. As for Ms. Gourarie's request that if Dr. Serrano is directed to appear for deposition, that all attorneys attend for all cases in the World Trade Center litigation and depose Dr. Serrano in those cases is ludicrous.  Although this should be applicable to the cases in which discovery is proceeding, there are hundreds of other cases in which discovery is not proceeding at this time.  Thus, only the active discovery cases should apply to Dr. Serrano at present.

WHEREFORE, based upon the foregoing, it is respectfully requested that (1) non-party Dr. Serrano's Motion for a Protective Order be denied in its entirety; (2) Dr. Serrano be ordered to appear for a deposition in the above-captioned matter; and (3) for such other and further relief that this Honorable Court may deem just, proper, and equitable.

Dated:   New York, New York
         February 20, 2014

HARRIS BEACH PLLC

s/ Pamela B. Goldsmith, Esq.
_____
Pamela B. Goldsmith, Esq.
Stanley Goos, Esq.
100 Wall Street, 23rd Floor
New York, NY 10005
(212) 687-0100

Attorneys for Defendants
ZAR REALTY CORPORATION and
100 CHURCH LLC