USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/2/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
VIRGINIA BARBOSA,

      Plaintiff,

-against-

1 WORLD TRADE CENTER L.L.C. et al.,

      Defendants.
------------------------------------------------------------------ x

**ORDER AND OPINION GRANTING MOTION FOR SUMMARY JUDGMENT TO STRUCTURE TONE DEFENDANTS**

06 Civ. 1649 (AKH)
21 MC 102 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

  Plaintiff Virginia Barbosa alleges that she worked for ABM Cleaning Services, a company that performed cleaning services at various buildings in the vicinity of the World Trade Center in the weeks and months following September 11, 2001, including Two World Financial Center. In this action, she asserts claims against a number of defendants for injuries she allegedly suffered as a result of that work.

  After discovery, two of the defendants, Structure Tone, Inc. s/h/a Structure Tone (UK), Inc. and Structure Tone Global Services, Inc. (together "Structure Tone") moved for summary judgment to dismiss the claims against them. For the following reasons, Structure Tone's motion is granted.

## STANDARD OF REVIEW

  Under the well-established summary judgment standard, "[t]he Court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d. 113, 122 (2d. Cir. 2004). "The mere existence of a scintilla of evidence in support of the [non-moving]

1

party's position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

## BACKGROUND

Structure Tone's motion is supported by the testimony of its 2001 project manager, Bobby Connors. Ex. F. The testimony shows that Structure Tone was the "on call general contractor" for Merrill Lynch office projects, it would demolish old office space and replace it with new space, and it would begin its work after other companies completed asbestos abatement work. *See* Ex. F at 12, 31. Before September 11, 2001, Structure Tone was working on four or five construction projects at Two and Four World Financial Center. *See* Ex. F at 13-14, 17-18. After September 11, 2001, Structure Tone continued to work at Two and Four World Financial Center. It boarded up blown-out windows, worked on the lobby glass and doors, and put up protection around elevators, directly and through subcontractors engaged by the firm. *See* Ex. F at 20, 32-3, 41-2. Structure Tone was also responsible for rebuilding the floors once the cleanup was complete. *See* Ex. F at 39-41.

Structure Tone was not the general contractor responsible for the asbestos abatement work, which Connors' deposition testimony confirmed; it was not engaged to do asbestos work, nor was it licensed to do such work. *See* Ex. F. at 31. Structure Tone did not perform asbestos abatement work, either directly or indirectly. *See* Ex. E. It was not allowed at the work site until asbestos abatement was complete, and it could not begin the renovation/construction work until it was informed by Merrill Lynch that the abatement was complete. *Id.*

In opposition to summary judgment, Barbosa argues that Structure Tone was involved in the post 9/11 clean up because it was aware that an asbestos removal company was

2

on site. She relies on Connors' deposition testimony that Pinnacle (an asbestos removal company) was on the project, as support. *See* Ex. 13 (Transcript of Connors' July 17, 2012 Deposition) at 48: 18-9. But, Connors' testimony does not suggest that Structure Tone exercised any control over Pinnacle. (And, in any event, Barbosa worked for ABM, not Pinnacle.)

When deposed, Barbosa did not give any testimony suggesting that she was directly or indirectly supervised by Structure Tone. *See* Exs. G and H. Barbosa claims that Structure Tone did have the authority to control, supervise, or direct her work based on evidence that Structure Tone had a "Structure Tone Site Specific Safety & Health Plan For Construction or Clean Up Work For Merrill Lynch Two World Financial Center Building," *see* Ex. 1, and that Structure Tone held meetings about worker health and safety, *see* Ex. 2. However, the existence of the safety and health plan does not mean that it applied to Barbosa, a cleanup worker with whom Structure Tone had no direct or indirect contractual relationship. And, there is no evidence that the meetings Structure Tone held affected Barbosa or ABM.

The record also shows that Structure Tone had a respiratory protection program in place at Two World Financial Center. *See* Ex. 8. This program was put in place to protect the subcontractors and workers Structure Tone hired to do the renovation/construction work it was contracted to do. There is no evidence that it would have applied to ABM or Barbosa.

**DISCUSSION**

Barbosa asserts claims against Structure Tone under two provisions of New York Labor Law, §200 and §241 (6).

I. **Section 200:**

New York Labor Law §200 codifies the common law duty imposed on landowners, general contractors, and in limited circumstances, on lessees to maintain and

provide a safe workplace. *In re World Trade Ctr. Disaster Site Litig.*, 456 F.Supp.2d 520, 571 (S.D.N.Y. 2006), *aff'd in part, appeal dismissed in part*, 521 F.3d 169 (2d Cir. 2008). Section 200 (1) imposes a duty to "provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places" and provides that "[a]ll machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons." N.Y. Lab. Law §200 (1).

New York courts have explained that liability under § 200 "is dependent on a showing that the person or entity to be charged has exercised supervisory control, whether as an owner, lessee or contractor." *In re: World Trade Ctr. Disaster Site Litigation*, 456 F.Supp.2d at 571 (citing *Ross v. Curtis-Palmer Hydro-Electric Co.*, 618 N.E.2d 82, 87 (1993)). "An implicit precondition to this duty to provide a safe place to work is that the party charged with that responsibility have the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition." *Russin v. Louis N. Picciano & Son*, 54 N.Y.2d 311, 317 (1981) (*citing Reynolds v. John T. Brady & Co.* 38 A.D.2d 746 (2d Dep't 1972)). In this case, the record evidence shows that Structure Tone's work was separate from the post 9/11 cleanup work that Barbosa performed and that Structure Tone did not exercise any supervisory authority over her. Accordingly, Barbosa's § 200 claim fails.

## II.   Section 241(6):

Section 241(6) imposes a duty on all contractors, owners and their agents to provide reasonable and adequate safety protection to workers and individuals that frequent the work area. Section 241 provides that: "[a]ll contractors, owners, and their agents shall comply with the following requirements:" And subsection (6) provides that "[a]ll areas in which

4

construction, excavation or demolition work is being performed shall be so constructed... as to provide reasonable and adequate protection to the safety of persons employed therein or lawfully frequenting such places."

The statute does not define contractor, but New York courts interpreting § 241 (6) have construed the term "contractor" to mean general contractor. *See, e.g., Russin*, 54 N.Y.2d at 317; *Decotes v. Merritt Meridian Corp.*, 245 A.D.2d 864 (3d Dep't 1997) (explaining that under § 241 "only owners and general contractors are absolutely liable for statutory violations").[1] Additionally, New York courts have explained that, "[a]n entity is a contractor within the meaning of Labor Law § 240(1) and § 241(6) if it had the power to enforce safety standards and choose reliable subcontractors." *Outwater v. Ballister*, 253 A.D.2d 902, 904 (3d Dep't 1998).

In *Russin*, the New York Court of Appeals explained that general contractors and owners are held strictly liable under § 241(6) because they are the parties in the best position to ensure worksite safety and prevent injuries. 54 N.Y.2d at 318. Thus, the Court of Appeals noted that holding contractors strictly liable "for all injuries occurring on a job site and thereby make each contractor an insurer for all workers regardless of the ability to direct, supervise and control those workers would lead to improbable and unjust results that would directly contravene the express legislative history accompanying the 1969 amendments to these provisions." *Id.*

In *Wong v. New York Times Co.*, 297 A.D.2d 544, 549 (1st Dep't 2002), the First Department, following *Russin*, considered whether one general contractor would be liable under § 241(6) for injuries sustained by an individual who was supervised by a different general contractor. In *Wong*, the plaintiff, an employee of a sub-subcontractor who was engaged to

---

[1] Black's Law dictionary defines general contractor as: "[t]he primary person or firm solely accountable to perform a contract. This primary typically supervises activities and coordinates the use of subcontractor." It defines contractor as: "any person who enters into a contract."

5

install a printing press, was injured when he fell while dismantling a crane. The plaintiff sued the general contractor responsible for the general construction at the worksite, even though there was a different general contractor responsible for the installation of the printing presses. The First Department, citing *Russin*'s statement that the purpose behind § 241(6) was to hold general contractors strictly liable because they are in the best position to fix the situation that caused the injury, dismissed the plaintiff's claim. *Id.* (citing *Russin*, 54 N.Y.2d at 317). The court thus held that the general contractor for the construction was not strictly liable for an injury suffered by a worker who was supervised and hired by the prime contractor for the printing press installations. *Id.*

In this case, Structure Tone admits that it was the "on call general contractor" for Merrill Lynch at Two World Trade Center. But, the record shows that it was not the general contractor responsible for the clean-up work that Barbosa performed. Accordingly, Barbosa's § 241(6) claim against Structure Tone must be dismissed for the reasons set forth in *Wong* and *Russin*: because Structure Tone was not the general contractor responsible for the conditions of Barbosa's work.

## CONCLUSION

For the foregoing reasons, Structure Tone's Motion is granted and Barbosa's claims against Structure Tone are dismissed. The Clerk shall mark the motion (Doc. No. 130) terminated. Barbosa shall file an Amended Complaint by July 7, 2014, consistent with this Order, dropping the Structure Tone Defendants from the caption and the allegations and retaining the paragraph numbering of the existing complaint. Defendants' Answers need not be amended.

The Clerk shall enter judgment dismissing the complaint against only the moving defendants, with costs Structure Tone, Inc. s/h/a Structure Tone (UK), Inc. and Structure Tone Global Services, Inc.

SO ORDERED.

Dated: June 2⧸, 2014
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge